**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | SIPA LIQUIDATION |
| Plaintiff-Applicant, | No. 08-01789 (BRL) |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | Adv. Pro. No. 09-01364 (BRL) |
| Plaintiff, | |
| v. | |
| HSBC BANK PLC, et al., | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## HSBC DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Evan A. Davis
Thomas J. Moloney
Charles J. Keeley

*(Continued on inside cover)*

*(Continued from outside cover)*

One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for Defendants HSBC Bank plc, HSBC
Holdings plc, HSBC Securities Services (Luxembourg)
S.A., HSBC Institutional Trust Services (Ireland) Limited,
HSBC Securities Services (Ireland) Limited, HSBC
Institutional Trust Services (Bermuda) Limited, HSBC
Bank USA, N.A., HSBC Securities Services (Bermuda)
Limited, HSBC Bank (Cayman) Limited, HSBC Private
Banking Holdings (Suisse) S.A., HSBC Private Bank
(Suisse) S.A., HSBC Fund Services (Luxembourg) S.A.,
and HSBC Bank Bermuda Limited*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND .............................................................................................................. 4

I.      The Consolidated Actions...................................................................................... 4

II.      The Trustee Action ................................................................................................ 6

APPLICABLE LAW ........................................................................................................ 8

ARGUMENT.................................................................................................................... 10

I.      Withdrawal of the Trustee Action Is Mandatory Because the
        Trustee's Investor Fraud Claims Raise Substantial Issues of
        Standing and Preemption Under Federal Securities Law ...................................... 10

        A.      The Trustee's Standing (or Lack Thereof) to Bring the Investor
               Fraud Claims Requires Substantial Interpretation of SIPA ........................ 11

        B.      SLUSA Preemption of the Trustee's Investor Fraud Claims Presents
               Additional Substantial Issues of Federal Non-Bankruptcy Law................. 14

II.      Cause Exists for Permissive Withdrawal of the Trustee Action............................. 16

        A.      The Trustee's Non Avoidance Claims, Such as Aiding and
               Abetting Fraud, Are Non-Core .................................................................... 16

        B.      Both the Trustee's Investor Fraud and Avoidance Claims
               Are Factually Intertwined with the Consolidated Actions,
               Warranting Permissive Withdrawal............................................................. 17

CONCLUSION................................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

11 U.S.C. § 548(c) ............................................................................................................ 19

15 U.S.C. § 77p............................................................................................................ 14, 15

15 U.S.C. §§ 78aaa ....................................................................................................... 3, 11

15 U.S.C. § 78bb............................................................................................................ 14, 15

28 U.S.C. § 157(a) ......................................................................................................... 8

28 U.S.C. § 157(b) ......................................................................................................... 8

28 U.S.C. § 157(c)(1)..................................................................................................... 8, 22

28 U.S.C. § 157(d) .................................................................................................... <u>passim</u>

28 U.S.C. § 157(e) ......................................................................................................... 8, 22

28 U.S.C. § 158.............................................................................................................. 8

28 U.S.C. § 1334............................................................................................................ 8

**Cases**

<u>1800Postcards, Inc. v. Morel</u>,
153 F. Supp. 2d 359 (S.D.N.Y. 2001)................................................................................ 16

<u>Beacon Theatres v. Westover</u>,
359 U.S. 500 (1959)........................................................................................................... 23

<u>Caplin v. Marine Midland Grace Trust Co.</u>,
406 U.S. 416 (1972)........................................................................................................... 10

<u>Complete Mgmt., Inc. v. Arthur Andersen, LLP (In re Complete Mgmt., Inc.)</u>,
No. 02 Civ. 1736, 01-03459, 2002 WL 31163878 (S.D.N.Y. Sept. 27, 2002)................... 23-24

<u>Enron Power Mktg., Inc. v. Cal. Power Exch. Corp.</u>,
No. 04 Civ. 8177 (RCC), 2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004)........................... 9

<u>Holmes v. SIPC</u>,
503 U.S. 258 (1992)........................................................................................................... 13

**Page(s)**

In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.,
No. 02 MDL 1529 (LMM), 2006 WL 337667 (S.D.N.Y. Feb. 10, 2006)..........................  passim

In re Enron Corp.,
388 B.R. 131 (S.D.N.Y. 2008)............................................................................................   12

In re G. M. Crocetti, Inc.,
No. 08 Civ. 6239 (DLC), 2008 WL 4601278 (S.D.N.Y. Oct. 15, 2008)......................   20-21, 24

In re Keene Corp.,
182 B.R. 379 (S.D.N.Y. 1995)............................................................................................   9

In re Morshet Israel, Inc.,
No. 97 CIV. 1852, 1999 WL 165699 (S.D.N.Y. Mar. 24, 1999) .......................................   20

In re Nw. Airlines Corp.,
348 B.R. 51 (S.D.N.Y. 2008)..............................................................................................   10

In re Parmalat Finanziaria S.p.A.,
320 B.R. 46 (S.D.N.Y. 2005)..............................................................................................   24

In re VWE Group Inc.,
359 B.R. 441 (Bankr. S.D.N.Y. 2007).................................................................................   23

Kirschner v. KPMG LLP,
--- N.E.2d ----, 15 N.Y. 3d 446 (2010) ...............................................................................   11

LTV Steel Co.v. City of Buffalo (In re Chateaugay Corp.),
No. 00 Civ. 9429, 2002 WL 484950 (S.D.N.Y. Mar. 29, 2002) .............................   16, 17-18, 23

M. Fabrikant & Sons, Inc. v. Long's Jeweler's Ltd.,
No. 08-CV-1982, 2008 WL 2596322 (S.D.N.Y. June 26, 2008) .......................................   23

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,
547 U.S. 71 (2006)..............................................................................................................   15

Mishkin v. Ageloff,
220 B.R. 784 (S.D.N.Y. 1998).....................................................................................   10, 17, 18

Mishkin v. Peat, Marwick, Mitchell & Co.,
744 F. Supp. 531 (S.D.N.Y. 1990) ..............................................................................   11-12, 13

Newbro v. Freed,
409 F. Supp. 2d 386 (S.D.N.Y. 2006).................................................................................   10

