**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IRVING H. PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

        Plaintiff,

        v.

HSBC BANK PLC, et al.,

        Defendants.

---

No. 11 Civ. 763 (JSR)

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## <u>HSBC DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE</u>

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Evan A. Davis
Thomas J. Moloney
Charles J. Keeley

One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for Defendants HSBC Bank plc, HSBC*
*Holdings plc, HSBC Securities Services (Luxembourg)*
*S.A., HSBC Institutional Trust Services (Ireland) Limited,*
*HSBC Securities Services (Ireland) Limited, HSBC*
*Institutional Trust Services (Bermuda) Limited, HSBC*
*Bank USA, N.A., HSBC Securities Services (Bermuda)*
*Limited, HSBC Bank (Cayman) Limited, HSBC Private*
*Banking Holdings (Suisse) S.A., HSBC Private Bank*
*(Suisse) S.A., HSBC Fund Services (Luxembourg) S.A.,*
*and HSBC Bank Bermuda Limited*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ....................................................................................... 1

I.  WITHDRAWAL IS MANDATORY BECAUSE THE TRUSTEE'S CLAIMS
    OF STANDING REQUIRE SUBSTANTIAL INTERPRETATION OF SIPA ... 3

    A.  SIPA Is Not Part of Title 11......................................................................... 3

    B.  The Standing Issue Requires Interpretation of SIPA,
        Not Common Law........................................................................................... 5

    C.  There Is No Controlling Authority To Support the Standing
        Asserted Here................................................................................................. 7

        1. *Redington's* Judicial Critics ................................................................... 7

        2. Subsequent Second Circuit Decisions Preclude Extending *Redington*
           To This Case .......................................................................................... 9

        3. The Trustee Seeks An Unwarranted Extension of *Redington* ............... 11

    D.  The Trustee's Claim of Standing as Assignee Requires
        Additional Substantial Interpretation of SIPA............................................. 12

II. PLAINTIFFS' ARGUMENT THAT THE TRUSTEE IS AN "ENTITY" FOR
    PURPOSES OF SLUSA IS A STRAW MAN ....................................................... 12

III. THE CAUSE FOR PERMISSIVE WITHDRAWAL IS SUBSTANTIAL............ 14

    A.  The Trustee's Common Law Claims Are Unquestionably Non-Core........ 14

        1. The District Court Should Make The Core/Non-Core Determination... 14

        2. The Common Law Claims Are Non-Core ............................................. 15

    B.  The Remaining *Orion* Factors Weigh Heavily in Favor of Withdrawal .... 16

        1. This Action Is Inextricably Intertwined with the
           Consolidated Actions ............................................................................ 17

        2. Withdrawal Will Avoid Unnecessary Duplication and
           Potential Inconsistencies ....................................................................... 18

        3.  The Bankruptcy Court Does Not Possess Knowledge of the
           Particular Facts Sufficient to Outweigh Efficiency Concerns ............... 18

        4.  The District Court Is in a Superior Position to Coordinate Discovery .. 19

    C.      The Case Presents No Forum-Shopping Concerns ..................................... 20

CONCLUSION ................................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

15 U.S.C. § 78bb..................................................................................................... 12, 13

15 U.S.C. § 78fff.................................................................................................... 4, 5, 6

28 U.S.C. § 157(d).................................................................................................. 3

**Cases**

Caplin v. Marine Midland Grace Tr. Co. N.Y.,
406 U.S. 416 (1972)............................................................................................... 4, 9

Exch. Nat'l Bank of Chicago v. Wyatt,
517 F.2d 453 (2d Cir. 1975).................................................................................. 4

German Bank v. United States,
148 U.S. 573 (1893)............................................................................................... 11

Hirsch v. Arthur Andersen & Co.,
72 F.3d 1085 (2d Cir. 1995)................................................................................... 9

Holmes v. SIPC,
503 U.S. 258 (1992)............................................................................................... 11

In re Adelphia,
No. 02-MDL-1529 (LMM), 2006 WL 337667 (S.D.N.Y. Feb. 10, 2006) ........................ 15, 20

In re Cont'l Airlines,
138 B.R. 442 (D. Del. 1992)................................................................................... 7

In re FMI Forwarding Corp.,
No. 01-CV-9462 (DAB), 2004 WL 1348956 (S.D.N.Y. June 16, 2004) ........................ 15

In re Homeland Stores, Inc.,
204 B.R. 427 (D. Del. 1997)................................................................................... 7

In re Keene Corp.,
182 B.R. 379 (S.D.N.Y. 1995)................................................................................ 5

In re Orion Pictures Corp.,
4 F.3d 1095 (2d Cir. 1993)..................................................................................... 14

In re VWE Group, Inc.,
359 B.R. 441 (S.D.N.Y. 2007)................................................................................ 15

Kirschner v. KPMG LLP,
15 N.Y. 3d 446 (2010) ........................................................................................................ 10

LaSala v. Bordier Et Cie,
519 F.3d 121 (3d Cir. 2008)................................................................................................. 13

Mishkin v. Ageloff,
220 B.R. 784 (S.D.N.Y. 1998)..................................................................................16, 18, 19

Mishkin v. Peat, Marwick, Mitchell &Co.,
744 F. Supp. 531 (S.D.N.Y.1990) .................................................................................. 6, 8, 12

Newdow v. Rio Linda Union School Dist.,
597 F.3d 1007 (9th Cir. 2010) ............................................................................................. 8

Picard v. J.P. Morgan Chase & Co.,
No. 10-AP-4932 (S.D.N.Y. Bankr. Dec. 2, 2010) ............................................................... 17

Picard v. Kingate Global Fund, Ltd. et al.,
No. 09-AP-1161 (S.D.N.Y. Bankr. May 8, 2009) ............................................................... 19

Picard v. Kohn, et al.,
No. 10-AP-5411 (S.D.N.Y. Bankr. Dec. 10, 2010) ........................................................... 3, 17

Redington v. Touch Ross & Co.,
612 F.2d 68 (2d Cir. 1979).................................................................................................. 5, 17

