UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------- x

IRVING H. PICARD,                                :

               Plaintiff,       :

               -v-              :

HSBC BANK PLC, ALPHA PRIME FUND LIMITED,         :
HSBC SECURITIES SERVICES (LUXEMBOURG)            :
S.A., HSBC BANK BERMUDA LIMITED, HSBC            :
FUND SERVICES (LUXEMBOURG) S.A., HSBC            :        11 Civ. 763 (JSR)
PRIVATE BANK (SUISSE) S.A., HSBC PRIVATE         :
BANKING HOLDINGS (SUISSE) S.A., HSBC             :
BANK (CAYMAN) LIMITED, HSBC SECURITIES           :
SERVICES (BERMUDA) LIMITED, HSBC BANK            :
USA, N.A., HSBC INSTITUTIONAL TRUST              :
SERVICES (BERMUDA) LIMITED, HSBC                 :
SECURITIES SERVICES (IRELAND) LIMITED,           :
HSBC INSTITUTIONAL TRUST SERVICES                :
(IRELAND) LIMITED, HSBC HOLDINGS PLC,            :
                                                 :
               Defendants.      :
------------------------------------------- :
IRVING H. PICARD,                                :
                                                 :
               Plaintiff.       :
                                                 :
               -v-              :

ALPHA PRIME FUND LIMITED, HSBC BANK PLC,         :
HSBC SECURITIES SERVICES (LUXEMBOURG)            :
S.A., HSBC BANK BERMUDA LIMITED, HSBC            :
FUND SERVICES (LUXEMBOURG) S.A., HSBC            :
PRIVATE BANK (SUISSE) S.A., HSBC PRIVATE         :
BANKING HOLDINGS (SUISSE) S.A., HSBC             :        11 Civ. 836 (JSR)
BANK (CAYMAN) LIMITED, HSBC SECURITIES           :
SERVICES (BERMUDA) LIMITED, HSBC BANK            :
USA, N.A., HSBC INSTITUTIONAL TRUST              :
SERVICES (BERMUDA) LIMITED, HSBC                 :
SECURITIES SERVICES (IRELAND) LIMITED,           :
HSBC INSTITUTIONAL TRUST SERVICES                :
(IRELAND) LIMITED, HSBC HOLDINGS PLC,            :
UNICREDIT S.p.A., PIONEER ALTERNATIVE            :        OPINION
INVESTMENT MANAGEMENT LIMITED,                   :
                                                 :
               Defendants.      :
------------------------------------------- x

JED S. RAKOFF, U.S.D.J.


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/25/11

In this case, the Court was called upon to determine whether an adversary proceeding commenced in the Bankruptcy Court in connection with the liquidation of Bernard L. Madoff Investment Securities LLC ("Madoff Securities") belonged instead, in whole or part, in the District Court.  Following briefing and oral argument, the Court, ruling from the bench on April 12, 2011, answered this question in the affirmative and withdrew the reference to the Bankruptcy Court of adversary proceeding No. 09-1364A (BRL) (the "Trustee's Action") for the limited purpose of addressing two threshold issues of non-bankruptcy federal law.  This Opinion sets forth the reasons for that ruling.

By way of background, on July 15, 2009 Irving H. Picard (the "Trustee"), appointed as trustee pursuant to the Securities Investor Protection Act ("SIPA") for the consolidated liquidation of Madoff Securities, commenced the Trustee's Action in Bankruptcy Court.  On December 5, 2010, the Trustee filed an amended complaint, which names as defendants several Madoff Securities feeder funds and various service providers to the funds.  The amended complaint alleges both bankruptcy law claims (Counts 1-19), seeking to avoid about $2 billion in payments and service fees allegedly received by the defendants from the feeder funds, and common law claims (Counts 20-24), seeking $6.6

billion in damages from the "HSBC Defendants"[1] and approximately $2 billion in damages from a group of thirty-six other defendants, including the "UCG/PAI Defendants,"[2] for failing to adequately investigate Madoff Securities despite being confronted with "myriad red flags and indicia of fraud." Am. Compl. ¶ 557.