**Page(s)**

Orion Picture Corp. v. Showtime Networks Inc. (In re Orion),
4 F.3d 1095 (2d Cir. 1993).................................................................................. passim

Pan Am Corp. v. Delta Air Lines (In re Pan Am Corp.),
163 B.R. 41 (S.D.N.Y. 1993)................................................................................ 18, 24

Picard v. Cohmad Sec. Corp.,
No. 09 Civ. 7655, 2009 WL 4729927 (S.D.N.Y. Dec. 10, 2009)........................ 21

Redington v. Touche Ross & Co.,
592 F.2d 617 (2d Cir. 1978),
rev'd on other grounds, 442 U.S. 560 (1979) ...................................................... 12

S. St. Seaport LP v. Burger Boys (In re Burger Boys),
94 F.3d 755 (2d Cir. 1996)................................................................................... 10, 18

SEC v. Drexel Burnham Lambert Group (In re Drexel Burnham Lambert Group),
960 F.2d 285 (2d Cir. 1992)................................................................................. 15-16

Shearson Lehman Hutton, Inc. v. Wagoner,
944 F.2d 114 (2d Cir. 1991)........................................................................... 10, 11, 13

SIPC v. BDO Seidman, LLP,
49 F. Supp. 2d 644 (S.D.N.Y. 1999)................................................................... 13

SIPC v. BDO Seidman, LLP,
222 F.3d 63 (2d Cir. 2000)................................................................................... 13

Solutia Inc. v. FMC Corp.,
No. 04 Civ. 2842 (WHP), 2004 WL 1661115 (S.D.N.Y. July 27, 2004)........... 20, 21

Touche Ross & Co. v. Redington,
442 U.S. 560 (1979)............................................................................................. 13

Trefny v. Bear Stearns Sec. Corp.,
243 B.R. 300 (S.D. Tex. 1999) ........................................................................... 17

Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, LLP,
201 B.R. 635 (S.D.N.Y. 1996)..................................................................... 17, 20, 21, 24

Wedtech Corp. v. London (In re Wedtech Corp.),
81 B.R. 237 (S.D.N.Y. 1987)............................................................................... 17, 24

Defendants HSBC Bank plc, HSBC Holdings plc, HSBC Securities
Services (Luxembourg) S.A., HSBC Institutional Trust Services (Ireland) Limited, HSBC
Securities Services (Ireland) Limited, HSBC Institutional Trust Services (Bermuda)
Limited, HSBC Bank USA, N.A., HSBC Securities Services (Bermuda) Limited, HSBC
Bank (Cayman) Limited, HSBC Private Banking Holdings (Suisse) S.A., HSBC Private
Bank (Suisse) S.A., HSBC Fund Services (Luxembourg) S.A., and HSBC Bank Bermuda
Limited (collectively, the "HSBC Defendants"), by their attorneys Cleary Gottlieb Steen
& Hamilton LLP, respectfully move this Court, pursuant to 28 U.S.C. § 157(d), to
withdraw the reference of the above-captioned action (the "Trustee Action") to the
United States Bankruptcy Court for the Southern District of New York.[1]

## PRELIMINARY STATEMENT

In what appears to be an unprecedented step for a SIPA trustee and one
unthinkable for a bankruptcy trustee under well established case law, the Trustee Action
asserts claims for aiding and abetting the Madoff fraud against defendants that served as
service providers to so-called feeder funds that were Madoff customers.  What is
particularly remarkable is that the Trustee takes this step while, at the same time,
investors in these feeder funds have already sued these very same service providers and
others in three purported class actions that are pending in the United States District Court
for the Southern District of New York before the Honorable Richard J. Berman.  In other
words, the Trustee Action directly competes with investor class actions for recovery of
the same loss.

---

[1] The HSBC Defendants make this motion without prejudice to or waiver of any rights or
defenses, including without limitation defenses based upon lack of personal jurisdiction or
improper service of process.

The Trustee Action has been filed in Bankruptcy Court. The HSBC Defendants ask that the reference of this case to the Bankruptcy Court under this District's standing order be withdrawn so that these two competitive actions can be heard by a single judge. This withdrawal motion is based on both mandatory and permissive grounds pursuant to 28 U.S.C. § 157(d). Withdrawal is mandatory because resolution of the Trustee's standing to bring his state law fraud claims will depend on significant interpretation of federal statutes other than the Bankruptcy Code. Permissive withdrawal is necessary to prevent inconsistent results causing prejudice and potential double recovery for the same loss against the multiple overlapping defendants in the two actions, including the HSBC Defendants, and to prevent waste, duplication of effort and judicial inefficiency.

The unavoidable fact is that the Trustee's state law fraud claims overlap, duplicate and are mutually exclusive with the claims made by the plaintiffs in the three class action cases. The Trustee, claiming to stand in the shoes of the feeder funds, and the investors in those feeder funds cannot both recover the same loss. And even if the Trustee were to have standing to sue directly and not in the right of the feeder funds, a standing he lacks under clear *in pari delicto* related precedent, then he and the funds and the investors in those funds cannot all recover the same loss, and their claims are still mutually exclusive.

This is a situation rife with the prospect for inconsistent results and prejudice to the HSBC Defendants. It is also rife with the prospect for duplication of effort and judicial inefficiency. Importantly, the claims of the class action plaintiffs and the Trustee are intertwined factually. The so-called "red flag" issue is central to the

2

pleading in both cases. This congruence exists not only for the Trustee's and the class action plaintiffs' damage claims but also for the class claims and the Trustee's bankruptcy law avoidance claims. The avoidance claims are closely linked as a matter of discovery and proof to the class plaintiffs' claims because the avoidance claims largely turn on the contention that the HSBC Defendants and others did not act in good faith. Thus, all the claims asserted in the Trustee Action require substantially overlapping discovery and proof.