Redington v. Touche Ross & Co.,
592 F.2d 617 (2d Cir. 1978)................................................................................................. 6

Redington v. Touche Ross & Co.,
Index No. 13996/76 (N.Y. Co. Sup. Ct. Aug. 3, 1981) ...................................................... 8

RGH Liquidating Trust v. Deloitte & Touche LLP,
71 A.D.3d 198 (N.Y. App. 1st Dep't 2009)........................................................................ 13

S.E.C. v. Am. Bd. of Trade,
830 F.2d 431 (2d Cir. 1987)................................................................................................. 4

S.E.C. v. Packer, Wilbur & Co., Inc.,
498 F.2d 978 (2d Cir. 1974)................................................................................................. 3

Shearson Lehman Hutton, Inc. v. Wagoner,
944 F.2d 114 (2d Cir. 1991)................................................................................................. 4, 9, 10

SIPC v. Barbour,
421 U.S. 412 (1975)............................................................................................................. 3

SIPC v. BDO Seidman LLP,
222 F.3d 63 (2d Cir. 2000)..................................................................................................    8

SIPC v. BDO Seidman LLP,
49 F. Supp. 2d 644 (S.D.N.Y.1999)....................................................................................    6, 8, 12


**Other Authorities**

H.R. Rep. No. 91-1613 (1970), <u>reprinted in</u> 1970 U.S.C.C.A.N. 5254..............................    3, 4

S. Rep. No. 91-1218 (1970)...............................................................................................    3, 4

The HSBC Defendants, by their attorneys Cleary Gottlieb Steen & Hamilton LLP, respectfully submit this reply memorandum in support of their motion pursuant to 28 U.S.C. § 157(d) to withdraw the reference of the Trustee Action to the Bankruptcy Court.[1]

## PRELIMINARY STATEMENT

In an effort to don the "white hat" and gain the sympathy of the Court, the Trustee begins his brief by trumpeting his success in obtaining in the Bankruptcy Court rulings and settlements that will "result in victims of Madoff's fraud obtaining no less than 50% of their principal investment." (Trustee Br. at 2.) What the Trustee does not disclose is that a principal driver for these anticipated results, in addition to the victories he cites, are arguments the Trustee hopes will be successful that dramatically reduce the size of the pool of eligible customers who might benefit from insurance or participation in the fund of customer property. Specifically, the Trustee has taken the position that customers eligible for SIPC insurance or participation in the fund of customer property do not include the victims of the Madoff Ponzi scheme who did not invest directly with Madoff but rather invested in the Feeder Funds that in turn sent money to Madoff. He then argues in addition that these Feeder Fund investors cannot even recover money through a recovery by their Feeder Fund if the Trustee has concluded that such Feeder Fund failed to conduct adequate diligence or to heed warning signs of the possibility of fraud.[2] From all that appears, the Trustee contends that no Feeder Fund conducted such adequate diligence and

---

[1]    Capitalized terms not otherwise defined herein have the meaning ascribed in the HSBC Defendants' Memorandum of Law in Support of Defendants' Motion to Withdraw the Reference, filed on February 3, 2011. The HSBC Defendants also join in the arguments by the UCG/PAI Defendants in support of their motion to withdraw the reference of the Trustee Action.

[2]    The supposed warning signs the Trustee lists on page 7 of his brief, that with the genius of hindsight he now proclaims should have been obvious to the defendants here, were just as known or knowable by anyone who invested with Madoff and by the Securities and Exchange Commission, BMIS's principal regulator. Presumably, it was not politic to disallow the claims of all investors or to sue the Commission.

that therefore not one Feeder Fund investor will, if the Trustees arguments prevail, obtain any benefit, even derivatively, from the victories and settlements that the Trustee touts.

What makes this case truly bizarre and unprecedented is the assertion by the Trustee, supported by SIPC, that under the SIPA statute he has standing to appropriate the claims of these injured Feeder Fund investors to benefit a fund of customer property in which those injured parties have no right to participate. This case is therefore very unlike <u>Touche Ross v. Redington</u>, where any failure by the auditor that might have averted the insolvency would have injured all of the broker-dealer's customers in the same qualitative way, and where there was at least arguably some logic for allowing one collective action to be brought to address that injury. Here, by contrast, the Feeder Funds and their investors who claim that the HSBC Defendants should have been more diligent in protecting them as the funds' custodian and administrator are in an entirely different situation than those who invested with BMIS with no involvement of any HSBC Defendant. Whether SIPA allows the Trustee to, in effect, steal claims from these other parties and, perversely, in effect, continue Madoff's Ponzi scheme of robbing from Peter to pay Paul, is a matter of first impression under SIPA warranting withdrawal.

In addition, by asserting state law claims on behalf of direct BMIS customers who have been defrauded by BMIS, the Trustee has brought a *de facto* securities class action that, if brought by anyone else, clearly would be subject to preemption by SLUSA. To avoid this, Mr. Picard claims that he is an "entity" who counts as "one person" despite purporting to bring claims on behalf of thousands. But the Trustee is not an entity, BMIS is the entity, and the provision upon which the Trustee tries to rely is simply not applicable here. At the very least, its potential application to his unprecedented claims presents a federal securities law issue of first impression requiring withdrawal.

2

Even if not mandatory, withdrawal is justified because the Trustee's billion-dollar non-core claims duplicate and directly compete with the consolidated securities class actions already pending in the District Court, where investors in many of the same funds have sued the same group of defendants to recover the same losses based on identical allegations. Withdrawing the case to the District Court would permit greater coordination regardless of whether the actions eventually are consolidated before the same judge. Indeed, the same magistrate judge already has been designated to both proceedings and can coordinate pretrial matters and discovery to avoid substantial duplication of effort, unnecessary costs, and waste of scarce judicial resources. Withdrawal would not interfere with the Bankruptcy Court's administration of the BMIS liquidation, nor does this action overlap significantly with any of the Trustee's other actions, with the exception of <u>Picard v. Kohn, et al.</u>, No. 11 Civ. 1181 (S.D.N.Y.) (JSR), which is already before this Court on a motion to withdraw.