On February 2, 2011, the HSBC Defendants filed a motion to withdraw the reference of the Trustee's Action to the Bankruptcy Court, and on February 7, 2011, the UCG/PAI Defendants filed a similar motion. Since both motions sought the same relief, the Court set a joint briefing schedule and heard oral argument on April 12, 2011. Following the argument, the Court orally granted the motions to withdraw the bankruptcy reference for the limited purpose of addressing two threshold issues: (1) whether the Trustee has standing to bring the claims set forth in the amended complaint; and (2) whether the claims in the Trustee's Action are preempted by the Securities Litigation Uniform Standards Act ("SLUSA"). The Court

---

[1] The HSBC Defendants consist of HSBC Bank PLC, HSBC Holdings PLC, HSBC Securities Services (Luxembourg) S.A., HSBC Institutional Trust Services (Ireland) Limited, HSBC Securities Services (Ireland) Limited, HSBC Institutional Trust Services (Bermuda) Limited, HSBC Bank USA, N.A., HSBC Securities Services (Bermuda) Limited, HSBC Bank (Cayman) Limited, HSBC Private Banking Holdings (Suisse) S.A., HSBC Private Bank (Suisse) S.A., HSBC Fund Services (Luxembourg) S.A., and HSBC Bank Bermuda Limited.

[2] The UCG/PAI Defendants consist of UniCredit S.p.A. and Pioneer Alternative Investment Management Ltd.

confirmed these rulings in a written order issued April 13, 2011.  The

reasons for these rulings now follow:

While District Courts have original jurisdiction over

bankruptcy cases and all civil proceedings "arising under title 11, or

raising in or related to cases under title 11," see 28 U.S.C. § 1334,

the District Court may refer actions within its bankruptcy

jurisdiction to the bankruptcy judges of the district pursuant to 28

U.S.C. § 157(a).  The Southern District of New York has a standing

order in place that provides for automatic reference of such matters

to the Bankruptcy Court.

Notwithstanding the automatic reference, a judge of the

District Court, in his or her discretion, may sua sponte withdraw the

reference in a given case, for any of a wide variety of reasons, such

as that it is inextricably intertwined with a non-bankruptcy case

before the district judge, or that it threatens to interfere with the

District Court's rulings in a related matter, or that judicial

efficiency can better be achieved by removing the case to the District

Court, or any other "cause shown."  28 U.S.C. § 157(d).  A litigant,

however, may only seek withdrawal of the reference pursuant to 28

U.S.C. § 157(d) if certain conditions are satisfied.

Specifically, a litigant can mandate withdrawal of the

bankruptcy reference where the movant shows that, absent the

withdrawal, the bankruptcy judge would be obliged "to engage in

significant interpretation, as opposed to simple application, of

4

federal laws apart from the bankruptcy statutes." City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d Cir. 1991). See also In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990) (withdrawal of the reference is required "where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding"). Alternatively, a litigant may move for permissive withdrawal in the district court's discretion.[3]

Turning first to mandatory withdrawal, the Court concludes that two threshold issues in this case will, in fact, require substantial and material interpretation of non-bankruptcy federal law and that the Court is thus required to withdraw the reference to address these two issues.

The first issue concerns whether the Trustee has standing to bring the common law claims in the amended complaint. Since it is well-established that title 11 generally confers no standing to bring

---

[3] To determine whether permissive withdrawal is appropriate, the District Court "should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993). A "core proceeding," is one which the Bankruptcy Court may "hear and determine," while a "non-core proceeding," is one which the Bankruptcy Court may hear, but for which the Bankruptcy Court is only empowered to submit proposed findings of fact and conclusions of law to the district court for de novo review. 28 U.S.C. § 157(b)(1), (c)(1). "[O]nce a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." In re Orion Pictures Corp., 4 F.3d at 1101.