Given these facts, the action is subject to mandatory withdrawal under 28 U.S.C. § 157(d), because the Trustee's ability to maintain claims on behalf of Madoff customers turns on substantial and material questions of standing and preemption under federal law not governed by the Bankruptcy Code. First, the question of the Trustee's claimed standing to assert investor fraud claims is governed by and requires substantial consideration of the Securities Investors Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa et seq., not the Bankruptcy Code. Second, another provision of Title 15, the Securities Litigation Uniform Standards Act ("SLUSA"), is implicated here to the extent that the Trustee Action purports to represent and seek a recovery for the benefit of not just the Madoff customers who actually hired the HSBC defendants, but also all of the nearly 5000 Madoff customers who gave their money to Madoff to invest in covered securities within the meaning of SLUSA. These putative state law representative damage claims, purportedly brought under SIPA and not Title 11 powers, are a "covered class action" within the meaning of SLUSA, and therefore the claims are preempted by SLUSA.

Furthermore, there exists good cause for permissive withdrawal of the Trustee Action pursuant to section 157(d). The Trustee's investor fraud claims are non-

3

core and mirror the investor claims in the three putative class actions consolidated before the District Court, and judicial efficiency and the avoidance of inconsistent results and prejudice to the defendants will be promoted by withdrawal. The Trustee's core avoidance claims also raise substantially the same factual issues and would require the same discovery involved in the Trustee's non-core investor fraud claims and the class claims. Thus, interests of judicial economy and the avoidance of duplication of effort and potentially inconsistent results warrant having all these related claims resolved in this Court.

The HSBC Defendants respectfully submit that what needs to happen here, at a minimum, is that the District Court should take charge to sort out who will decide what and how two intertwined proceedings will be administered and coordinated for dispositive motions, discovery and trial. It is not jurisdictionally possible for the Bankruptcy Court to take on this responsibility, and therefore this role of necessity falls to the District Court.

## BACKGROUND

### I.     The Consolidated Actions

Since January 2009, the District Court has presided over three putative class actions (the "Consolidated Actions") brought by investors in Thema International Fund, Herald (Lux) Fund, Herald Fund SPC, and Primeo Fund (the "Funds")—foreign investment funds that sold shares to investors and in turn invested the proceeds with Bernard L. Madoff Investment Securities LLC ("BLMIS"). In re Herald, Primeo, & Thema Funds Sec. Litig., No. 09 Civ. 289 (RMB).   The Consolidated Actions name as defendants the Funds as well as their directors, investment managers, promoters,

4

administrators, custodians, auditors, and others defendants—over 60 in total, the vast
majority of whom are foreign.

In October 2009, the Court consolidated the three actions for general pre-
trial purposes to further the "substantial saving of judicial resources," the "just, efficient
and economical conduct of the litigation," and "the convenience of the parties or
witnesses."[2]  The court-appointed lead plaintiffs for the Herald, Primeo and Thema
investor classes (the "Lead Plaintiffs") filed separate amended complaints (the "Class
Action Complaints") in February 2010.[3]  On January 10, 2011, the District Court issued a
briefing schedule for defendants' joint motion to dismiss.  Keeley Decl. Ex. 5 (Transcript
of Conference at 38, No. 09 Civ. 289 (RMB) (S.D.N.Y. Jan. 10, 2011) (excerpted)).[4]

The crux of the allegations in the Class Action Complaints is that various
defendants, in providing services to the Funds, failed to conduct adequate due diligence
on BLMIS and ignored "red flags" that should have led to the discovery of the Ponzi
scheme, allegedly causing investor losses.  Herald Compl. ¶¶ 9, 89-105; Primeo Compl.
¶¶ 4, 128-145; Thema Compl. ¶¶ 11, 324-340.  The Lead Plaintiffs assert claims under
the federal securities laws and common law claims for breach of fiduciary duty and

---

[2]  See Order at 8, Docket Entry ("D.E.") No. 60., 09 Civ. 289 (RMB) (S.D.N.Y. entered
Oct. 5, 2009), annexed as Exhibit 1 to the Declaration of Charles J. Keeley ("Keeley Decl.")

[3]  See Complaint, D.E. No. 74, No. 09 Civ. 289 (RMB) (S.D.N.Y. filed Feb. 11, 2010)
(the "Herald Compl."), Complaint, D.E. No. 75, No. 09 Civ. 289 (RMB) (S.D.N.Y. filed Feb. 11,
2010) (the "Primeo Compl."), Complaint, D.E. No. 76, No. 09 Civ. 289 (RMB) (S.D.N.Y. filed
Feb. 11, 2010) (the "Thema Compl."), Keeley Decl. Exs. 2-4 (excerpted).

[4]  The HSBC Defendants will seek dismissal on grounds of *forum non conveniens*,
because most of the Funds, parties and witnesses are located in Europe, where parallel
proceedings involving the Funds and many of the same defendants are already well underway.

negligence, among others. They also bring claims for unjust enrichment to recover the service fees that various defendants earned from the Funds.

Under the schedule fixed by the Court, defendants' joint motion to dismiss is due on June 29, 2011, following the April 1, 2011 filing by Lead Plaintiffs in one or more of the Consolidated Actions of a motion seeking leave to further amend the complaints to, among other things, include additional allegations taken from pleadings filed by the Trustee. See Keeley Decl. Ex. 5 at 26, 28-30, 38.

## II.    The Trustee Action

On July 15, 2009, Irving H. Picard, the trustee appointed pursuant to SIPA for the BLMIS liquidation proceeding (the "Trustee"), commenced the instant action as an adversary proceeding in Bankruptcy Court. The initial complaint only concerned one fund and two of the HSBC Defendants. Between July 2009 and December 2010, the pre-trial conference in the action was adjourned ten times and has not yet been held.

On December 5, 2010, the Trustee filed an amended complaint (the "Trustee Amended Complaint") that constitutes the Trustee Action to which this motion is directed. It names as defendants several BLMIS feeder funds, including all four of the Funds that are the subject of the Consolidated Actions. Trustee Am. Compl. ¶¶ 57-69. It also names as defendants various service providers to the funds, primarily the investment managers, promoters, administrators and custodians. Id. ¶¶ 51-56, 70-118. More than twenty of these defendants are also sued in the Consolidated Actions in connection with their roles as service providers to the same Funds.[5]

_____

[5] These defendants are Herald (Lux), Herald Fund SPC, Primeo Fund, Thema International Fund, Sonja Kohn, Alberto Benbassat, Stephane Benbasat, 20:20 Medici AG, UniCredit Bank Austria AG, BA Worldwide Fund Management Ltd., UniCredit S.p.A., Herald Asset Management Limited, Pioneer Alternative Investment Management Limited, Genevalor,

The Trustee's claims are comprised of: (1) bankruptcy law claims seeking to avoid payments and service fees allegedly received by the defendants from the feeder funds (for which the defendants are entitled to a good faith defense), Trustee Am. Compl. Counts 1-19 (the "Avoidance Claims"), and (2) tort and quasi-contract claims based primarily on defendants' alleged misconduct as service providers to the feeder funds at issue, id. Counts 20-24 (the "Investor Fraud Claims"). These compensatory damage claims are for money had and received, aiding and abetting BLMIS's fraud, aiding and abetting BLMIS's breach of fiduciary duty, unjust enrichment to recover service fees, and contribution for BLMIS's liability to its customers.