## I.   WITHDRAWAL IS MANDATORY BECAUSE THE TRUSTEE'S CLAIMS OF STANDING REQUIRE SUBSTANTIAL INTERPRETATION OF SIPA

### A.   SIPA Is Not Part of Title 11

Section 157(d) mandates withdrawal when a proceeding "requires consideration of both title 11 and other laws of the United States." 28 U.S.C. § 157(d). The Trustee and SIPC cannot dispute that SIPA is codified in Title 15 among the federal securities laws, not in Title 11. Indeed, SIPA expressly provides that it shall be considered an amendment to, and section of, the Securities Exchange Act of 1934. 15 U.S.C. § 78bbb; <u>S.E.C. v. Packer, Wilbur & Co.</u>, 498 F.2d 978, 985 n.12 (2d Cir. 1974). Consistent with its placement within the securities laws, the purposes of SIPA are to "restore investor confidence in the capital markets" and "upgrade the financial responsibility requirements for registered broker dealers." <u>SIPC v. Barbour</u>, 421 U.S. 412, 415 (1975) (citing S. Rep. No. 91-1218, at 2-4 (1970); H.R. Rep. No. 91-1613, at 2-4

(1970)).  Nevertheless, Plaintiffs urge the Court to depart from section 157(d)'s plain language by treating SIPA as if it were part of Title 11.  Their arguments on this point are without merit.

The Trustee seeks to rely on the fact that SIPA incorporates provisions of Title 11 to the extent they are consistent with SIPA. 15 U.S.C. § 78fff(b).  This incorporation does not mean, however, that Congress wished for bankruptcy courts to interpret SIPA on issues of investor protection having nothing to do with bankruptcy law, such as the scope of the SIPA trustee's standing to sue on behalf of investors.[3]  In fact, if bankruptcy law governed this issue, it would be clear under Caplin v. Marine Midland Grace Trust Co. of New York, 406 U.S. 416 (1972), and Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114 (2d Cir. 1991), that the Trustee has no such standing.

The Trustee also argues that it is significant that "Congress provided that bankruptcy courts have jurisdiction over SIPA proceedings."  (Trustee's Br. at 15 (citing Exch. Nat'l Bank of Chicago v. Wyatt, 517 F.2d 453 (2d Cir. 1975).)  Congress did so because SIPA proceedings, which are liquidations of broker-dealers, generally involve "the kind of business for which bankruptcy judges have developed special expertness and administrative skills," such as the determination of creditor claims.  Wyatt, 517 F.3d at 457-58; see also S.E.C. v. Am. Bd. of Trade, Inc., 830 F.2d 431, 438 (2d Cir. 1987) (stating that such liquidations should proceed in bankruptcy court to relieve "the burden of processing proof-of-claim forms filed by thousands of noteholders and other creditors, of setting priorities among classes of creditors, and of

---

[3]     Indeed, the House Report to SIPA states that "the bill provides that SIPC members will be liquidated in special proceedings outside the Bankruptcy Act."  H.R. Rep. No. 91-1613, at 9 (1970), reprinted in 1970 U.S.C.C.A.N. at 5254 (emphasis added). Likewise, the Senate Report recognized that upon the enactment of SIPA, "liquidation proceedings will be under the Securities Exchange Act of 1934, as amended by the bill, and not under the Bankruptcy Act."  S. Rep. No. 91-1218, at 11 (1970).

administering sales of real property"). It is undisputed that the Bankruptcy Court should continue to administer the BMIS liquidation, applying the court's expertise and skills in this area. However, just as in any bankruptcy case, an individual adversary proceeding that requires substantial interpretation of the federal securities laws, which are beyond the Bankruptcy Court's expertise, is subject to mandatory withdrawal.[4] As the Second Circuit noted in dismissing Redington for lack of subject matter jurisdiction, on remand following reversal by the Supreme Court of the holding that section 17(a) of the Securities Act creates a private right of action, there is "no support for the contention that the policies behind SIPA require that [a suit by the SIPA trustee] be heard only by the court supervising the SIPA liquidation." Redington v. Touch Ross & Co., 612 F.2d 68, 73 (2d Cir. 1979).

### B.      The Standing Issue Requires Interpretation of SIPA, Not Common Law

The standing issues in this case require substantial interpretation of SIPA, not mere application of common law principles, as the Trustee argues. (See Trustee's Br. at 17.) SIPA sets forth the powers and rights of both SIPC and the Trustee, including the power to assert claims by subrogation or assignment, see 15 U.S.C. §§ 78fff-3(a),78fff-2(b),[5] but nowhere does

---

[4]      SIPC also argues that withdrawal is not mandatory because SIPA does not conflict with title 11. The very cases upon which SIPC relies, however, state that withdrawal is mandatory not only when a "potential conflicts exist[s]" but "also when resolution of the matter would require the bankruptcy judge to 'engage in significant interpretation, as opposed to simple application' of federal non-bankruptcy law." In re Keene Corp., 182 B.R. 379, 382 (S.D.N.Y. 1995) (internal quotation marks omitted). In any event, not only do Plaintiff's standing claims require significant interpretation of SIPA, they also present a conflict because the standing asserted here is clearly unavailable under Title 11.

[5]      Section 78fff-3(a) provides in relevant part:

To the extent moneys are advanced by SIPC to the trustee to pay or otherwise satisfy the claims of customers, in addition to all other rights it may have at law or in equity, SIPC shall be subrogated to the claims of such customers with the rights and priorities provided in this chapter, except that SIPC as subrogee may assert no claim

5

the statute grant standing to bring claims on behalf of customers against third parties. The

Trustee and SIPC take the position that SIPA does not prohibit such standing and that it exists

independently under federal common law. In this fashion, they seek to supplement the standing

expressly authorized by statute with common law principles. The question nonetheless remains

one of interpreting SIPA. For example, Judge Mulligan interpreted SIPA to preclude such

common law standing based on the canon of statutory construction, "*Expressio unius est exclusio*

*alterius*," Redington, 592 F.2d 617, 634-35 (2d Cir. 1978) (Mulligan, J., dissenting), and Judge

Pollack reached the same conclusion. Mishkin v. Peat, Marwick, Mitchell &Co., 744 F. Supp.