claims on behalf of the bankrupt estate's creditors, see Caplin v. Marine Midland Grace Trust Co. of New York, 406 U.S. 416, 428-34 (1972), the Trustee contends that his power to bring these claims is principally derived from SIPA. See Am. Compl. ¶¶ 48, 50; 15 U.S.C. § 78aaa et seq. However, the Trustee and the Securities Investment Protection Corporation ("SIPC"), which also submitted briefing on the motions, argue that SIPA is effectively a bankruptcy statute and thus that, even if substantial interpretation of SIPA were required, it is entirely appropriate for the bankruptcy court to engage in such interpretation. But while it is certainly true that SIPA liquidation proceedings may be brought in the bankruptcy court and that SIPA incorporates provisions of title 11 to the extent that they are consistent with SIPA, SIPA expressly provides that it shall be considered an amendment to, and section of, the Securities Exchange Act of 1934, and for this reason is codified in Title 15 (where securities laws are placed), rather than in Title 11 (where bankruptcy laws are placed). See 15 U.S.C. § 78bbb ("Except as otherwise provided in this chapter, the provisions of the Securities Exchange Act of 1934 ... apply as if this chapter constituted an amendment to, and was included as a section of, such Act."). The reason for this language and placement is that SIPA is, first and foremost, concerned with the protection of securities investors (as its very title states), whether in or outside the bankruptcy context. A substantial issue under SIPA is therefore, almost by definition, an issue "the

6

resolution of [which] requires consideration of both title 11 and other laws of the United States." 28 U.S.C. § 157(d).

The Trustee has advanced four other grounds for standing to bring his common law claims: bailee of customer property, representative of SIPC's subrogation rights, assignee of customers' claims, and successor of a joint tortfeasor.  But each of these theories presents difficult questions under non-bankruptcy federal law.

For example, the Trustee's fourth theory of standing, "as successor of a joint tortfeasor," may well be precluded by the so-called "Wagoner" doctrine -- but not necessarily.  In Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 120 (2d Cir. 1991), the Second Circuit indicated that the common law defense of in pari delicto might in many instances preclude joint tortfeasors from standing to bring claims in federal court premised on the torts.  As the New York Court of Appeals recently clarified in Kirschner v. KPMG LLP, --- N.E. 2d ----, 15 N.Y. 3d 446, 459 n.3 (2010), while the perimeters of the in pari delicto defense are a matter of state law, the degree to which such a defense may deprive a plaintiff of standing is a matter of federal law and largely undeveloped federal law at that.  See also Krys v. Sugrue, Nos. 08 Civ. 3065, 08 Civ. 3086 (S.D.N.Y. April 25, 2011).

The Trustee also argues that he has standing to bring the common law claims as a subrogee of SIPC's rights and as a bailee of

7

customer property.  In arguing that he has standing as bailee and subrogee, the Trustee principally relies upon Redington v. Touche Ross & Co., 592 F.2d 617, 624 (2d Cir. 1978), rev'd on other grounds, 442 U.S. 560 (1979).  In Redington, the Second Circuit first held that § 17(a) of the Securities Exchange Act of 1934 created a private cause of action so that customers of a failed brokerage firm could bring suit against the broker's accountants for preparing misleading financial statements.  Id. at 621.  The Second Circuit further held that SIPC (as subrogee of the customers whose claims it had paid) and the SIPA trustee (as bailee of customer property) both had standing to pursue claims on behalf of the broker's customers.  Id. at 624.

The Supreme Court, however, subsequently reversed Redington's holding that § 17(a) of the Exchange Act created a private right of action, see Touche Ross & Co. v. Redington, 442 U.S. 560, 571-72 (1979), and, while the Supreme Court did not reach whether SIPC and/or the SIPA trustee had standing to bring the third party claims, courts in this circuit have expressed skepticism about whether that part of Redington is still good law.  See Securities Investor Protection Corp. v. BDO Seidman, LLP, 49 F. Supp. 2d 644, 653 (S.D.N.Y. 1999); Mishkin v. Peat, Marwick, Mitchell & Co., 744 F. Supp. 531, 558 (S.D.N.Y. 1990).  Indeed, such decisions aside, there are reasons to believe that the precedential force of Redington has been weakened, perhaps fatally, by subsequent Second Circuit and Supreme Court cases.