Underlying these claims are allegations that the defendants knew of and disregarded essentially the same list of "red flags" about BLMIS that are alleged in the Consolidated Actions. Id. ¶¶ 11, 144-226. The Trustee purports to bring these damage claims not only on behalf of the BLMIS estate, but also on behalf of BLMIS customers as subrogee and as bailee of their property, seeking to recover the losses they suffered. Id. ¶ 50. At the same time, the Trustee's complaint asserts a claim to disallow the customer claims filed by the Funds and other customers with whom the HSBC Defendants dealt. Id. Count 11. In addition, the Trustee has denied claims filed by those who invested in feeder funds, such as shareholders in the Funds, taking the position that they are not customers of BLMIS and not entitled to any recovery.[6]

---

Benbassat et Cie, Thema Asset Management Limited, HSBC Holdings plc. HSBC Securities Services (Luxembourg) S.A., HSBC Institutional Trust Services (Ireland) Limited, HSBC Securities Services (Ireland) Limited, Ursula Radel-Leszczynski, and David T. Smith. See Trustee Am. Compl. ¶¶ 51, 54, 55, 57-59, 66, 70-74, 76, 81, 84, 95, 101, 105-06, 111, 113.

[6] See Keeley Decl. Ex. 6 (Trustee's Memo. of Law in Support of Mot. to Affirm Trustee's Determinations Denying Claims of Claimants without BLMIS Accounts in Their Names, Namely, Investors in Feeder Funds, SIPC v. Bernard L. Madoff Inv. Sec. LLC, Adv. Pro. No. 08-01789 (BRL) (S.D.N.Y. Bankr. filed June 11, 2010).

7

On January 10, 2011, the Bankruptcy Court entered a stipulated order extending the HSBC Defendants' time to answer or move to dismiss the complaint until the later of June 6, 2011, or thirty days after the last HSBC Defendant is served.

## APPLICABLE LAW

District courts have original jurisdiction over bankruptcy cases and all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. Pursuant to 28 U.S.C. § 157(a), the district court may refer actions within its bankruptcy jurisdiction to the bankruptcy judges of the district. The Southern District of New York has a standing order in place that provides for automatic reference.

A bankruptcy judge's authority to adjudicate claims in a referred action depends on whether the claim is "core" or "noncore." Bankruptcy judges may hear but do not have authority to determine non-core claims, absent the parties' consent (which will not be given by the HSBC Defendants); rather, they may only recommend proposed findings of fact and conclusions of law to the district court. See 28 U.S.C. § 157(c)(1). Although bankruptcy judges may hear and determine core claims, those determinations are subject to the District Court's review. See 28 U.S.C. §§ 157(b), 158. Furthermore, bankruptcy judges are constitutionally prohibited from holding jury trials on non-core claims, Orion Picture Corp. v. Showtime Networks Inc. (In re Orion), 4 F.3d 1095, 1101 (2d Cir. 1993), and may not hold jury trials even on core claims absent special designation by the District Court and the consent of both parties. 28 U.S.C. § 157(e).

Notwithstanding the automatic reference, 28 U.S.C. § 157(d) authorizes and, in some circumstances, requires the District Court to withdraw the reference to the Bankruptcy Court. The statute provides:

8

> The district court may withdraw, in whole or in part, any
> case or proceeding referred under this section [28 U.S.C. §
> 157], on its own motion or on timely motion of any party,
> for cause shown. The district court shall, on timely motion
> of a party, so withdraw a proceeding if the court determines
> that resolution of the proceeding requires consideration of
> both title 11 and other laws of the United States regulating
> organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added).

Withdrawal is mandatory where the proceeding requires "significant interpretation" of federal non-bankruptcy law. In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig., No. 02 MDL 1529 (LMM), 2006 WL 337667, at *2 (S.D.N.Y. Feb. 10, 2006) (quoting City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d Cir. 1991)). It is appropriate in "cases where substantial and material consideration of non-Bankruptcy Code federal [law] is necessary for the resolution of the proceeding." Enron Power Mktg., Inc. v. Cal. Power Exch. Corp., No. 04 Civ. 8177(RCC), 2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004) (quoting Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 995 (2d Cir. 1990)). It is not necessary to present an issue of first impression to meet the substantial consideration test; however, courts have found the test more easily satisfied in such circumstances. See In re Keene Corp., 182 B.R. 379, 382 (S.D.N.Y. 1995).

While the provision for permissive withdrawal does not define "cause," the Second Circuit has established a two-pronged test. See Orion, 4 F.3d at 1101. "A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." Id. Second, the court must weigh directly "questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy

administration, the prevention of forum shopping, and other related factors." Id.; see also

S. St. Seaport LP v. Burger Boys (In re Burger Boys), 94 F.3d 755, 762 (2d Cir. 1996).

None of the factors is dispositive, and efficiency and uniformity are the overriding

considerations. In re Nw. Airlines Corp., 348 B.R. 51, 56 (S.D.N.Y. 2008); Mishkin v.

Ageloff, 220 B.R. 784, 800 (S.D.N.Y. 1998) ("In the final analysis, the critical question

is efficiency and uniformity."). In particular, even core claims may be, and frequently

are, withdrawn based on the permissive withdrawal standard. See, e.g., Mishkin, 220

B.R. at 800-01; In re Adelphia, 2006 WL 337667, at *1-2.

    As shown below, the grounds for both mandatory and permissive

withdrawal of the Trustee Action are present here.