531, 554 (S.D.N.Y.1990).[6]

Because this case requires interpretation of SIPA, Plaintiff's argument that

mandatory withdrawal must be premised on the need to interpret a federal statute, as opposed to

federal common law, is irrelevant. (Trustee's Br. at 11-12, 12 n.7.) It also is wrong, as

interpretation of federal common law can justify mandatory withdrawal when it implicates a

federal statute. Indeed, the one case they cite for this point, In re Continental Airlines, 138 B.R.

---

against customer property until after the allocation thereof to customers as provided
in section 78fff-2(c) of this title.

Section 78fff-2(b) provides in relevant part:

Any payment or delivery of property pursuant to this subsection may be conditioned
upon the trustee requiring claimants to execute, in a form to be determined by the
trustee, appropriate receipts, supporting affidavits, releases, and assignments . . . .

[6]     SIPC argues that the amendment of Section 78fff-3(a) to reserve to SIPC "all other rights
it may have at law or in equity" clarified SIPC's subrogation rights as against third parties.
(SIPC Br. at 17 n.13). Both Judge Pollack and Judge Preska rejected this very argument. See
Mishkin, 744 F. Supp. at 558 ("Nor did the addition of the words 'in addition to all other rights it
may have at law or in equity' to what is now § 78fff-3(a) give the trustee the power to bring this
claim."); SIPC v. BDO Seidman LLP, 49 F. Supp. 2d 644, 654 (S.D.N.Y.1999) (finding that
such an interpretation "defeats the purpose" of SIPA and questioning "the propriety of using
insurance principles as the foundation for SIPC's common law subrogation powers").

442, 446 (D. Del. 1992), has been distinguished in analogous circumstances. In In re Homeland Stores, Inc., 204 B.R. 427, 430-33 (D. Del. 1997), the same court found that withdrawal was mandatory where the plaintiff asserted federal common law claims that "fill[ed] gaps in the coverage of the ERISA statute." Distinguishing Continental Airlines, the court in Homeland Stores found that "Congress intended the federal district courts to grapple with these issues . . . which implicate the ERISA statute and its jurisprudence." Id. at 431-33. Similarly, Congress intended for district courts to grapple with issues that implicate SIPA, including attempts to fill alleged gaps in its statutorily-authorized standing with federal common law standing theories.

C.   **There Is No Controlling Authority To Support the Standing Asserted Here**

In their opening brief, the HSBC Defendants explained that the Trustee's attempt to bring the claims asserted here cannot be justified by simply applying the Redington precedent because that decision (1) has been widely criticized, (2) has been overcome by subsequent Second Circuit decisions on trustee standing, most notably Wagoner, and (3) is distinguishable and should not be extended to the circumstances here. (HSBC Br. at 14.) The Trustee and SIPC only address the first of these points, invoking *stare decisis*, and fail to respond to the latter two. All three raise material and substantial issues of federal non-Title 11 law requiring withdrawal.

1.   *Redington's* Judicial Critics

The Trustee misses the point when he claims the HSBC Defendants' arguments rely on overruling Redington. The issue is whether a simple application or extension of Redington controls here and, on that issue, its subsequent case history and the repeated judicial criticism of this decision are relevant factors.[7]

---

[7]   It can be plausibly argued that the Supreme Court's reversal of Redington on the ground that there was no private right of action under section 17(a), followed by the Second Circuit's dismissal on remand of the trustee's common law claims for lack of subject matter jurisdiction,

Contrary to the Trustee's contention, the Second Circuit in <u>BDO Seidman</u> expressly left the door open on the issue of whether <u>Redington</u> was correctly decided, stating that "[e]ven if we were justified in revisiting the <u>Redington</u> decision . . . we need not do so in this case, as we hold that the SIPC's claims on behalf of Baron's customers fail under Rule 12(b)(6)." <u>SIPC v. BDO Seidman LLP</u>, 222 F.3d 63, 69 (2d Cir. 2000) (internal citation omitted); <u>id.</u> ("We therefore assume, <u>without</u> <u>deciding</u>, that the SIPC has standing as the cutomers' subrogee" (emphasis added)); <u>id.</u> at 71 (likewise declining to review whether the SIPA trustee had such standing because it was "not crucial to this appeal").

Most significantly, however, <u>Redington</u>'s much-criticized decision has caused a split among judges in this District.  While stating that she strongly disagreed with its holding, Judge Preska did not disregard <u>Redington</u> as the basis for rejecting SIPC's claims, <u>BDO Seidman</u>, 49 F. Supp. at 653-54, whereas Judge Pollack obviously did in his decision concluding that SIPA does not authorize such standing, <u>Mishkin</u>, 744 F. Supp. at 557.  Even if <u>Redington</u> remains good law, the Court should consider judicial questioning of its reasoning in deciding whether to extend it to the facts presented here.[8]

---

deprived the initial decision of any binding precedential effect.   "[W]hen the Supreme Court reverses a lower court's decision on a threshold question," i.e., "a question whether the court has jurisdiction to reach the substantive law claims," the Supreme Court "effectively holds the lower court erred by reaching the merits of the case."  <u>Newdow v. Rio Linda Union School Dist.</u>, 597 F.3d 1007, 1041 (9th Cir. 2010).

[8]     SIPC argues that a parallel state court proceeding between the parties in <u>Redington</u> "acknowledged" that the Supreme Court's reversal left the <u>Redington</u> decision on standing "intact." (SIPC Br. at 16-17, 17 n.12).  To the contrary, the state court just noted that the Supreme Court reversed <u>Redington</u> "without reaching or addressing the holding as to SIPC's subrogation rights."  <u>Redington v. Touche Ross & Co.</u>, Index No. 13996/76 at 5 (N.Y. Co. Sup. Ct. Aug. 3, 1981), attached to SIPC Br.  Indeed, the state court did not treat <u>Redington</u>'s holding on standing as <i>res judicata</i>, but rather reanalyzed the standing issue independently.  <u>Id.</u> at 5-6.