In particular, the Second Circuit's decision in Wagoner,
supra, calls into question whether the Trustee can purportedly bring
claims on behalf of customers when these claims might well be
impermissible if brought on behalf of the estate, especially since the
Trustee's proposed distribution of any recovered funds would be the
same under either theory.  Under a traditional bailment theory, a
trustee would return any recovered bailments to the individual
bailors, but, in this case, the Trustee proposes to distribute
recovered funds pro rata to customers in accordance with SIPA.  Thus,
since the end result is the same whether the Trustee acts as "bailee"
or bankruptcy trustee in the shoes of Madoff Securities, the question
of whether Wagoner bars the Trustee from bringing fraud claims
purportedly on behalf of customers is a novel federal question that
has not been firmly resolved.  In addition, Wagoner reaffirms the
principle that parties who do not have a "personal stake in the
outcome of the controversy ... do[] not meet the case or controversy
requirement of the Constitution" and suggests that this principle
"coincides with the scope of the powers the Bankruptcy Code gives a
trustee."  Wagoner, 944 F.2d at 118 ("[I]f a trustee has no power to
assert a claim because it is not one belonging to the bankrupt estate,
then he also fails to meet the prudential limitation that the legal
rights asserted must be his own.").  Thus, whether federal limitations
on standing preclude the Trustee from pursuing claims based primarily
on harm suffered not by the Madoff Securities estate itself, but by

9

particular customers -- customers who have already commenced their own lawsuits to recover for their injuries -- is another complex issue that will require substantial interpretation of non-bankruptcy federal law.

Similarly, another case decided after Redington -- Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992) -- calls into question the legitimacy of the Trustee's subrogation theory.  In that case, the Supreme Court held that SIPC could not recover on RICO claims brought against a third party because the link between the third party's alleged misconduct and the customers' harm was too remote.  Id. at 269-70.  While in disposing of SIPC's RICO claims, the Supreme Court did not reach whether SIPC had standing as subrogee of the customers whose claims it had paid, the Supreme Court specifically observed that "SIPC's theory of subrogation is fraught with unanswered questions."  See id. at 270 (1992) (citing Mishkin v. Peat, Marwick, Mitchell & Co., 744 F. Supp. 531, 556-557 (S.D.N.Y. 1990)).  In particular, the Supreme Court noted that SIPC could not articulate its theory of subrogation, "leaving [the Court] to guess at the nature of the 'common law rights of subrogation' that it claims, and failing to tell [the Court] whether they derive from federal or state common law."  Holmes, 503 U.S. at 271.

Even assuming, moreover, that the parts of Redington not reversed by the Supreme Court are still good law, the instant case differs from Redington in various important respects, so determining

10

whether the Trustee has standing under theories of bailment and subrogation will certainly require more than a "simple application" of Redington.  While in Redington, SIPC was suing the failed brokerage firm's own accountants, in this case the Trustee is suing entities that provided no services to Madoff Securities directly, but only provided services to certain of its customers -- many of whom have commenced their own lawsuits.  It also bears noting that, while seeking to represent customers for the purpose of bringing common law claims against their service providers, the Trustee also seeks to deny these customers' claims.  See Am. Compl. ¶¶ 457-60, Count 11.  Thus, it is not even clear that the customers the Trustee is purporting to represent will benefit if the Trustee prevails on his claims against the service providers.  And, with respect to subrogee standing, Redington merely held that SIPC had standing to bring third-party actions as subrogee; it did not address whether a SIPA trustee could bring claims under a subrogation theory on behalf of SIPC.