## ARGUMENT

**I. Withdrawal of the Trustee Action Is Mandatory Because the Trustee's Investor Fraud Claims Raise Substantial Issues of Standing and Preemption Under Federal Securities Law**

    The Trustee's assertion of claims on behalf of BLMIS customers raises

substantial, unsettled and material questions of federal securities law, not bankruptcy law,

mandating withdrawal. As successor to the corrupt BMLIS estate, the Trustee could

never assert billion dollar damage claims against the defendants in this action, for two

reasons. First, it is well settled that an ordinary bankruptcy trustee does not have

standing to sue third parties for fraud on behalf of the estate's creditors, but may only

assert claims belonging to the bankrupt corporation itself. Caplin v. Marine Midland

Grace Trust Co. of New York, 406 U.S. 416, 428-34 (1972); Shearson Lehman Hutton,

Inc. v. Wagoner, 944 F.2d 114, 118 (2d Cir. 1991). The funds deposited by BLMIS

customers into their accounts belonged to the customers at all times, not to BLMIS.

Newbro v. Freed, 409 F. Supp. 2d 386, 396 (S.D.N.Y. 2006). Therefore, any claims to

recover the amounts deposited by customers and stolen by Madoff belong to the
customers and not to Madoff's company.

Second, even if the Trustee could allege a loss to BLMIS distinct from its
customers' losses, the Trustee would be barred from asserting a claim.   Under the
Second Circuit's decision in Wagoner, it is well-settled that "a claim against a third party
for defrauding a corporation with the cooperation of management accrues to creditors,
not to the guilty corporation." Wagoner, 944 F.2d at 120.   The underpinnings for the
Wagoner rule lie in New York's *in pari delicto* doctrine, which "mandates that the courts
will not intercede to resolve a dispute between two wrongdoers." Kirschner v. KPMG
LLP, --- N.E. 2d ----, 15 N.Y. 3d 446, 464 (2010).

Given these well-settled principles, the Trustee has sought to step out of
the shoes of the corrupt BLMIS estate and bring what is effectively a massive class action
on behalf of thousands of BLMIS customers, asserting state law claims in connection
with BLMIS's securities fraud.   This unprecedented attempt raises substantial and
material questions of standing and preemption under the federal securities laws.

A.   **The Trustee's Standing (or Lack Thereof) to Bring the Investor Fraud
        Claims Requires Substantial Interpretation of SIPA**

As discussed above, Title 11 confers no authority on the Trustee to bring
claims on behalf of the BLMIS estate's creditors.   Therefore, the Trustee's power, if any,
to bring such claims derives not from Title 11, but from the Securities Investors
Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa et seq.

Congress enacted SIPA as part of Title 15 and independently of Title 11 to
provide a special means of "protect[ing] individual investors from losing their
investments when broker-dealers failed." Mishkin v. Peat, Marwick, Mitchell & Co., 744

11

F. Supp. 531, 555 (S.D.N.Y. 1990). SIPA provides statutory authorization for the

Securities Investment Protection Corporation ("SIPC") to advance funds to investors to

compensate them for their losses. Id. at 556. Analysis of this legal scheme, which is

based upon different policies and principles than an ordinary liquidation proceeding,

requires precisely the sort of "significant interpretation of federal laws that [C]ongress

would have intended to have decided by a district judge rather than a bankruptcy judge."

In re Enron Corp., 388 B.R. 131, 136 (S.D.N.Y. 2008) (quoting In re Texaco Inc., 84

B.R. 911, 921 (S.D.N.Y. 1988)).

Whether SIPA grants the trustee of a failed broker-dealer any additional

standing presents a real controversy that requires substantial interpretation of this investor

protection statute. The Trustee here purports to bring his claims as subrogee of advances

that SIPC has paid or will pay to customers with approved claims and as bailee of the

customers' property stolen by Madoff. See Trustee Compl. ¶ 50. In a divided 1978

decision, the Court of Appeals ruled that Section 17(a) of the 1934 Exchange Act creates

an implied private right of action for investors against the broker's (not the investors')

accountant and that SIPC has standing to bring those claims on behalf of investors.

Redington v. Touche Ross & Co., 592 F.2d 617 (2d Cir. 1978), rev'd on other grounds,

442 U.S. 560 (1979). Judge Mulligan's dissent pointed out that the text of SIPA grants

no authority to SIPC or the trustee to bring fraud claims against third parties, either as

subrogee or bailee. Id. at 633-34 (Mulligan, J., dissenting). The Supreme Court

ultimately reversed the majority's decision, rejecting its holding that Section 17(a) creates

a private right of action, and therefore did not reach whether the Trustee had standing to

12

bring such an action on behalf of investors. Touche Ross & Co. v. Redington, 442 U.S. 560 (1979).

The next time the issue arose in this Circuit, Judge Pollack engaged in an extensive analysis of SIPA's text, legislative history and purpose and concluded that "[t]he liquidating trustee is not granted the power to bring fraud claims against third parties on behalf of customers." Mishkin, 744 F. Supp. at 555. Subsequently, in Holmes v. SIPC, the United States Supreme Court cited Mishkin and observed that "SIPC's theory of subrogation is fraught with unanswered questions." 503 U.S. 258, 270-71 (1992).

More recently, now-Chief Judge Preska agreed with Judge Pollack's analysis, finding that allowing SIPC or a trustee such standing "defeats the purpose" of the system set up by SIPA and expands their powers without statutory authority, questioning the basis for the Redington majority's holding. SIPC v. BDO Seidman, LLP, 49 F. Supp. 2d 644, 654 (S.D.N.Y. 1999). Unlike Judge Pollack, however, Judge Preska found herself bound by the majority's holding, but dismissed on other grounds. Id. at 654-58. The Court of Appeals ultimately affirmed the dismissal in part on other grounds, and therefore found no occasion to revisit Redington. SIPC v. BDO Seidman, LLP, 222 F.3d 63, 69 (2d Cir. 2000).