2.    Subsequent Second Circuit Decisions Preclude Extending *Redington* To
This Case

The Trustee fails to address the HSBC Defendants' argument that the Second

Circuit's decisions on trustee standing since Redington, most notably Wagoner, call into

substantial question whether Redington is controlling where, as here, there is a competition to

bring non-Title 11 claims between the Trustee acting as a representative party and the parties that

actually suffered the direct injury. (HSBC Br. at 13-14 (citing Wagoner, 944 F.2d 114).)

Wagoner established the framework for analyzing whether a trustee has standing

to pursue a claim or is precluded from doing so either because of the nature of the claim or the

debtor's conduct. The first part of the Wagoner analysis provides that a trustee may not pursue a

claim on the estate's behalf if it is particular only to certain creditors. 944 F.2d at 118. In other

words, "when creditors . . . have a claim for injury that is particularized as to them, they are

exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so."

Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1093 (2d Cir. 1995) (holding that the trustee of

a company operated as a Ponzi scheme lacked standing to bring claims on behalf of investors

against the company's auditor); Caplin, 406 U.S. at 431 (holding that a trustee lacked standing to

sue on creditors' behalf in part because creditors were "capable of deciding for themselves

whether or not it is worthwhile to seek to recoup whatever losses they may have suffered," and,

as "the persons truly affected by the suit . . . should make their own assessment of the respective

advantages and disadvantages, not only of litigation, but of various theories of litigation").

This prong of Wagoner applies with full force here. The Trustee attempts to rely

on Redington to bring claims on behalf of Madoff investors for alleged failures of adequate

diligence on Defendants' part even though the Madoff investors who were allegedly directly

injured can and have brought their own suits. The competition between the Trustee and these

investors extends to the issues of forum selection and other tactical litigation decisions. For example, because the Feeder Funds to which certain of the HSBC Defendants acted as service providers were foreign based and marketed, the Feeder Funds have exclusively brought suit abroad, invoking, among other things, EU directives and implementing regulations and foreign law. Feeder Fund investors also have sued abroad as well as in the class actions in the United States. In addition, the Trustee has brought a claim that requires proof of knowledge of the fraud, whereas many direct and indirect customers have not. He has sued all the service providers to the Feeder Funds but not their auditors, as to whom his counsel presumably has a conflict. As already argued, whether Redington authorizes standing to appropriate the claims of these BMIS direct and indirect customers and interfere with their view of where and under what theory to sue presents a material and substantial question of federal non-Title 11 law.

The second part of the Wagoner analysis provides that a bankruptcy trustee does not have standing to bring a claim against third parties who allegedly assisted the bankrupt corporation in defrauding creditors, because such a claim belongs exclusively to creditors. Wagoner, 944 F.2d at 120. While this aspect of the Wagoner rule has its underpinnings in New York's *in pari delicto* doctrine, which "mandates that the courts will not intercede to resolve a dispute between two wrongdoers," it is actually a prudential limitation on standing under federal law. Kirschner v. KPMG LLP, 15 N.Y. 3d 446, 464, 484 (2010).

Whether this federal limitation on standing precludes a SIPA trustee from bringing claims as bailee or subrogee under Redington is an issue of first impression. To the extent the Trustee is suing as bailee of stolen customer property, he stands in the shoes of BMIS. Under *in pari delicto* principles, a court should not intercede in a dispute between a corrupt bailee and the third parties who allegedly assisted him in stealing the bailed property. Similarly,

10

it is well-settled that one "who invokes the doctrine of subrogation must come into court with clean hands." German Bank v. United States, 148 U.S. 573, 581 (1893). Redington does not speak to these substantial questions of federal law.

### 3.    The Trustee Seeks An Unwarranted Extension of *Redington*

Contrary to the Trustee's argument that Redington is dispositive, the circumstances in the instant case are unlike Redington and would require an unwarranted extension of that decision. In Redington, SIPC sought to assert customers' putative federal claims against the auditor to the failed broker-dealer. By contrast, here Plaintiff purports to bring non-federal claims against entities that provided services to only certain customers of BMIS, which have been denied customer status, and which therefore will not benefit from pursuit of such claims. As explained earlier, for this reason Redington is entirely off-point.

Plaintiff also claims to be standing in the shoes of persons who had no connection with the Defendants whatsoever. Such standing is necessarily based on an even more remote theory of standing than that which the Supreme Court found to have "stymie[d] SIPC's subrogation claim" in Holmes v. SIPC, 503 U.S. 258, 271 (1992). There, SIPC argued that it was subrogated to RICO claims that broker-dealer customers had against a third party for stock manipulation that led to the broker-dealers' collapse. Id. at 261. The Supreme Court disagreed, concluding that the "link is too remote between the stock manipulation alleged and the customers' harm, being purely contingent on the harm suffered by the broker-dealers." Id. at 271.[9] Here, whether the connection between the injury to BMIS customers and the services

---

[9]    The Trustee's attempt to deflect the Supreme Court's statement in Holmes, that "SIPC's theory of subrogation is fraught with unanswered questions," Holmes, 503 U.S. at 270, is also unavailing. The unanswered questions to which the Court referred in fact were the "nature of the 'common law rights of subrogation' that [SIPC] claims" and "whether they derive from federal or state common law." Id. at 271 (internal quotation marks omitted). The Court did not reach

Defendants provided to different BMIS customers is too remote to support SIPC's subrogation claim presents another substantial question of federal non-bankruptcy law requiring withdrawal.