Turning to the Trustee's final basis for standing -- assignee standing -- the Court concludes that resolving this issue will also require substantial interpretation of SIPA because it is far from clear that SIPA permits as broad a theory of assignee standing as is being asserted by the Trustee in this case.  Indeed, at least four courts have concluded that SIPA only permits assignments of customers' net equity claims and not claims against third parties.  See Mishkin v. Peat, Marwick, Mitchell & Co., 744 F. Supp. 531, 554 (S.D.N.Y.

11

1990); <u>Securities Investor Protection Corp. v. BDO Seidman, LLP</u>, 49 F.

Supp. 2d 644, 654 n.7 (S.D.N.Y. 1999); <u>In re Park S. Sec., LLC</u>, 326

B.R. 505, 515 (Bankr. S.D.N.Y. 2005); <u>Giddens v. D.H. Blair & Co.</u>, 280

B.R. 794, 803-05 (Bankr. S.D.N.Y. 2002).  Also, given the Trustee's

vague assertion that he has received "multiple, express assignments of

certain claims of the accountholders," it is not even clear what

claims have been assigned to the Trustee.  While <u>In re CBI Holding

Co.</u>, 529 F.3d 432, 459 (2d Cir. 2008), held that a bankruptcy trustee

has standing to assert claims expressly assigned to him by creditors

pursuant to § 541(a)(7) of the Bankruptcy Code, that case was not a

SIPA case.  And if, as movants contend and at least some courts have

held, SIPA does not permit assignment of third party claims, then

there may be a conflict between SIPA and ordinary bankruptcy law --

something that itself warrants withdrawal of the bankruptcy reference.

See <u>In re Boston Generating, LLC</u>, No. 10 Civ. 6528 (DLC), 2010 WL

4288171, at *4 (S.D.N.Y. Nov. 1, 2010) (noting that mandatory

withdrawal is appropriate when "substantial and material potential

conflicts exist between non-bankruptcy federal laws and Title 11")

(internal quotations and citations omitted).

The other threshold issue that will require substantial and

material interpretation of non-bankruptcy federal law is whether the

Trustee's Action is a "covered class action" that is preempted by

SLUSA.  SLUSA requires the dismissal of a "covered class action" that

is (1) based on state law and (2) alleges "an untrue statement or

12

omission of a material fact in connection with the purchase or sale of a covered security" or alleges that "the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p. A "covered class action" is defined as a lawsuit in which (1) "damages are sought on behalf of more than 50 persons or prospective class members," or (2) "one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties." 15 U.S.C. § 77p(f)(2)(A).

SLUSA does, however, provide that, in counting class members, "a corporation, investment company, pension plan, partnership, or other entity, shall be treated as one person or prospective class member ... if the entity is not established for the purpose of participating in the action." 15 U.S.C. § 77p(f)(2)(C). The Trustee and SIPC contend that the Trustee is clearly an "entity" and thus the Trustee's Action is not a "covered class action" because an entity is treated as one person. This would clearly be correct if the Trustee were suing on behalf of the Madoff Securities estate, for the estate would then be considered an entity and the Trustee's Action would not be a covered class action. However, as the movants here contend, in this case the Trustee is primarily suing, not on behalf of the Madoff Securities estate, but on behalf of thousands of customers. Thus, whether the Trustee's Action is a "covered class action" under SLUSA

13

is a novel question of non-bankruptcy federal law that should be determined by a an Article III judge.

Needless to say, the Court, in finding that these two threshold issues pose difficult questions of non-bankruptcy federal law, expresses no opinion as to how these issues, which are now being briefed to this Court, will be resolved.  The Court also notes that, having concluded that withdrawal is mandated, the Court has no need to resolve whether permissive withdrawal would also be appropriate here.

Accordingly, the Court affirms its prior Order withdrawing the bankruptcy reference for the limited purpose of resolving two difficult federal questions -- whether the Trustee has standing to pursue his common law claims and whether the Trustee's Action is preempted by SLUSA.  Following resolution of these issues, the Court, absent unforeseen developments, anticipates returning this case to the Bankruptcy Court.

_____
JED S. RAKOFF, U.S.D.J.

Dated:  New York, New York
        April 25, 2011

14