Since Redington, the Second Circuit has issued significant decisions regarding a trustee's standing, most significantly in Wagoner, 944 F.2d 114. It is clear that the Wagoner rule will preclude the Trustee from maintaining claims on behalf of the corrupt BLMIS estate. However, it is a novel question whether, in light of the Wagoner doctrine and the repeated criticism of Redington, the Trustee has standing to maintain a

representative action on behalf of BLMIS customers that is not against a service provider to BLMIS, but against *those customers'* service providers, particularly where the customers most relevant here have, for the most part, commenced their own litigation and where the Trustee has made no payment to those customers but rather is seeking to deny their claims. It will be the position of the HSBC Defendants that 1) Redington is no longer good law; 2) even if it is good law, it should not be extended to suits against those who are not service providers to the broker in question; and 3) even if Redington were so extended, it should not apply in the circumstances here, where the SIPA Trustee's purported subrogation and bailee claims are brought in competition with the claims of investors who the Trustee has not paid or committed to benefit with any recovery on his claims.

**B.     SLUSA Preemption of the Trustee's Investor Fraud Claims Presents Additional Substantial Issues of Federal Non-Bankruptcy Law**

Assuming *arguendo* that the Trustee has standing to represent the customers of BLMIS in this action, then a second substantial question arises whether his compensatory damage claims in connection with the securities fraud committed by BLMIS are preempted by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb. SLUSA requires dismissal of any action: (1) that is a "covered class action"; (2) that is based on state law; and (3) in which the plaintiff alleges "an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security" or alleges that "the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(b).

Because the Trustee asserts purported state law claims in connection with

BLMIS's securities fraud, the second and third prongs are clearly satisfied.[7]  The Trustee

likely will resist preemption by arguing that the instant suit is not "covered class action."

SLUSA, however, defines a "covered class action" to include not only class actions as

such, but also lawsuits in which (1) "damages are sought on behalf of more than 50

persons" *or* (2) the plaintiffs sue "on a representative basis on behalf of themselves and

other unnamed parties similarly situated."  15 U.S.C. § 77p(f)(2)(A); see also Merrill

Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 86 (2006) (holding that

SLUSA is to be given a "broad construction").   As the HSBC Defendants will establish

in their motion to dismiss, the Trustee Action meets this definition because it seeks

damages on behalf of thousands of BLMIS customers.

The Trustee may point to the provision of SLUSA stating that a

"corporation, investment company, pension plan, partnership, or other entity, shall be

treated as one person or prospective class member, but only if the entity is not established

for the purpose of participating in the action."  15 U.S.C. § 78bb(f)(5)(D).  But the fact

that the Trustee is considered "one person" is beside the point.  There is no dispute that

SLUSA preemption would not apply to a bankruptcy trustee asserting claims on behalf of

the bankrupt estate.  But whether SLUSA preemption applies when a trustee seeks to

represent and recover on behalf of thousands of creditors of an estate, supposedly

pursuant to a novel application of SIPA powers and not Title 11 powers, raises a novel,

substantial and significant question that requires mandatory withdrawal.   See, e.g., SEC

---

[7]      However, if the Trustee believes there are disputable issues with respect to these prongs, his response brief should inform the Court of such issues because they are material to the Court's mandatory withdrawal analysis.

v. Drexel Burnham Lambert Group (In re Drexel Burnham Lambert Group), 960 F.2d 285, 288 n.1 (2d Cir. 1992) (holding that withdrawal of the reference was necessary where the claims at issue "necessitated an examination of federal securities laws").

## II.     Cause Exists for Permissive Withdrawal of the Trustee Action

### A.     The Trustee's Non Avoidance Claims, Such as Aiding and Abetting Fraud, Are Non-Core

In considering whether to grant permissive withdrawal, a district court first must consider whether the claims in question are core bankruptcy claims capable of resolution by the bankruptcy court, or non-core claims that ultimately would have to be resolved by the district court. Orion, 4 F.3d at 1101; LTV Steel Co. v. City of Buffalo (In re Chateaugay Corp.), No. 00 Civ. 9429, 2002 WL 484950, at *7 (S.D.N.Y. Mar. 29, 2002). A core claim is one "that involves rights created by bankruptcy law, or that could arise only in a bankruptcy case," whereas a non-core claim is one that "does not depend on the bankruptcy laws for its existence and which could proceed in a court that lacks federal bankruptcy jurisdiction." LTV Steel, 2002 WL 484950, at *7 (quoting United Orient Bank v. Green (In re Green), 200 B.R. 296, 298 (S.D.N.Y. 1996)); 1800Postcards, Inc. v. Morel, 153 F. Supp. 2d 359, 366-67 (S.D.N.Y. 2001).

Here, it is beyond dispute that the Trustee Action includes non-core claims against dozens of defendants. The Trustee brings claims for aiding and abetting BLMIS's fraud, aiding and abetting BLMIS's breach of fiduciary duty, unjust enrichment through the receipt of fees from the Funds, money had and received, and contribution for the harm that BLMIS caused to its customers. Trustee Am. Compl. Counts 20-24. These claims arise exclusively under non-bankruptcy law, in no way depend on the existence of bankruptcy law, and could proceed in a court lacking federal bankruptcy jurisdiction.

16

LTV Steel, 2002 WL 484950, at \*7; In re Adelphia, 2006 WL 337667, at \*4 (finding

state law tort claims such as aiding and abetting breach of fiduciary duty to be non-core).[8]

That the Trustee asserts non-core claims "weighs in favor of the District Court's

withdrawal of the reference, since any determination by the Bankruptcy Court would be

subject to de novo review." Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, LLP,

201 B.R. 635, 640 (S.D.N.Y. 1996).

## B.     Both the Trustee's Investor Fraud and Avoidance Claims Are Factually Intertwined with the Consolidated Actions, Warranting Permissive Withdrawal

Where a proceeding in bankruptcy is related to litigation pending in

district court, "the overlapping of facts, transactions, and issues in the two cases . . . is

good cause for withdrawal of the reference and consolidation with the district court

proceeding." Wedtech Corp. v. London (In re Wedtech Corp.), 81 B.R. 237, 239

(S.D.N.Y. 1987).  In such circumstances, the interests of judicial economy, costs savings

to the parties, and uniformity dictate withdrawal, because it simply "make[s] the most

sense to adjudicate [the] related cases in one forum before one court." Mishkin, 220 B.R.

at 800 (withdrawing reference of two core actions brought by SIPA Trustee where a third

action would proceed in the district court).