### D.     The Trustee's Claim of Standing as Assignee Requires Additional Substantial Interpretation of SIPA

Finally, the Trustee's theory of standing as assignee also provides grounds for mandatory withdrawal.  Redington did not address whether SIPA authorizes SIPC or a trustee to sue third parties as assignee of customer claims.  While the Trustee seeks to base such standing on section 78fff-2(b) of SIPA, he fails to cite one decision supporting this theory.  In fact, district courts that have addressed the issue have concluded that the assignments authorized by this section extend only to customers' net equity claims, not to claims against third parties.  BDO Seidman, 49 F. Supp. 2d at 654 n.7; Mishkin, 744 F. Supp. at 554.  The Trustee urges an interpretation of section 78fff-2(b) against this weight of authority and thus presents a further ground for mandatory withdrawal.

### II.     PLAINTIFFS' ARGUMENT THAT THE TRUSTEE IS AN "ENTITY" FOR PURPOSES OF SLUSA IS A STRAW MAN

The only element of SLUSA's preclusive application to this case that the Trustee or SIPC seriously dispute is whether this action on behalf of thousands of BMIS customers is a "covered class action," e.g. one in which "damages are sought on behalf of more than 50 persons . . . ."  15 U.S.C. § 78bb(f)(B)(i)(I).[10]

---

those questions, however, because there – and as we believe the Court ultimately will conclude here – SIPC's theory of causation was fatally flawed. See id.

[10]     SIPC also makes without elaboration the purely conclusory—and incorrect—statement that "none of [SLUSA's] elements are met," claiming that the remaining elements (which it does not discuss) are not "important for purposes of the instant matter." (SIPC Br. at 21.)  This is makeweight, as neither SIPC nor the Trustee can credibly dispute that the claims at issue are (1) based on state law and (2) in connection with BMIS's securities fraud.

Plaintiff's argument on this point is directed at a straw man. The "entity" here for purposes of section 78bb(f)(5)(D) is not the Trustee but the BMIS estate.[11] There is no dispute that the BMIS estate is deemed to be "one entity" under section 78bb(f)(5)(D), and that SLUSA is inapplicable to actions brought by a bankruptcy trustee when he purports to act as the legal representative of an estate. These circumstances are not relevant here because, as SIPC concedes, the Trustee is not purporting to assert claims on behalf of the BMIS estate, (SIPC Br. at 4), but on behalf of the customers he claims SIPA allows him to represent.

The novel issue presented to this Court, therefore, is whether SLUSA applies to a trustee who purports to bring claims that belong not to the estate but to thousands of its customers. The SLUSA ramifications of the assertion of such claims by a SIPA trustee are untested, and Plaintiff has not cited one case finding SLUSA inapplicable in this situation. In fact, several courts have found that SLUSA does apply to claims brought by a trustee on behalf of creditors rather than an estate. See LaSala v. Bordier Et Cie, 519 F.3d 121, 134-38 (3d Cir. 2008) (holding that while SLUSA did not apply to claims owned by the bankrupt entity, "claims owned by . . . individual purchasers of stock [that] were assigned by the [p]urchasers to the Trust so that they could be prosecuted together with [claims owned by the bankrupt entity] seem to take the form of a covered class action"); RGH Liquidating Trust v. Deloitte & Touche LLP, 71 A.D.3d 198, 212 (N.Y. App. Div. 2009) ("[T]he claims of . . . the bankrupt debtor[] have all been dismissed, and the only claims asserted . . . originally belonged to [the debtor's] numerous

---

[11]    Even if Mr. Picard could be considered an "entity," the fact that he would be deemed "one person" is beside the point. By purporting to assert the claims of thousands of customers whom Madoff defrauded, even as "one person" the Trustee is purporting to bring claims "on behalf of more than 50 persons," making this a "covered class action" under the statute's plain terms. See 15 U.S.C. § 78bb(5)(B)(i)(I).

unsecured creditors, including the bondholders. This being the case, insofar as there are more than 50 bondholders, the maintenance of their claims . . . in a single action offends SLUSA.").

Moreover, the purposes of SLUSA are clearly undercut by what the Trustee is trying to do. If a BMIS customer sought to bring a state law action on behalf of more than 50 other customers claiming that various defendants aided and abetted the Madoff fraud, that action clearly would be preempted by SLUSA, to avoid circumvention of the PSLRA's heightened pleading and *scienter* requirements. The Trustee offers no reason why he, acting on behalf of BMIS customers, should have special rights under the securities laws to circumvent the PSLRA.

The Trustee cannot have it both ways. For purposes of SIPA, he claims that he is different from a normal bankruptcy trustee, who is not permitted to assert claims that belong to creditors; but for purposes of SLUSA, he claims that he is the same as a normal bankruptcy trustee, even though he is purporting to bring claims on behalf of customers that a normal bankruptcy trustee could not bring. Either the Trustee is acting on behalf of the estate, in which case his claims are subject to Wagoner, or he is acting on behalf of customers, in which case his claims are subject to SLUSA.

## III.    THE CAUSE FOR PERMISSIVE WITHDRAWAL IS SUBSTANTIAL

### A.    The Trustee's Common Law Claims Are Unquestionably Non-Core

#### 1.    The District Court Should Make The Core/Non-Core Determination

Under the Second Circuit's decision in Orion, "[a] district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core." In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993) (listing other relevant factors to be considered "once a district court makes the core/non-core determination"). Despite this clear instruction, Plaintiff argues that the District Court must wait for the Bankruptcy Court to make

this determination before considering a motion to withdraw. To the contrary, "[c]ourts of this circuit have held repeatedly that district courts may determine the nature of the proceeding in the first instance." In re VWE Group, Inc., 359 B.R. 441, 448 (S.D.N.Y. 2007) (collecting cases).[12]

## 2.    The Common Law Claims Are Non-Core

Plaintiffs cannot obscure the obvious fact that the Trustee's common law claims are fundamentally non-core, owing their existence entirely to state law. See In re Adelphia, No. 02-MDL-1529, 2006 WL 337667, at *4 (S.D.N.Y. Feb. 10, 2006) (finding state law tort claims such as aiding and abetting breach of fiduciary duty to be non-core). In fact, nowhere does the Trustee even deny that the common law claims are non-core. Rather, he says the claims are "related to" his avoidance claims, mentions unrelated adversary proceedings involving different defendants and underlying facts, and concludes that, in any event, "determining whether the Trustee's common law claims are core is unnecessary." (Trustee Br. at 29-30.)[13]