This is true whether the referred action contains core or non-core claims.

"Even where a bankruptcy proceeding involves 'core' claims, courts frequently exercise

their discretion to withdraw the reference if the bankruptcy action involves common

questions of law and fact with a pending district court action."  LTV Steel, 2002 WL

---

[8] Nor can the Trustee argue that SIPA somehow transforms his state law causes of action into core claims. See Trefny v. Bear Stearns Sec. Corp., 243 B.R. 300, 319 (S.D. Tex. 1999) (rejecting the argument that tort claims are core "simply because they were asserted by a SIPA trustee").

484950, at *7; see also S. St. Seaport, 94 F.3d at 762 (finding no error in the district court's withdrawal of the reference of a core proceeding). In such circumstances, the overriding considerations of efficiency and uniformity justify withdrawal. Mishkin, 220 B.R. at 800; see also In re Adelphia, 2006 WL 337667, at *4-5 (withdrawing both core bankruptcy claims and non-core state law claims because of overlap with securities class actions pending in the district court); Pan Am Corp. v. Delta Air Lines, Inc. (In re Pan Am Corp.), 163 B.R. 41, 42, 44 (S.D.N.Y. 1993) (withdrawing core claims where two related actions "aris[ing] from the same factual context as the Adversary Proceeding" were pending before the District Court).

The Trustee's Investor Fraud Claims raise issues that necessarily will be determined in the Consolidated Actions. The crux of the Trustee's claims is that, in their capacities as service providers to certain BLMIS feeder funds, including all four funds at issue in the Consolidated Actions, defendants allegedly "were aware of numerous red flags strongly suggesting that BLMIS was engaged in fraudulent activity, and/or consciously avoided BLMIS's fraud." Trustee Compl. ¶ 556. This factual issue is significant to the Consolidated Actions already pending in this Court, which assert identical red flags to establish the culpability of more than twenty of the same defendants.

While the Court has discretion under section 157(d) to withdraw just the Trustee's non-core Investor Fraud Claims, leaving the Trustee's core avoidance claims in Bankruptcy Court, the avoidance claims—just like the Investor Fraud Claims— raise substantially overlapping issues that justify permissive withdrawal of the whole case. The two main points of contention over the Trustee's avoidance claims will be whether the fees defendants received from the feeder funds and other transfers  were taken "for

value" and "in good faith," such that they are subject to a complete defense pursuant to 11 U.S.C. § 548(c). Both issues will entail the same discovery and proof implicated by the Investor Fraud Claims and the class claims in the Consolidated Actions. First, whether the defendants took the transfers "in good faith" will involve consideration of whether the same alleged red flags put them on notice of the fraud, which is the central issue in determining the Trustee's and the classes' damages claims. Second, whether the services that defendants provided to the Funds constitute "value" for the fees they received in return is in part just another way of asking whether the defendants were unjustly enriched by those fees. Both the Trustee and investors have brought unjust enrichment claims to recover the same fees.

A particularly important consideration in deciding a withdrawal motion is judicial efficiency and the avoidance of inconsistent results. The most serious and prejudicial opportunity for inconsistent results is that the HSBC Defendants could be found multiply liable to different parties for the same loss. But the potential inconsistency, confusion and prejudice do not end there. A non-exhaustive "baker's dozen" list of opportunities for duplicative effort and inconsistent results if the Trustee Action is not withdrawn to the District Court managing the Consolidated Actions is set forth below:

1. Whether the Court has jurisdiction over a particular defendant;

2. Whether a particular defendant was properly served;

3. Whether a particular defendant knew or should have known of certain facts;

4. Whether the responsibility to investigate a supposed red flag fell on a particular defendant or on some other defendant;

19

5.    Whether a particular defendant was entitled to rely on the presumed diligence of some other defendant;

6.    Whether a particular defendant was entitled to rely on statements by Madoff and his associates;

7.    Whether a particular defendant is properly viewed as an innocent victim of the fraud;

8.    Whether any settlement with shareholders is sufficient to moot the damage claims of the Trustee or vice versa;

9.    Whether a particular fund and/or its investors have received false profits;

10.   Whether a particular defendant was complicit in the Madoff fraud;

11.   Whether the Consolidated Action and the Trustee Action are subject to dismissal on the grounds of *forum non conveniens*;

12.   Whether foreign law is applicable to various issues; and

13.   Whether proposed discovery is relevant to the claims or defenses of any party.

These common issues will begin to arise immediately in the motions to dismiss that are due in June 2011 in both the Trustee Action and the Consolidated Actions. These issues should be determined by one court after one round of briefing. See Wechsler, 201 B.R. at 640 (withdrawing reference where there was "an overlap of issues between the motion to dismiss" in bankruptcy proceedings and a motion to dismiss in related district court proceedings); Solutia Inc. v. FMC Corp., No. 04 Civ. 2842 (WHP), 2004 WL 1661115, at *3 (S.D.N.Y. July 27, 2004) (finding that judicial economy is not served by "having two courts administer two rounds of briefing and argument on the same issues"); In re Morshet Israel, Inc., No. 97 CIV. 1852, 1999 WL 165699, at *3 (S.D.N.Y. Mar. 24, 1999) (granting a motion for withdrawal for non-core claims in part because "judicial economy is best served avoiding wasteful motion practice"). "Failure to withdraw the reference in this case would subject the parties to the

risk of inconsistent verdicts on these issues, not to mention significant inefficiency and expense from having to duplicate efforts and litigate the same issues twice." In re G. M. Crocetti, Inc., No. 08 Civ. 6239 (DLC), 2008 WL 4601278, at *5 (S.D.N.Y. Oct. 15, 2008).

Withdrawing the reference also would produce significant efficiency gains assuming that, at some point, discovery goes forward. In particular, "there will be great savings to the parties who are defendants both in the [Trustee Action] and in the [shareholder] litigation if discovery can be consolidated in one court rather than having to proceed with duplicative discovery on two independent tracks." In re Adelphia, 2006 WL 3376677, at *4; see also Wechsler, 201 B.R. at 640 (noting that consolidated discovery after withdrawal "would eliminate the need to repeat document discovery or re-take depositions"). The District Court, with its magistrate judges, is in a much better position to manage discovery and pretrial matters than the Bankruptcy Court, see In re Adelphia, 2006 WL 3376677, at *4, whose "judges are deluged with matters relating to the administration of bankrupt estates and are the busiest courts in the nation." Solutia, 2004 WL 1661115, at *3.