Not only are the common law claims non-core, they are the crux of the Trustee's complaint. Although Plaintiff repeatedly invokes the number of avoidance claims asserted, the amounts sought on those claims pales in comparison to what is sought on the common law claims. The Trustee alleges that the HSBC Defendants are liable for damages of "no less than $6.6 billion" (although the basis for this is not explained), Am. Compl. ¶ 1, whereas the

---

[12]    See also In re FMI Forwarding Corp., No. 01 Civ. 9462 (DAB), 2004 WL 1348956, at *6 n.5 (S.D.N.Y. June 16, 2004) ("[T]he courts of this Circuit have ruled time and again that, in the context of a withdrawal motion, the district court ruling on such motion does not have to wait for the bankruptcy court to determine whether the claims at issue are core or noncore.").

[13]    The Trustee also points out that the Feeder Fund Defendants have filed proofs of claims in the liquidation, the resolution of which he contends is "inextricably intertwined" with the non-core common law claims. (Trustee Br. at 29-30.) However, the common law claims are asserted only against HSBC entities and other "Non-Fund Defendants," not against the Feeder Funds. Therefore, a ruling on the funds' proofs of claim in the liquidation would not affect the resolution in this Court of the common law claims against other defendants, and vice versa.

avoidance claims seek to recover the administrator and custodian fees that the HSBC Defendants earned from the Feeder Funds, which the Trustee estimates at $25 million, id. ¶ 244.[14]

Thus, this case is not "at its core, a bankruptcy action to avoid and recover fraudulent transfers." (Trustee Br. at 35.)  The Trustee's most significant claims are non-core causes of action whose purpose is to hold various Defendants liable for allegedly substantially assisting Madoff's fraud by acting with knowledge of the fraud when providing services to the Feeder Funds.  These determinations are plainly beyond the Bankruptcy Court's special expertise.[15]  The predominance of these non-core claims weighs heavily in favor of withdrawal.

## B.    The Remaining *Orion* Factors All Support Withdrawal

Even if all claims were core, withdrawal would still be warranted because, "[i]n the final analysis, the critical question is efficiency and uniformity." Mishkin v. Ageloff, 220 B.R. 784, 800 (S.D.N.Y. 1998).  Here, these interests are best served by litigating the Trustee's claims in the District Court, where they may be coordinated with the consolidated shareholder class actions already pending here.  The overlap of factual and legal issues between these actions, which seek to recover the same losses from the same group of defendants based on identical allegations, is far more significant than any connection to the Trustee's largely unrelated actions in the Bankruptcy Court.

---

[14]    In total, the Trustee's avoidance claims seek to recover from all Defendants only $2 billion in alleged fraudulent transfers and $400 million in fees. Am. Compl. at ¶ 1. Thus, the (unexplained) damages claim against the HSBC Defendants for $6.6 billion is more than three times larger than the avoidance claims against all other Defendants combined.

[15]    Judge Preska's decision in In re Fairfield Sentry Ltd. involved a request to withdraw the reference in cases calling for construction of the terms of Chapter 15 of the Bankruptcy Code and, in particular, whether the cases sought to be withdrawn and then remanded to state court were related to the Chapter 15 case pending before the Bankruptcy Court. Judge Preska's decision that the Bankruptcy Court should make this determination "in the first instance" has no bearing on the withdrawal motion here, which is not based on bankruptcy law.

1.    This Action Is Inextricably Intertwined with the Consolidated Actions

Both the Trustee's common law claims and the shareholder class actions arise from the alleged failure to conduct adequate diligence or to heed supposed red flags in the course of providing services to the Feeder Funds. While the Trustee tries to paint the overlap between these actions as "limited," he cannot distinguish them except by pointing to minor differences in the causes of action asserted and the presence of additional defendants in the Trustee suit. (Trustee Br. at 35-36.) This glosses over the reality that the facts underlying both actions are identical. The class action plaintiffs who have filed a brief in support of the instant motion to withdraw have it right: the Trustee Action clearly duplicates and competes with their claims.

Plaintiff and SIPC invoke only the sheer number of adversary proceedings filed by the Trustee to suggest the Bankruptcy Court has some meaningful connection to the instant action. (Trustee Br. at 32; SIPC Br. at 28) As the Second Circuit noted on remand in Redington, however, "the factual issues in a negligence suit against [third party service providers] do not necessarily bear any relation to the factual issues involved in a SIPA proceeding, and there is little likelihood that legal issues will overlap." Redington, 612 F.2d at 73. Likewise here, the vast majority of the Trustee's 1,000 adversary proceedings assert standard bankruptcy law claims to avoid and recover transfers of fictitious profits made to BMIS customers. They do not raise novel issues of standing or preemption under the federal securities laws nor assert non-core common law claims such as aiding and abetting Madoff's fraud. Similarly, the Trustee's actions against other feeder funds do not involve the same group of defendants or underlying conduct.[16]

---

[16]    Exceptions include the Trustee's suits in Picard v. J.P. Morgan Chase & Co., No. 10-AP-4932 (S.D.N.Y. Bankr.) and Picard v. Kohn, No. 10-AP-5411 (S.D.N.Y. Bankr.), both of which are now before the District Court on motions to withdraw because they make similar allegations and involve similar novel issues under federal non-Title 11 law. See Picard v. J.P. Morgan Chase & Co., No. 11 Civ. 913 (S.D.N.Y.) (CM); Picard v. Kohn, No. 11 Civ. 1181 (S.D.N.Y.) (JSR).