The present case is unlike Picard v. Cohmad Securities Corp., where the lack of a substantial overlap between the BLMIS-related adversary proceeding and an SEC civil action before the District Court militated against withdrawal. No. 09 Civ. 7655 (LLS), 2009 WL 4729927, at *2 (S.D.N.Y. Dec. 10, 2009). There, only four individual defendants were common to both actions, and the district court determined that given the minimal overlap, withdrawal would neither "substantially diminish the duplication of discovery in the two courts" nor "reduce the theoretical risk of inconsistent results." Id.

21

By contrast, here, four of the largest Madoff feeder funds and more than fifteen of the most significant institutional and individual defendants, such as the HSBC Defendants and Sonja Kohn, are common to all actions. The presence of these twenty key defendants in both actions will entail vast amounts of duplicative briefing and discovery in two different courts, as well as a heightened risk of inconsistent results, given that their conduct is the crux of both actions. Unlike in Cohmad, these risks will be substantially diminished by withdrawing the action and maintaining all related claims before a single court.

Moreover, the Bankruptcy Court is prohibited from determining the Trustee's non-core Investor Fraud Claims without the HSBC Defendants' consent, see 28 U.S.C. § 157(c)(1), which will not be given. Thus, absent withdrawal, both the District and Bankruptcy Courts will consider the actions piecemeal, with the District Court eventually tasked with reviewing the Bankruptcy Court's proposed and ultimately redundant findings. In re Adelphia, 2006 WL 3376677, at *5 (withdrawing reference in part because, "to the extent that any of the Committees' claims are non-core, then, absent withdrawal, or the parties' consent, 'the bankruptcy court can only make recommended findings of fact and conclusions of law which are subject to *de novo* review in the district court.'") (quoting In re S.G. Phillips Constructors, Inc., 45 F.3d 702, 704 (2d Cir. 1995)). Additionally, most of the Trustee's non-core Investor Fraud Claims and each of his Avoidance Claims is subject to a right to trial by jury. The Bankruptcy Court may not constitutionally preside over a jury trial on the non-core claims, see Orion, 4 F.3d at 1101; 28 U.S.C. § 157(e), and may not even preside over a jury trial on the core Avoidance Claims absent special designation by the District Court and the consent of

22

both parties, which will not be given by the HSBC Defendants. Furthermore, the
Constitution requires that the jury trial on these claims be held prior to the resolution of
related equitable claims. See Beacon Theatres v. Westover, 359 U.S. 500, 510-11 (1959).
The Bankruptcy Court cannot adjudicate these claims or conduct a jury trial in this
action, and courts have found that this factor alone gives sufficient cause for withdrawal.
M. Fabrikant & Sons, Inc. v. Long's Jeweler's Ltd., No. 08-CV-1982, 2008 WL
2596322, at *3 (S.D.N.Y. June 26, 2008); In re the VWE Group Inc., 359 B.R. 441, 451
(Bankr. S.D.N.Y. 2007).

   Finally, even though the case for withdrawal of the Trustee's Investor
Fraud Claims may be clearer, the HSBC Defendants respectfully submit that the entire
Trustee Action should be withdrawn without prejudice to the possibility that the District
Court, following the resolution of motions to dismiss, will return the Avoidance Claims
to the Bankruptcy Court if necessary under a coordinated plan of discovery that it has
approved, with the issues that raise the greatest potential for inconsistent results reserved.

   In sum, courts in this District have repeatedly granted motions to
withdraw, even of core proceedings, where related actions were pending in the District
Court, because these circumstances decisively tip judicial economy and the other related
Orion factors in favor of withdrawal. See, e.g., LTV Steel, 2002 WL 484950, at *8
("[N]either the interests of justice nor judicial economy favor the litigation of these two
related matters in two separate fora."); Complete Mgmt., Inc. v. Arthur Andersen, LLP
(In re Complete Mgmt., Inc.), No. 02 Civ. 1736, 01-03459, 2002 WL 31163878, at *3 n.5
(S.D.N.Y. Sept. 27, 2002) (finding withdrawal warranted under notions of judicial
economy even if the claims were considered core matters, in part due to the district

court's familiarity with issues raised in related securities litigation before the district court); Wechsler, 201 B.R. at 641 (holding that judicial economy would be best served by allowing a district court to hear a trustee's common law claims against a debtor's former law firm, given a related securities fraud suit by investors against the firm in the district court); In re Adelphia, 2006 WL 337667, at *3 (withdrawing both core and non-core claims because the parties, facts and issues overlapped with securities class actions pending in the district court); In re G. M. Crocetti, Inc., 2008 WL 4601278, at *5-6 (withdrawing core claims where the issues to be litigated were "identical to issues that will necessarily be determined" in an action already pending in the district court); In re Parmalat Finanziaria S.p.A., 320 B.R. 46, 50-51 (S.D.N.Y. 2005); Wedtech Corp., 81 B.R. at 239; Pan Am Corp., 163 B.R. at 43-45. The same course should be followed here.

## Conclusion

For the reasons set forth above, the HSBC Defendants respectfully request that the Court enter an order withdrawing the reference of the Trustee Action to the Bankruptcy Court.

Dated:   New York, New York
        February 3, 2011

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By _____

Evan A. Davis, a Member of the Firm

*Attorneys for Defendants HSBC Bank plc, HSBC
Holdings plc, HSBC Securities Services
(Luxembourg) S.A., HSBC Institutional Trust
Services (Ireland) Limited, HSBC Securities*

*Services (Ireland) Limited, HSBC Institutional Trust Services (Bermuda) Limited, HSBC Bank USA, N.A., HSBC Securities Services (Bermuda) Limited, HSBC Bank (Cayman) Limited, HSBC Private Banking Holdings (Suisse) S.A., HSBC Private Bank (Suisse) S.A., HSBC Fund Services (Luxembourg) S.A., and HSBC Bank Bermuda Limited*