The Court's decision in <u>Mishkin</u> is instructive.  There, the SIPC trustee sought to avoid withdrawal of two core actions on the grounds that they were "related to other proceedings before the bankruptcy court in which the parties have not sought withdrawal," to which the bankruptcy judge had "devoted a considerable amount of time . . . holding countless hearings and issuing an equally large number of orders."  <u>Mishkin</u>, 220 B.R. at 800.  Nevertheless, the Court withdrew the reference because the two actions were "most related" to a third action subject to mandatory withdrawal.  <u>Id</u>.  The Court held that "to leave [the actions] before the bankruptcy court would, on balance, result in greater inefficiency than withdrawing them here, in spite of whatever related actions may continue before the bankruptcy court."  <u>Id</u>.  The same is true here, because this action is deeply related to the Consolidated Actions in the District Court.

2.    <u>Withdrawal Will Avoid Unnecessary Duplication and Inconsistencies</u>

As a result of the substantial overlap between these actions, the failure to withdraw would lead to two different courts adjudicating the same defendants' potential liability for services they provided to the Feeder Funds.  As previously explained, this would risk inconsistent results on a host of issues and cause needlessly duplicative effort, particularly given the Bankruptcy Court's inability to issue final orders on the non-core claims.  (HSBC Br. at 19-20; 22-24.)  All told, litigating the Trustee's claims in the Bankruptcy Court, subsequent review by the District Court, and resolution of the parallel shareholder claims would require three rounds of briefing on identical issues arising from the same operative facts.  This would impose heavy costs and delays for the parties and duplication of effort by the federal judiciary.

3.    <u>The Bankruptcy Court Does Not Possess Knowledge of the Particular<br>Facts Sufficient to Outweigh Efficiency Concerns</u>

In the course of administering the BMIS liquidation, the Bankruptcy Court has not had occasion to consider or rule upon issues specific to the claims and Defendants involved

18

in the instant action. The Trustee originally filed this case in July 2009 against only two of the HSBC Defendants and one feeder fund, alleging avoidance and turnover claims. Nothing happened in the action (except adjournments) until December 5, 2010, when the Trustee filed his Amended Complaint joining over fifty new defendants, including additional feeder funds and HSBC entities, and asserting his billion-dollar common law claims. The action remains at an early stage, as many Defendants have not been served and no one has responded to the Amended Complaint. Mishkin, 220 B.R. at 800 (permissive withdrawal appropriate for a case in its "early stages"). While the Bankruptcy Court has general familiarity with the BMIS liquidation, it has not issued any rulings in this case or engaged with the factual or legal issues presented.[17]

As a result, the Bankruptcy Court is not more familiar with the Trustee's allegations, the bulk of which concern common law claims beyond its specialized expertise and jurisdiction to enter final orders. Only the District Court can enter final orders on all claims and preside over the jury trial that the HSBC Defendants intend to demand at the appropriate time. Thus, the District Court is better-positioned to resolve the claims in this litigation efficiently.

4.   The District Court Is in a Superior Position to Coordinate Discovery

Adjudicating the Defendants' liability in both the Trustee's suit and the Consolidated Actions will, to quote SIPC, "likely [] involve extensive discovery demanding court oversight." (SIPC Br. at 29 n.20.) The Trustee inexplicably suggests that there is "no risk of duplicative discovery" between the two actions. (Trustee Br. at 35.) This statement defies logic, as both the Trustee and shareholder plaintiffs must establish awareness by Defendants of a nearly identical list of red flags to prove their respective claims. To do so, both the Trustee and

---

[17]   Of the actions referenced by the Trustee to argue for the Bankruptcy Court's "unique knowledge," only one contains more than a passing reference to HSBC and names an HSBC entity as a nominal defendant, see 2nd Am. Compl., Picard v. Kingate Global Fund, Ltd. et al., No. 09-AP-1161 (S.D.N.Y. Bankr. July 21, 2009).

19

the shareholders will have to review the same potential universe of documents relevant to Defendants' knowledge, particularly as regards the Feeder Funds implicated in both suits.

Litigating the claims separately in two courts risks duplication of effort and may also entail substantial burdens of complying with different and potentially conflicting standards and schedules. By contrast, Magistrate Judge Henry Pitman has been designated to both actions and could ensure that discovery and pretrial matters proceed in the District Court in an orderly, efficient manner without conflict, which would allow considerable savings in cost and time.

### C.  The Case Presents No Forum-Shopping Concerns

One cannot ignore the irony of the Trustee, who has chosen to file over one thousand lawsuits before the same Court, accusing the defendants of forum shopping. In any event, there is no forum shopping motive here. By seeking withdrawal, the HSBC Defendants are not seeking the benefit of more favorable laws or geographical convenience. See Adelphia, 2006 WL 337667 at *5 (finding no forum shopping motive because "both the bankruptcy court and the district court [are] bound to follow Second Circuit law, and both courts [are] located in downtown Manhattan"). Rather, they seek to avoid the costs and risk of inconsistency of defending the same claims in multiple courts. Similarly baseless is the Trustee's argument that the HSBC Defendants' intent to move to dismiss for *forum non conveniens* is indicative of forum shopping. The HSBC Defendants would raise this defense in either court, as their position is that these essentially foreign disputes should be litigated in the actions pending overseas. Unlike the Bankruptcy Court, this Court can issue final orders on all claims, making it the superior domestic forum either to try the claims or dismiss them in favor of a more convenient foreign forum.

### CONCLUSION

For the reasons above, the HSBC Defendants respectfully request that the Court enter an order withdrawing the reference of the Trustee Action to the Bankruptcy Court.

Dated: New York, New York
   April 1, 2011

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By  /s/   Evan A. Davis

Evan A. Davis, a Member of the Firm

*Attorneys for Defendants HSBC Bank plc, HSBC Holdings plc, HSBC Securities Services (Luxembourg) S.A., HSBC Institutional Trust Services (Ireland) Limited, HSBC Securities Services (Ireland) Limited, HSBC Institutional Trust Services (Bermuda) Limited, HSBC Bank USA, N.A., HSBC Securities Services (Bermuda) Limited, HSBC Bank (Cayman) Limited, HSBC Private Banking Holdings (Suisse) S.A., HSBC Private Bank (Suisse) S.A., HSBC Fund Services (Luxembourg) S.A., and HSBC Bank Bermuda Limited*

21