**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, Plaintiff,<br><br>            v.<br><br>HSBC BANK PLC, et al.,<br><br>           Defendants. | No. 11 Civ. 763 (JSR) |

## MEMORANDUM OF LAW IN SUPPORT OF THE HSBC DEFENDANTS' MOTION TO DISMISS THE TRUSTEE'S COMMON LAW CLAIMS

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Evan A. Davis
Thomas J. Moloney
David E. Brodsky
Marla A. Decker
Charles J. Keeley
Jason B. Frasco

One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for Defendants HSBC Bank plc, HSBC Holdings plc, HSBC Securities Services (Luxembourg) S.A., HSBC Institutional Trust Services (Ireland) Limited, HSBC Securities Services (Ireland) Limited, HSBC Institutional Trust Services (Bermuda) Limited, HSBC Bank USA, N.A., HSBC Securities Services (Bermuda) Limited, HSBC Bank (Cayman) Limited, HSBC Private Banking Holdings (Suisse) S.A., HSBC Private Bank (Suisse) S.A., HSBC Fund Services (Luxembourg) S.A., and HSBC Bank Bermuda Limited*

<u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF AUTHORITIES ............................................................................ iii

PRELIMINARY STATEMENT ..................................................................... 1

BACKGROUND .............................................................................................. 2

     A.     The Amended Complaint ........................................................... 2

     B.     Fund And Investor Litigation .................................................... 5

ARGUMENT ................................................................................................... 6

I.     THE TRUSTEE HAS NO STANDING TO BRING THE COMMON LAW CLAIMS ON BEHALF OF BLMIS ......................................................... 6

II.     THE TRUSTEE HAS NO STANDING TO BRING THE COMMON LAW CLAIMS ON BEHALF OF ALL BLMIS CUSTOMERS .................................... 8

     A.     <u>Redington</u> Is No Longer Good Law ......................................... 8

     B.     <u>Redington</u> Standing Should Not Be Extended To Common Law Claims .. 13

     C.     <u>Redington</u> Standing Has Been Limited By <u>Wagoner</u> And <u>Hirsch</u> ............. 14

     D.     <u>Redington</u> Standing Has Been Limited By <u>Holmes</u> And <u>Lerner</u> ............... 16

     E.     Customer Assignments Cannot Confer Standing On The Trustee ............ 19

III.     THE TRUSTEE HAS NO STANDING TO ASSERT CLAIMS OF HSBC-SERVICED FEEDER FUNDS OR THEIR INVESTORS ................................... 21

     A.     SIPA Does Not Grant The Trustee Standing To Assert The Particularized Claims Of Feeder Funds And Their Investors ........................................... 22

     B.     Allowing The Trustee To Assert Claims That Have Been Or Could Be Asserted By The Feeder Funds Or Their Investors Also Violates Prudential Standing Principles ................................................................... 24

     C.     The Trustee's Standing Under SIPA Should Be Interpreted To Avoid An Absurd And Unconstitutional Result ........................................................... 25

IV.     SIPA DOES NOT GRANT SIPC OR A TRUSTEE STANDING TO SEEK CONTRIBUTION FOR SIPA PAYMENTS TO CUSTOMERS ......................... 26

V.      THE TRUSTEE LACKS STANDING TO ASSERT HIS QUASI-CONTRACT
        CLAIMS ........................................................................................................   29

VI.     SLUSA PREEMPTS THE TRUSTEE'S CLAIMS ON BEHALF OF BLMIS
        CUSTOMERS.................................................................................................   31

        A.      The Trustee's State Law Claims Are Preempted Under The Plain Meaning
                Of SLUSA..............................................................................................   32

                1.      The Trustee's Suit On Behalf Of Thousands Of Customers
                        Is A "Covered Class Action" .............................................................   32

                2.      The Trustee's Claims Clearly Allege Fraud "In Connection With"
                        A "Covered Security" ........................................................................   35

        B.      Preempting The Trustee's Claims Serves The Purposes Of SLUSA .........   36

        C.      The SIPA Statutory Scheme Suggests No Reason For Not Applying
                SLUSA Preemption Here...........................................................................   39

CONCLUSION.................................................................................................   40

# TABLE OF AUTHORITIES

Page(s)

**Rules and Statutes**

11 U.S.C. § 362 ................................................................................. 29

15 U.S.C. § 77r(b) ............................................................................. 35

15 U.S.C. § 78bb(f) ........................................................................... 1

15 U.S.C. § 78bb(f)(5)(B)(i)(I) ......................................................... 32, 34

15 U.S.C. § 78bb(f)(5)(D) ................................................................ 32, 34

15 U.S.C. § 78bb(f)(5)(E) ................................................................. 35

15 U.S.C. § 78ddd(c)(2) ................................................................... 11

15 U.S.C. § 78fff-1(a) ...................................................................... 12

15 U.S.C. § 78fff-2(b) ...................................................................... 19

15 U.S.C. § 78fff-2(c)(1) .................................................................. 11

15 U.S.C. § 78fff-2(c)(3) .................................................................. 27

15 U.S.C. § 78fff-3 .......................................................................... 11

15 U.S.C. § 78fff(a)(1)(B) ................................................................ 21

15 U.S.C. § 78*lll*(2) ....................................................................... 34

15 U.S.C. § 78*lll*(11) ..................................................................... 10

15 U.S.C. § 78u-4(b)(1) .................................................................... 37

15 U.S.C. § 78u-4(b)(2) .................................................................... 37

N.Y.C.P.L.R. §§ 1401-02 .................................................................. 28

**Cases**

Al-Aulaqi v. Obama,
727 F. Supp. 2d 1 (D.D.C.) ............................................................... 25

Bankr. Servs., Inc. v. Ernst & Young (In re CBI Holding Co.),
529 F.3d 432 (2d Cir. 2008)..................................................................... 20

Barron v. Igolnikov,
No. 09 Civ. 4471 (TPG), 2010 WL 882890,
(S.D.N.Y. Mar. 10, 2010) ...........................................................31-32, 36

Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Grp., Inc.),
336 F.3d 94 (2d Cir. 2003)..................................................................... 14

Breeden v. Kirkpatrick & Lockhart, LLP,
268 B.R. 704 (S.D.N.Y. 2001).................................................................. 7

Caplin v. Marine Midland Grace Trust Co. of N.Y.,
406 U.S. 416 (1972)............................................................................... 12

Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,
511 U.S. 164 (1994)............................................................................... 37

Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,
70 N.Y.2d 382 (1987)............................................................................ 30

DeBartolo Corp. v. Florida Gulf Coast Trades Council,
485 U.S. 568 (1988)............................................................................... 26

Defer LP v. Raymond James Fin., Inc.,
654 F. Supp. 2d 204 (S.D.N.Y. 2009)..................................................... 37

E.F. Hutton & Co. v. Hadley,
901 F.2d 979 (11th Cir. 1990) ............................................................... 15

Ellington Mgmt. Grp., LLC v. Ameriquest Mortg. Co.,
No. 09 Civ. 0416 (JSR), 2009 WL 3170102 (S.D.N.Y. Sept. 29, 2009)........... 37-38

Friedman v. Harold,
638 F.2d 262 (1st Cir. 1981).............................................................. 24-25

Giddens v. D.H. Blair & Co. (In re A.R. Baron & Co.),
280 B.R. 794 (Bankr. S.D.N.Y. 2002)..................................................... 20

Grace v. Sterling, Grace & Co.,
289 N.Y.S.2d 632 (1st Dep't 1968) ........................................................ 22

Granite Partners, L.P. v. Bear, Stearns & Co.,
17 F. Supp. 2d 275 (S.D.N.Y. 1998)....................................................... 30

Herrington v. Verrilli,
151 F. Supp. 2d 449 (S.D.N.Y. 2001)..................................................... 14

Hirsch v. Arthur Andersen & Co.,
178 B.R. 40 (D. Conn. 1994) ........................................................... 15

Hirsch v. Arthur Andersen & Co.,
72 F.3d 1085 (2d Cir. 1995).............................................................. passim

Holmes v. SIPC,
503 U.S. 258 (1992) ........................................................................ passim

IMG Fragrance Brands, LLC v. Houbigant, Inc.,
No. 09 Civ 3655 (LAP), 2010 WL 5222125,
(S.D.N.Y. Dec. 21, 2010) ................................................................. 2

In re Beacon Assocs. Litig.,
745 F. Supp. 2d 386 (S.D.N.Y. 2010) ............................................. 31, 38

In re Gov't Sec. Corp.,
90 B.R. 539 (S.D. Fla. 1988) .......................................................... 39

In re J.P. Jeanneret Assocs., Inc.,
No. 09 Civ 3907 (CM), 2011 WL 335594,
(S.D.N.Y. Jan. 31, 2011) ................................................................. 31, 36

In re Kingate Mgmt. Ltd.,
No. 09 Civ 5386 (DAB), 2011 WL 1362106
(S.D.N.Y. Mar. 30, 2011) ................................................................ 31, 36

In re MV Sec., Inc.,
48 B.R. 156 (S.D.N.Y. 1985).......................................................... 39

In re Tremont Sec. Law, State Law & Ins. Litig.,
703 F. Supp. 2d 362 (S.D.N.Y. 2010).............................................. 38

Instituto De Prevision Militar v. Merrill Lynch,
546 F.3d 1340 (11th Cir. 2008) ....................................................... 32, 35

Jackson Nat'l Life Ins. Co. v. Ligator,
949 F. Supp. 200 (S.D.N.Y. 1996) .................................................. 18

KBL Corp. v. Arnouts,
646 F. Supp. 2d 335(S.D.N.Y. 2009)............................................... 28

Kirschner v. KPMG LLP, 626 F.3d 673 (2d Cir. 2010) ...................... 20

Kirschner v. KPMG LLP,
15 N.Y.3d 446 (2010) ...................................................................... 6, 14

Lander v. Hartford Life & Annuity Ins. Co.,
251 F.3d 101 (2d Cir.2001).................................................................................. 31, 37

LaSala v. Bordier Et Cie,
519 F.3d 121 (3d Cir. 2008).................................................................................. 33, 38

Lehman Brothers, Inc. v. Wu,
294 F. Supp. 2d 504 (S.D.N.Y. 2003).................................................................. 27

Lerner v. Fleet Bank, N.A.,
459 F. 3d 273 (2d Cir. 2006)................................................................................. 8, 17

LNC Inv., Inc v. First Fid. Bank, Nat'l Assoc.,
935 F. Supp. 1333 (S.D.N.Y. 1996).................................................................... 27

Logan v. Zimmerman Brush Co.,
455 U.S. 422 (1982)................................................................................................. 26

McKenny v. McGraw (In re Bell & Beckwith),
104 B.R. 842 (N.D. Ohio 1989)............................................................................ 28

Mediators, Inc. v. Manney (In re Mediators, Inc.),
190 B.R. 515 (S.D.N.Y. 1995) .............................................................................. 29

Mediators, Inc. v. Manney (In re Mediators, Inc.),
105 F.3d 822 (2d Cir. 1997).................................................................................. 23

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,
547 U.S. 71 (2006).................................................................................................... 31, 35

Mikel-Hopkins, Inc. v. Frassinetti,
278 F.2d 301 (4th Cir. 1960) ................................................................................ 25-26

Mishkin v. Peat, Marwek, Mitchell & Co.,
744 F. Supp. 531 (S.D.N.Y. 1990) ...................................................................... 10, 20

N.Y. State Ins. Fund v. Mount Vernon Fire Ins. Co.,
371 Fed. App'x 207 (2d Cir. 2010)...................................................................... 11

Newdow v. Rio Linda Union Sch. Dist.,
597 F.3d 1007 (9th Cir. 2010) ............................................................................. 9

Newman v. Family Mgmt. Corp.,
No. 08 Civ 11215 (LBS), 2010 WL 4118083,
(S.D.N.Y. Oct. 20, 2010) ........................................................................................ 31, 38

Northwest Airlines, Inc. v. Transport Workers Union,
451 U.S. 77 (1981).................................................................................................... 27, 28

Picard v. HSBC Bank plc, et al., No. 11 Civ. 763 (JSR),
2011 WL 1544494 (S.D.N.Y. Apr. 25, 2011)..................................................................... 12, 23

Picard v. Taylor (In re Park South Secs., LLC),
326 B.R. 505 (Bankr. S.D.N.Y. 2005)................................................................................. 20, 30

Pivar v. Graduate Sch. of Figurative Art,
290 A.D.2d 212 (1st Dep't 2002) ........................................................................................ 15

Raquet v. Braun,
90 N.Y.2d 177 (N.Y. 1997) .................................................................................................. 29

Redington v. Touche Ross & Co., 592 F.2d 617 (2d Cir. 1978),
rev'd on other grounds, 442 U.S. 560 ................................................................................. 8-13

Redington v. Touche Ross & Co., 428 F. Supp. 483 (S.D.N.Y. 1977) .............................. 13

RGH Liquidating Trust v. Deloitte & Touche LLP,
71 A.D.3d 198 (1st Dep't 2009) .......................................................................................... 33-34

Rogers v. Atlantic, G. & P.,
213 N.Y. 246 (N.Y. 1915) .................................................................................................... 22

Romano v. Kazacos,
609 F.3d 512 (2d Cir. 2010).................................................................................................. 31, 35

SEC v. Cohmad Sec. Corp.,
No. 09 Civ. 5680 (LLS), 2010 WL 363844 (S.D.N.Y. Feb. 2, 2010) ................................ 38

SEC v. Zandford,
535 U.S. 813 (2002)............................................................................................................... 35

Shearson Lehman Hutton, Inc. v. Wagoner,
944 F.2d 114 (2d Cir. 1991)................................................................................................. passim

Singleton v. Wulff,
428 U.S. 106 (1976)............................................................................................................... 24

SIPC v. BDO Seidman,
49 F. Supp. 2d 644 (S.D.N.Y. 1999).............................................................................10-13, 20

Stephenson v. Pricewaterhouse Coopers LLP,
No. 09 Civ 00716 (RJH), 2011 WL 781936,
(S.D.N.Y. Mar. 6, 2011) ....................................................................................................... 38

Tarantola v. Williams,
48 A.D.2d 552 (N.Y. App. Div. 1975) ................................................................................ 28

Tellabs, Inc v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007) ................................... 37

Texas Industries, Inc. v. Radcliff Materials, Inc.,
451 U.S. 630 (1981).................................................................................................... 27

The Mediators, Inc. v. Manney (In the Matter of the Mediators, Inc.),
190 B.R. 515 (S.D.N.Y. 1995)..................................................................................... 29

Thompson v. County of Franklin,
15 F.3d 245 (2d Cir. 1994)............................................................................................ 2

Touche Ross & Co. v. Redington,
442 U.S. 560 (1979)......................................................................................... 8-10, 13

Warth v. Seldin,
422 U.S. 490 (1975)..................................................................................................... 24

Weschler v. Squadron, Ellenoff, Plesent & Sheinfeld, LLP,
212 B.R. 704 (S.D.N.Y. 1997)....................................................................................... 7

Wolf Living Trust v. FM Multi-Strategy Inv. Fund, LP,
No. 09 Civ. 1540 (LBS), 2010 WL 4457322 (S.D.N.Y. Nov. 2, 2010) ............................ 31, 36

Woods v. Empire Health Choice, Inc.,
574 F.3d 92 (2d Cir. 2009)........................................................................................... 24

Wight v. BankAmerica Corp.,
219 F.3d 79 (2d Cir. 2000)......................................................................................... 7, 14

Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.,
341 F. Supp. 2d 258 (S.D.N.Y. 2004)........................................................................... 30

Other Authorities

2009 HSBC Holdings plc, Annual Report (Form 20-F) (Mar. 10, 2009), available at,
www.sec.gov/Archives/edgar/data/1089113/000095012310024633/u08435e20vf.htm.... 3

Bernard L. Madoff Investment Securities LLC Litigation Proceeding, Claims and
Recovery Status, available at http://www.madofftrustee.com/Status.aspx........................ 34

H. Rep. No. 91-1613 (1970) ................................................................................... 21, 40

S. Rep. No. 105-182 (1998)........................................................................................ 38

SIPA of 1970, Pub. L. 91-598 §§ 6(c)(2)(B), 6(f), 84 Stat. 1636 (1970) ........................... 11

SIPA of 1978, Pub. L. 95-283 § 1, 92 Stat. 249 (1978)...................................................... 11

HSBC Bank plc, HSBC Holdings plc, HSBC Securities Services (Luxembourg) S.A., HSBC Institutional Trust Services (Ireland) Limited, HSBC Securities Services (Ireland) Limited, HSBC Institutional Trust Services (Bermuda) Limited, HSBC Bank USA, N.A., HSBC Securities Services (Bermuda) Limited, HSBC Bank (Cayman) Limited, HSBC Private Banking Holdings (Suisse) S.A., HSBC Private Bank (Suisse) S.A., HSBC Fund Services (Luxembourg) S.A., and HSBC Bank Bermuda Limited (the "HSBC Defendants" or "HSBC") respectfully submit this memorandum of law in support of their motion to dismiss Counts 20 to 24 (the "Common Law Claims") of the Trustee's Amended Complaint in Adversary Proceeding No. 09-1364A (BRL) (Bankr. S.D.N.Y. filed Dec. 5, 2010) (the "Trustee's Action"), based on the two issues identified in this Court's Order of April 13, 2011 and Opinion of April 25, 2011.[1]

## PRELIMINARY STATEMENT

The Court has withdrawn the reference of the Trustee's Action from the Bankruptcy Court for the limited purpose of addressing two threshold issues: (1) whether the Trustee has standing to bring the Common Law Claims, and (2) whether the Common Law Claims are preempted by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f). The Trustee's Common Law Claims do not survive consideration of either issue.[2]

First, the Trustee has no standing to assert the Common Law Claims. He purports to bring those claims in a hodgepodge of alternative capacities, including as successor to the

---

[1]     This motion addresses only the grounds to dismiss that this Court identified in its Order of April 13, 2011 and Opinion of April 25, 2011. HSBC understands that all other bases to dismiss the Amended Complaint – including lack of personal jurisdiction – are preserved and not waived. HSBC reserves the right at a later time to move to dismiss on grounds not raised herein.

[2]     Defendants Unicredit S.p.A. and Pioneer Alternative Investment Management Limited have likewise filed a motion to dismiss the Common Law Claims based on these two threshold issues. The HSBC Defendants hereby join in and adopt the arguments set forth in the memorandum of law dated May 3, 2011, in support of that motion.

1

BLMIS estate, representative of SIPC's purported subrogation rights, bailee of customer property, and assignee of unspecified customer claims, but makes no effort to match up his Common Law Claims with the capacity in which he purports to bring them.  Am. Compl. ¶¶ 50, 537-64.  This grab bag approach to pleading fails to meet the burden that the Trustee, as plaintiff, bears to "clearly . . . allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute."  IMG Fragrance Brands, LLC v. Houbigant, Inc., No. 09 Civ. 3655 (LAP), 2010 WL 5222125, at *7 (S.D.N.Y. Dec. 21, 2010) (quoting Thompson v. Cnty. of Franklin, 15 F.3d 245, 249 (2d Cir. 1994)) (internal quotation marks omitted).  In any event, the Trustee has no standing to bring **any** of the Common Law Claims in **any** of his asserted capacities.

　　　　　Second, the Trustee's effort to give credence to his standing by purporting to bring his action on behalf of thousands of investors runs squarely afoul of SLUSA's preemption of class action-type suits brought under state law in connection with securities fraud.  The plain meaning and legislative purpose of SLUSA preempt the Common Law Claims, and nothing in SIPA excuses that result.

## BACKGROUND

A.　　　**The Amended Complaint**

　　　　　The SIPA Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") commenced this action as an adversary proceeding in the Bankruptcy Court on July 15, 2009.  The original complaint brought avoidance claims against a single so-called Madoff "feeder fund" – Alpha Prime Fund Ltd. – and claims for turnover and accounting against the two HSBC entities that provided banking and custodian services to that feeder fund.

　　　　　On December 5, 2010, the Trustee filed the Amended Complaint, adding avoidance claims against numerous HSBC entities and a host of bankruptcy law claims against

numerous additional defendants, including eleven new feeder funds (together with Alpha Prime Fund Ltd., the "Feeder Fund Defendants").  The Amended Complaint also added the Common Law Claims against HSBC and other so-called "non-fund defendants," seeking billions of dollars in damages.  The Common Law Claims against HSBC are the subject of this motion.

The Amended Complaint alleges that HSBC "enabled Madoff's Ponzi scheme by encouraging investments into an international network of feeder funds."  Am. Compl. ¶ 1.  The Trustee principally alleges that HSBC ignored "red flags" of Madoff's fraud while serving as custodian and administrator to certain BLMIS feeder funds.  Id. at ¶¶ 281-91.  The Trustee also alleges that HSBC ignored red flags while recommending that certain unidentified private banking clients invest in certain BLMIS feeder funds.  Id. at ¶¶ 292-304.  Finally, the Trustee claims that HSBC ignored red flags while entering into swap agreements with various investment funds in order to provide those funds' investors leveraged exposure to certain feeder funds.  Id. at ¶¶ 254-80.[3]  The Trustee alleges that HSBC's activities enabled money to continue flowing to BLMIS, which "furthered the Ponzi scheme and deepened the insolvency of BLMIS." Id. ¶¶ 551-52, 558-59.

Based on those allegations, the Trustee asserts the five Common Law Claims against HSBC and seeks billions in damages.  Counts 20 and 21 allege unjust enrichment and money had and received, based upon the receipt by HSBC of unspecified service fees or other payments.  Counts 22 and 23 allege that HSBC aided and abetted Madoff's fraud and breach of

---

[3]     The Amended Complaint fails to mention that in order to hedge these swaps, HSBC invested – and lost – nearly $1 billion dollars of its own money in BLMIS feeder funds, a fact that clearly undermines the Trustee's claim that HSBC was on notice of Madoff's fraud.  See 2009 HSBC Holdings plc, Annual Report (Form 20-F) 25, 28, 75 (Mar. 10, 2009), available at www.sec.gov/Archives/edgar/data/1089113/000095012310024633/u08435e20vf.htm.

fiduciary duty.  Count 24 seeks contribution from HSBC for its alleged proportionate share of the harm to the victims of Madoff's fraud.

The Trustee purports to have standing to bring the Common Law Claims not only on behalf of BLMIS as its legal successor, but also on behalf of all BLMIS customers.  Id. ¶ 50. According to the Trustee, he has standing to bring claims as the "bailee of Customer Property," the recipient of "multiple, express assignments of certain claims of the applicable accountholders," and the representative of SIPC as "subrogee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding."  Id.  The essential legal premise of the Trustee's standing assertion is that by allegedly breaching its supposed duties to those with whom it dealt directly (such as the Feeder Fund Defendants and/or its private banking customers), HSBC assumed liability to *all* of BLMIS's many thousands of customers – regardless of whether they knew of HSBC or HSBC knew of them.

Notably, despite his reliance on allegations that focus on the Feeder Fund Defendants, the Trustee simultaneously seeks to preclude those same Feeder Fund Defendants from participating in the BLMIS liquidation by disallowing and/or equitably subordinating their customer claims.  Id. ¶¶ 457-65.  The Trustee has also denied customer status to any investor in a feeder fund on the ground that the investor was not a BLMIS accountholder.[4]  Accordingly, neither the Feeder Fund Defendants nor their investors stand to benefit from any recovery the Trustee may obtain on the claims asserted here.

---

[4]     See generally Declaration of Marla A. Decker in Support of the HSBC Defendants' Motion to Dismiss the Trustee's Common Law Claims ("Decker Decl."), Ex. A (Trustee's Memorandum of Law in Support of Motion to Affirm Trustee's Determinations Denying Claims of Claimants Without BLMIS Accounts in Their Names, Namely, Investors in Feeder Funds, SIPC v. Bernard L. Madoff Inv. Sec. LLC, Adv. Pro. No. 08-01789 (BRL), Docket No. 2411 (Bankr. S.D.N.Y. filed June 11, 2010) ("Trustee Customer Mem.").

B.      Fund And Investor Litigation

Before the Trustee filed the Amended Complaint, most of the feeder funds

serviced by HSBC had commenced their own litigation in various foreign jurisdictions against

several of the HSBC Defendants and other defendants.  This includes (1) separate actions

brought by Thema International Fund plc and AA (Alternative Advantage) plc in the High Court

of Ireland; (2) separate actions brought by Herald Fund SPC, Alpha Prime Fund Ltd. and Herald

(Lux) SICAV (in liquidation) in the District Commercial Court of Luxembourg; and (3) separate

actions brought by Hermes International Fund Ltd./Lagoon Investments Ltd. and Thema Fund

Ltd./Thema Wise Investments Ltd. in the Supreme Court of Bermuda, Commercial Court.

In addition, investors in many of the Feeder Fund Defendants have brought

litigation on their own behalf, both in the United States and abroad, against the HSBC

Defendants and other defendants.  This includes (1) three putative class actions brought by

investors in Herald Fund SPC, Herald (Lux) SICAV, Primeo Fund and Thema International

Fund plc, which have been consolidated for pre-trial purposes before Judge Berman as In re

Herald, Primeo, & Thema Funds Sec. Litig., No. 09 Civ. 289 (RMB) (S.D.N.Y filed Jan. 12,

2009); (2) numerous cases brought by investors in Herald Fund SPC, Herald (Lux) SICAV,

Primeo Fund, and Hermes International Fund Ltd. in the District Commercial Court of

Luxembourg; (3) numerous cases brought by investors in Thema International Fund plc in the

High Court of Ireland; (4) numerous cases brought by investors in Primeo Fund in the Vienna

Commercial Court; and (5) a case brought by investors in Thema International Fund plc in the

Court of Justice in Milan, Italy.

Notwithstanding the fact that feeder fund investors do not stand to benefit from

any recovery in the Trustee's Action, the Trustee is seeking to enjoin the investors in the

consolidated Herald, Primeo & Thema litigation from maintaining their class action claims

against largely the same group of defendants.  See Decker Decl., Ex. B, Trustee's Memorandum

of Law in Support of Motion for Injunctive and Related Relief, Adv. Pro. No. 11-01727 (BRL),

Docket No. 4 (Bankr. S.D.N.Y. filed Apr. 8, 2011) ("Trustee Inj. Mem.").

<strong>ARGUMENT</strong>

## I.  THE TRUSTEE HAS NO STANDING TO BRING THE COMMON LAW CLAIMS ON BEHALF OF BLMIS

The fundamental flaw in the Trustee's Common Law Claims is that the law

enunciated in Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 118 (2d Cir. 1991),

Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1093 (2d Cir. 1995) (which, like here, was a

case involving a Ponzi scheme), and Kirschner v. KPMG LLP, 15 N.Y.3d 446, 467-68 (2010),

unequivocally bars the Trustee from bringing the Common Law Claims in his capacity as

representative of the BLMIS estate.

In Wagoner and Hirsch, the Second Circuit established clear standing and

standing allocation rules concerning the claims that may be brought by a trustee and the claims

that may be brought by individual defrauded creditors or investors.  First, the Court explained

that a trustee "has no standing generally to sue third parties on behalf of the estate's creditors, but

may only assert claims held by the bankrupt corporation itself."  Wagoner, 944 F.2d at 118

(explaining that "unless the party whose standing is at issue has a personal stake in the outcome

of the controversy, the suit does not meet the case or controversy requirement of the

Constitution") (internal quotation marks and citations omitted).  Thus, "when creditors . . . have a

claim for injury that is particularized as to them, they are exclusively entitled to pursue that

claim, and the bankruptcy trustee is precluded from doing so."  Hirsch, 72 F.3d at 1093.

Second, the Court held that "[a] claim against a third party for defrauding a

corporation with the cooperation of management accrues to creditors, not to the guilty

6

corporation." Wagoner, 944 F.2d at 120.  This second holding, known as the "Wagoner rule,"

"bars a trustee from suing to recover for a wrong that he himself essentially took part in." Wight

v. BankAmerica Corp., 219 F.3d 79, 87 (2d Cir. 2000).  The rule has its underpinnings in New

York's *in pari delicto* doctrine, which "mandates that the courts will not intercede to resolve a

dispute between two wrongdoers." Kirschner, 15 N.Y. 3d at 464.  While *in pari delicto* is an

affirmative defense under New York law, the Second Circuit in Wagoner expressly framed its

holding as a prudential limitation on standing under federal law, explaining that "if a trustee has

no power to assert a claim because it is not one belonging to the bankrupt estate, then he also

fails to meet the prudential limitation [on standing] that the legal rights asserted must be his

own." Wagoner, 944 F.2d at 118.

       The Wagoner rule has been applied numerous times to prevent trustees from

bringing claims against third parties where the debtor's former management participated in the

fraud, including in the context of Ponzi schemes.  See Hirsch, 72 F.3d at 1093-94 (holding that a

trustee lacks standing to bring claims against outside service providers who allegedly assisted the

debtor's former management in perpetrating a Ponzi scheme).  See also Breeden v. Kirkpatrick

& Lockhart, LLP, 268 B.R. 704, 709 (S.D.N.Y. 2001) (same); Wechsler v. Squadron, Ellenoff,

Plesent & Sheinfeld, LLP, 212 B.R. 34, 36 (S.D.N.Y. 1997) (same).  As the New York Court of

Appeals recently explained in Kirschner, "So long as the corporate wrongdoer's fraudulent

conduct enables the business to survive – to attract investors and customers and raise funds for

corporate purposes," the claims are barred, "[e]ven where the insiders' fraud can be said to have

caused the company's ultimate bankruptcy."  15 N.Y.3d at 468.

       The Trustee's lengthy Amended Complaint is replete with allegations of Madoff's

role as the "mastermind[]" of the BLMIS fraud, see, e.g., Am. Compl. ¶¶ 1, 13, 35, 39, and

indeed at this point the Court can take judicial notice of that fact.  Thus, given the Trustee's own admissions of Madoff's central role in the Ponzi scheme, the <u>Wagoner</u> rule clearly prohibits the Trustee, as "successor in interest" to Madoff and BLMIS,[5] from bringing claims against the HSBC Defendants for alleged assistance of what in essence was his own fraud.

## II.   THE TRUSTEE HAS NO STANDING TO BRING THE COMMON LAW CLAIMS ON BEHALF OF ALL BLMIS CUSTOMERS

Seeking to avoid the preclusive effect of <u>Wagoner</u> and its progeny, the Trustee purports to bring certain of the Common Law Claims not on behalf of BLMIS but on behalf of each and every customer of BLMIS that was injured by the Ponzi scheme, including those with absolutely no relationship to HSBC.[6]  The Trustee places great reliance on the Second Circuit's holding in <u>Redington v. Touche Ross & Co.</u>, 592 F.2d 617 (2d Cir. 1978), <u>rev'd on other grounds</u>, 442 U.S. 560 (1979).  That reliance on <u>Redington</u> is misplaced, however, as <u>Redington</u> is either no longer good law, or law that must be cabined and not applied here for a number of reasons, including the application of the Second Circuit's subsequent holdings in <u>Wagoner</u>, <u>Hirsch</u>, and <u>Lerner v. Fleet Bank, N.A.</u>, 459 F. 3d 273 (2d Cir. 2006), and the Supreme Court's subsequent holding in <u>Holmes v. SIPC</u>, 503 U.S. 258 (1992).

### A.   <u>Redington</u> Is No Longer Good Law

In a divided 1978 decision, the Second Circuit in <u>Redington</u> ruled that Section 17(a) of the 1934 Exchange Act ("Section 17(a)") creates an implied private right of action for

---

[5]   Decker Decl., Ex. C, Transcript of April 12, 2011 Oral Argument on Motion to Withdraw the Reference, at 10:10-11, <u>Picard v. HSBC Bank plc</u>, No. 11 Civ. 763 (JSR) (S.D.N.Y.) ("Oral Argument Tr.") (Mr. Warshavsky: "We are the successor in interest" to "Madoff and BLMIS.").

[6]   Although his legal theories are far from clear, the Trustee appears to be asserting his multi-billion dollar aiding and abetting claims (Counts 22 and 23) on behalf of BLMIS customers.  He appears to be asserting his contribution claim (Count 24) on behalf of BLMIS.  <u>See</u> <u>infra</u> Section IV.  The asserted standing for his quasi-contract claims (Counts 20 and 21) remains less clear.  <u>See</u> <u>infra</u> Section V.

investors against the broker's accountant.  592 F.2d at 623-24.  Consistent with the Court's objective to further the purpose of protecting customers of failed brokerages by implying a private right of action, the Court also found that SIPC had standing to bring those Section 17(a) claims as subrogee of customers to the extent those customers received advances from SIPC, and that the SIPA trustee had standing as a bailee of customer property.  Id. at 624-25.  The Court found that these rights existed not as rights granted by SIPA, but as common law rights of subrogation and bailment that the statute did not expressly abrogate.  Id.

The Supreme Court reversed the Second Circuit on the ground that Section 17(a) does not provide for an implied private right of action.  While it did not substantively address the standing issue, see Redington, 442 U.S. at 567 n.9, the Supreme Court's reversal effectively drains the Second Circuit's bailee/subrogee determination of any precedential effect.  As Judge Pollack later observed, the Supreme Court's disposition "wiped out everything that occurred up to that time, and sent the case back accordingly."  Decker Decl., Ex. D, Transcript of April 18, 1990 Oral Argument, at 33, Mishkin v. Peat, Marwick, Mitchell & Co., No. 86 Civ. 4301 (MP) (S.D.N.Y.).  See also Newdow v. Rio Linda Union Sch. Dist., 597 F.3d 1007, 1041 (9th Cir. 2010) (concluding that a reversal of a decision on a threshold issue deprives the other parts of the decision of precedential effect, because to "hold otherwise would give precedential effect to the determination of an issue that should never have been decided").

Indeed, the very rationale underpinning the Supreme Court's decision to reverse on the Section 17(a) question applies with equal force to the standing question.  The Supreme Court rejected the argument of SIPC and the SIPA trustee, which the majority of the Second Circuit panel had agreed with, that "an **implied** private remedy [was] necessary to effectuate the purpose of the section[,]" i.e., to protect the customers of brokerages.  Redington, 442 U.S. at

575 (emphasis added) (internal quotation marks omitted).  The Court considered this argument of

"little relevance" to the task at hand – a task of clear, straightforward statutory construction.  Id.

at 575-76, 578.  This logic necessarily undermines the Second Circuit's reasoning that it could

and should improve on the SIPA statutory scheme by recognizing standing rights to pursue third

party litigations that are not provided for in SIPA.  As the Supreme Court observed in Redington,

"[t]he ultimate question is one of congressional intent, not one of whether this Court thinks that it

can improve upon the statutory scheme that Congress enacted into law."  Id. at 578.

   As several courts have subsequently found, giving a SIPA trustee standing to

pursue customer claims against third parties is inconsistent with the SIPA statutory scheme.

First, allowing SIPC common law rights of subrogation to pursue claims against third parties

contravenes the plain language of the statute, which delineates SIPC's express but limited rights

of subrogation.  See SIPC v. BDO Seidman LLP, 49 F. Supp. 2d 644, 654 (S.D.N.Y. 1999);

Mishkin v. Peat, Marwick, Mitchell & Co., 744 F. Supp. 531, 556 (S.D.N.Y. 1990).  SIPA

subrogates SIPC to customer net equity claims against the estate only, and *only* insofar as SIPC

makes advances to pay those claims.  See 15 U.S.C. § 78fff-3(a)(5) (making clear that SIPC is

subrogated only "[t]o the extent moneys are advanced by SIPC to the trustee to pay or otherwise

satisfy the claims of customers"); 15 U.S.C. § 78*lll*(11) (defining "claims of customers" as net

equity claims against *the debtor* only); Mishkin, 744 F. Supp. at 556 (same).  Contrary to

Redington's interpretation, "[h]ad Congress intended to enable SIPC or the trustee to bring suit

against a third party, it would have done so."  BDO Seidman, 49 F. Supp. 2d at 654.

   Second, the implied right of subrogation against third parties subverts SIPA's

provision for the priority of customer property distribution, which plainly evidences Congress's

intent that SIPC's recovery as subrogee come from the estate and that customers be made whole

***before*** SIPC.  15 U.S.C. 78fff-2(c)(1).  Allowing SIPC to assert subrogation rights not provided

by SIPA, and to thereby be made whole through those claims before customers, deprives

customers of their statutory right to priority.  See BDO Seidman, 49 F. Supp. 2d at 654 (creation

of a common-law right against third parties "defeats the purpose of the preference system of

creditors set up by SIPA").  When Redington was decided in April 1978, prior to the May 1978

amendments to SIPA, the Court was interpreting a statute with a distribution scheme that said

nothing about where SIPC as subrogee of customer claims stood in that scheme.[7]

   Third, even if SIPC were entitled to common law rights of subrogation, under

New York law, which would apply here, SIPC could only become subrogated to the rights of the

BLMIS estate, whose obligations it has paid, not to the rights of customers.  Under New York

law, "an insurer who pays claims ***against the insured*** for damages caused by the default or

wrongdoing of a third party is entitled to be subrogated to the rights which the ***insured*** would

have had against such third party for its default or wrongdoing."  N.Y. State Ins. Fund v. Mount

Vernon Fire Ins. Co., 371 Fed. App'x 207, 210 (2d Cir. 2010) (internal citation omitted)

(emphasis added).  Under SIPA, SIPC ***insures broker dealers***, not their customers, by collecting

assessments from them to establish and maintain a fund used in the event of insolvency to make

advances to pay customer claims against the broker dealer's estate.  See 15 U.S.C. §§

78ddd(c)(2), 78fff-3.  By satisfying claims against the broker dealer's estate, at most, SIPC could

be subrogated not to the claims of the customers but to the estate's claims against any

---

[7] Compare SIPA of 1970, Pub. L. 91-598 §§ 6(c)(2)(B), 6(f), 84 Stat. 1636 (1970)
(observing that SIPC is subrogated as against the estate without specifying its claim priority),
with SIPA of 1978, Pub. L. 95-283, § 1, 92 Stat. 249 (1978) (enacting, *inter alia*, the now current
distribution priorities, which place customers ahead of SIPC as subrogee).  This change in the
law presents yet another reason why Redington should not be considered binding authority.

responsible third parties.  As shown in Sections I and IV, the BLMIS estate has no viable claims against the HSBC Defendants to which SIPC may be subrogated.

Finally, Redington's holding that a trustee can maintain an action against third parties as bailee of customer property also founders in the face of the plain language of SIPA.  Absent an express grant of authority in SIPA, a SIPA trustee's rights and powers are limited to those available to an ordinary bankruptcy trustee.  15 U.S.C. § 78fff-1(a).  And an ordinary bankruptcy trustee has no rights to bring claims that belong to creditors, as bailee or otherwise.  Caplin v. Marine Midland Grace Trust Co. of N.Y., 406 U.S. 416, 428-34 (1972); Wagoner, 944 F.2d at 118.  Further, as this Court observed, the Trustee is not seeking to "return any recovered bailments to the individual bailors," as a bailee would, but instead is seeking to distribute customer property pro rata pursuant to the SIPA distribution scheme.  Picard v. HSBC Bank plc, No. 11 Civ. 763 (JSR), 2011 WL 1544494, at *3 (S.D.N.Y. Apr. 25, 2011).

Seizing on these problems, several judges have sharply disagreed with the Redington majority's decision.  At the outset, Judge Mulligan, dissenting in Redington, accused the majority of "circumvent[ing] the intent of Congress by ignoring the directive of SIPA that SIPC be subrogated" only insofar as explicitly provided by SIPA.  592 F.2d at 634-35 (Mulligan, J., dissenting).  Judge Mulligan likewise rejected the majority's conclusion that the trustee could sue as bailee of customer property:  "I fail to see how denominating [the trustee] a bailee adds a jot or a tittle to his statutorily created status as the representative of . . . an entity . . . precluded from suing . . . ."  Id. at 635.  In Mishkin, Judge Pollack carefully analyzed SIPA's text, legislative history and purpose, and concluded that the Second Circuit's "application of insurance principles of subrogation [were] seemingly inappropriate" and that a "liquidating trustee is not granted the power to bring fraud claims against third parties on behalf of

12

customers." Mishkin, 744 F. Supp. at 557-58. And in BDO Seidman, now-Chief Judge Preska, though concluding that she was bound by Redington, found Judge Pollack's subrogation analysis "more faithful to the letter and purpose of [SIPA]" and Judge Mulligan's bailment analysis "more persuasive than the majority's." BDO Seidman, 49 F. Supp. 2d at 653-54. Finally, and most tellingly, in a post-Redington decision, the Supreme Court declined to address the question whether SIPC could assert state law subrogation rights against third parties, but observed that "[SIPA] makes no reference" to such rights, and also cited with apparent approval to Judge Pollack's decision in Mishkin. See Holmes, 503 U.S. at 270, 274-75. These decisions show that, at best, Redington is an anachronism whose holding should be limited to the particular circumstances before the Court in that case.

### B.  Redington Standing Should Not Be Extended To Common Law Claims

Even if Redington remains good law, none of the three federal courts involved in Redington ever held that SIPC or a trustee has standing to assert common law claims on behalf of the customers of a failed broker-dealer. See Redington, 442 U.S. at 566-67 & nn. 8-9; Redington, 592 F.2d at 625; Redington v. Touche Ross & Co., 428 F. Supp. 483, 492 (S.D.N.Y. 1977). Unlike the theories of common injury and causation that would have been involved in Redington's implied private right of action under Section 17(a) for failure to discharge a regulatory duty, common law claims generally require proof of individual reliance and causation, and raise choice of law issues which are not justiciable in the context of a mass tort action by a trustee. Judge Preska dismissed an attempt to plead such claims for failure to particularize reliance and causation, see BDO Seidman, 49 F. Supp. 2d at 654-56, and, as discussed below, the Second Circuit in Lerner similarly rejected claims that relied, as appears to be the case here, on a generalized theory of causation. 459 F. 3d at 284-86 & n.6. Allowing the Trustee to bring the Common Law Claims would violate the principles underlying the doctrine of *jus tertii* standing,

which favors allowing injured individuals to assert their own particular rights.  See infra Section

III.B.  For these reasons, Redington's much-criticized theory of judicially implied trustee

standing should not be extended to permit a trustee to read into SIPA the right to bring common

law claims that do not belong to him.

### C.        Redington Standing Has Been Limited By Wagoner And Hirsch

Redington has been further limited, if not undermined, by the Second Circuit's

subsequent decisions in Wagoner and Hirsch.  Unlike Redington, those cases explicitly

considered the situation of a debtor who participated in a fraud or (as Hirsch) was at the center of

a Ponzi scheme, and found that any claims against third parties belonged exclusively to the

creditors, not the bankruptcy trustee.  Wagoner, 944 F.2d at 118-20; Hirsch, 72 F.3d at 1093-94.

These holdings have been affirmed repeatedly as the law in this Circuit.  See Kirschner v. KPMG

LLP, 626 F.3d 673, 675 (2d Cir. 2010); In re Bennett Funding Grp., Inc., 336 F.3d 94 (2d Cir.

2003); Wight, 219 F.3d at 86.

The Trustee cannot avoid Wagoner and Hirsch simply by asserting that he has

standing to "sue on behalf of the customer-bailors."  Am. Compl. ¶ 50(f).  If the customers are

the bailors, then it follows that the entity to whom they entrusted their property, BLMIS, is the

bailee.  See Herrington v. Verrilli, 151 F. Supp. 2d 449, 457 (S.D.N.Y. 2001) (explaining that a

bailment must be delivered "for some particular purpose" and requires "that there be an actual or

constructive delivery by the bailor as well as actual or constructive acceptance by the bailee")

(citation omitted).  Thus, when the Trustee alleges that he is entitled to sue "as bailee of

Customer Property," Am. Compl. ¶ 50(f), he is necessarily standing in the shoes of BLMIS.  The

Wagoner rule precludes such standing.  Indeed, basic bailment principles make clear that no

bailment can exist where the would-be bailee is a thief.  Thus, under New York law, BLMIS was

not a bailee of customer's funds because Madoff acquired investments with the intent to further

his Ponzi scheme.  See, e.g., Pivar v. Graduate Sch. of Figurative Art, 290 A.D.2d 212, 213 (1st Dep't 2002) (explaining that a bailment arises only where the bailee obtains "lawful possession" of the bailed property "without present intent to appropriate" it) (internal quotation marks and citation omitted).

In Hirsch, the Second Circuit held that a bankruptcy trustee lacked standing to bring claims against third party accountant and law firms for their participation in the debtor's Ponzi scheme, concluding that "claims arising out of a Ponzi scheme [belong] only to the defrauded investors" and not the trustee.  72 F.3d at 1093 (citing E.F. Hutton & Co. v. Hadley, 901 F.2d 979, 986-87 (11th Cir. 1990)).  The Second Circuit also found it significant that any action brought by a trustee in such circumstances would be "duplicative of pending litigation brought by the defrauded investors."  Id.

Hirsch represents a clear decision by the Second Circuit favoring investors over a bankruptcy trustee as the proper and exclusive parties to bring claims against third parties alleged to have assisted a debtor in perpetrating a Ponzi scheme.  This is consistent with Wagoner and its guiding principle that a trustee cannot bring claims against third parties alleged to have aided or abetted the debtor's wrongdoing, because there is a strong likelihood of a conflict of interest where, as here, the Trustee "represents the very parties who are alleged to have participated in defrauding the creditors."  Hirsch v. Arthur Andersen & Co., 178 B.R. 40, 44 (D. Conn. 1994) (Cabranes, J.), aff'd, 72 F.3d at 1095.  Thus, neither the Trustee as bailee nor SIPC as subrogee can usurp the clearly established right of BLMIS customers to bring whatever claims they may have against HSBC in their own name.

### D.    <u>Redington</u> Standing Has Been Limited By <u>Holmes</u> And <u>Lerner</u>

An additional impediment to the Trustee's ability to assert claims on behalf of

BLMIS customers who are utter strangers to HSBC is that HSBC did not proximately cause their

injuries.  Unlike the funds (and their investors) who are claiming a particularized injury arising

out of an HSBC custodian and administrator relationship,[8] HSBC provided no services and owed

no duty to BLMIS or to its customers and therefore HSBC's alleged responsibility for their

losses is speculative and remote.

The Supreme Court's decision in <u>Holmes</u> is dispositive with respect to this theory

of Trustee standing.  In <u>Holmes</u>, defendants engaged in a stock manipulation scheme that caused

the price of certain securities to be artificially inflated.  503 U.S. at 261-63.  Certain broker-

dealers purchased those securities and ultimately became insolvent when the securities' value

plummeted, thereby injuring the broker-dealers' customers because the broker-dealers could not

pay their obligations to their customers.  <u>Id.</u>  SIPC brought RICO claims against the third parties

who participated in the scheme, alleging that it had standing as subrogee of the broker-dealers'

customers and sought to recover advances it had paid under SIPA.  <u>Id.</u>  The Supreme Court held

that SIPC had no RICO claims against the third parties because the connection between the acts

of the third parties and the customers' injury was "too remote," where the injury was caused by

the "intervening insolvency" of the broker-dealers.  <u>Id.</u> at 271.  The Court characterized the

broker-dealers' customers as "secondary victims" of the manipulation scheme and, relying on

common law principles of proximate cause, dismissed SIPC's claims, holding that "subrogation

to the rights of the . . . conspiracy's secondary victims does, and should, run afoul of proximate-

causation standards."  <u>Id.</u> at 274.

---

[8]    The Trustee's standing to sue to redress these claims is addressed in Section III, <u>infra</u>.

16

In <u>Lerner</u>, the Second Circuit addressed the application of these principles to common law claims brought by injured investors against a group of banks for allegedly assisting the perpetrator of a Ponzi scheme.  The Court noted that "proximate cause under RICO and under New York common law each requires a showing of direct injury."  459 F.3d at 285 n.6 (internal quotation marks omitted).  The Court drew a distinction, relevant here, between the bank's potential responsibility for the injury suffered by investors with which it had a direct deposit relationship and that suffered by investors who had no such relationship but who claimed that they were harmed by the bank's failure to take action to stop the fraud.  The Court, citing <u>Holmes</u>, held that the investors who had no direct relationship could not establish proximate cause because the bank's allegedly improper actions were, "too far removed from the damages . . . subsequently caused to persons who never deposited funds with the bank and who participated in future transactions to which the bank was not a party."  <u>Id.</u> at 287.

The reasoning of <u>Holmes</u> and <u>Lerner</u> applies with equal force here, where the Trustee alleges that by (1) failing to heed red flags as custodian and administrator to certain BLMIS feeder funds; (2) marketing BLMIS feeder funds to private bank customers and causing several clients to invest; and (3) providing leveraged exposure to BLMIS feeder funds through swaps, HSBC helped money flow to BLMIS, thereby keeping the Ponzi scheme afloat, deepening the insolvency of BLMIS, and ultimately injuring ***all*** BLMIS customers.  This is precisely the sort of attenuated chain of events that the Supreme Court rejected in <u>Holmes</u> and the Second Circuit rejected in <u>Lerner</u>.  While those who had a direct relationship with HSBC (like the depositors of the defendant bank in <u>Lerner</u>) may have a claim against HSBC, BLMIS customers generally, who had no relationship with HSBC (like the investors who had no deposits

17

in the defendant bank in <u>Lerner</u>), have no such claim, nor, *a fortiori*, does the Trustee acting on

their behalf.

        As the Court said in <u>Holmes</u>, permitting the Trustee to sue for such an indirect

injury would make it difficult "to ascertain the amount of plaintiff's damages attributable to the

violation, as distinct from other, independent, factors."  <u>Holmes</u>, 503 U.S. at 269.  Indeed,

accepting the Trustee's standing claim against HSBC would mean that there would be viable

claims against thousands of putative defendants who contributed to the funding of BLMIS

despite the "red flags" that the Trustee in hindsight has identified.  It would be impossible to

ascertain what percentage of customer losses is attributable to HSBC, as opposed to these other

putative defendants or BLMIS itself, other customers, or the Feeder Funds and their directors and

managers, such as the ones the Trustee has sued in this action.

        Similarly, as the Court noted in <u>Holmes</u>, "recognizing claims of the indirectly

injured would force courts to adopt complicated rules apportioning damages among plaintiffs

removed at different levels of injury from the violative acts, to obviate the risk of multiple

recoveries."  <u>Id.</u>  <u>See</u> <u>also</u> <u>Jackson Nat'l Life Ins. Co. v. Ligator</u>, 949 F. Supp. 200, 203

(S.D.N.Y. 1996) (Preska, J.) (dismissing for lack of proximate cause claims premised on indirect

injury because of "concern[s] about the prospective dangers of a 'double recovery'").

        Finally, as the Court noted in <u>Holmes</u>, "the need to grapple with these problems is

simply unjustified by the general interest in deterring injurious conduct, since directly injured

victims can generally be counted on to vindicate the law as private attorneys general, without any

of the problems attendant upon suits by plaintiffs injured more remotely."  503 U.S. at 269-70.

That observation could not be more salient here.  If HSBC caused a direct injury to anyone (an

assertion HSBC disputes), it was to entities or individuals that were in privity with HSBC, such

as the Feeder Fund Defendants for which HSBC acted as custodian and/or administrator.  Those

funds and their investors have filed suits around the world to recover for the same loss as the

Trustee seeks here.[9]  But BLMIS customers who had no dealings whatsoever with HSBC have

no claim against HSBC, and the Trustee has no standing to sue HSBC on behalf of such

customers.

### E.    Customer Assignments Cannot Confer Standing On The Trustee

The Trustee relies on still another theory of standing, one that <u>Redington</u> did not

address.  He contends that he has received "multiple, express assignments of certain claims of

the applicable accountholders."  Am. Compl.  ¶ 50(g).  While the Trustee does not plead who

these accountholders are or what exactly they have assigned to the Trustee, it appears that he has

required customers, as a condition to receiving SIPC payments from the Trustee, to sign

"Assignment and Release" forms that purportedly assign "any and all rights, including causes of

action or claims, that Assignor now may have against BLMIS and/or any third party arising out

of or relating to any fraudulent or illegal activity with respect to Assignor's BLMIS account."[10]

Decker Decl., Ex. E, Partial Assignment & Release, at 1.  This assignment, however, is

ineffective because SIPA requires that the Trustee pay customer net equity claims and expressly

limits his ability to impose conditions on the payments.  15  U.S.C. §78fff-2(b).  In particular,

---

[9]     It is HSBC's position that only the Feeder Funds have standing to sue HSBC for its
purported failures as custodian and/or administrator.  This Court need not decide here whether it
is the funds or the investors that have appropriate standing, but only that it is decidedly ***not*** the
Trustee standing in the shoes of customers with no connection to HSBC.  Further, HSBC
disputes that it breached any duty to its private banking clients or had any responsibility for their
investments, and only a *de minimis* number of clients have filed suits alleging otherwise.  Indeed,
the Amended Complaint only describes five private banking clients that were allegedly induced
by HSBC to invest in BLMIS feeder funds.  Am. Compl. ¶¶ 300-04.

[10]     The Trustee's counsel has confirmed through recent communications that this example is
representative of the assignments on which he relies.

SIPA does not authorize the Trustee to condition payment on the customers' assignment to him of their claims against third parties.  See In re Park S. Sec., LLC, 326 B.R. 505, 514 (Bankr. S.D.N.Y. 2005) (collecting cases).  By demanding such assignments from BLMIS customers and seeking to enforce them here, the Trustee is acting without statutory authority and in clear contravention of SIPA's purposes.

Courts in this District have uniformly held that a SIPA trustee lacks standing as assignee to bring customer claims against third parties because "the assignments authorized by section 78fff-2(b) of SIPA do not extend to all claims of customers against third parties but, rather, only to a customer's net equity claim" against the estate.  Id.  See also Giddens v. D.H. Blair & Co., 280 B.R. 794, 803-04 (Bankr. S.D.N.Y. 2002) (same); BDO Seidman, 49 F. Supp. 2d at 654 n.7 (same); Mishkin, 744 F. Supp. at 554 (same).  In each of these cases, the Trustee was found to have "disregarded SIPA's plain language" and "overreached his statutory authority by obtaining assignments of customer claims against third parties."  Giddens, 208 B.R. at 803.

In opposing withdrawal of the reference, the Trustee did not address this clear authority but instead relied on a case not involving SIPA, In re CBI Holding Co., 529 F.3d 432 (2d Cir. 2008).  There, the Second Circuit held that a Chapter 11 trustee could take assignment of creditor claims because section 541(a)(7) of the Code includes as property of the estate "[a]ny interest in property that the estate acquires after the commencement of the case."  Id. at 457.  The Court's reasoning in permitting such assignments was based on the specific language in Section 541(a)(7) allowing the debtor to acquire estate property post-petition and on the voluntary nature of the assignments: "We can think of many arguments against allowing a trustee to usurp the claims of a bankrupt's noncooperating creditors that do not counsel against permitting creditors

to **voluntarily transfer** their claims to a trustee as part of a court-approved plan of reorganization or liquidation." Id. at 457, 459 (emphasis added).

        Here, the Trustee seeks to assert claims he purported to acquire without any consideration but as a condition to him making required statutory payments. Decker Decl., Ex. E, Notice of Trustee's Determination of Claim, at 3 (conditioning "a partial satisfaction of [a BLMIS customer's] allowed claim" on the customer executing a partial release and assignment). These assignments are not authorized by SIPA, which unlike Title 11 has specific language defining the scope of a SIPA trustee's assignee rights, nor is it consistent with the Trustee's obligation "to distribute customer property and . . . otherwise satisfy net equity claims of customers" as provided by the statute. 15 U.S.C. § 78fff(a)(1)(B). See also H.R. Rep. No. 91-1613, at 1 (1970) (purpose of SIPA is to establish a fund so that customers can "recover that **to which they are entitled**" under the statute) (emphasis added). By conditioning payments of customer net equity claims against the estate upon customers' assignment of their claims against third parties, the Trustee interferes with and impairs the customers' statutory entitlement. In any event, the Trustee would acquire nothing even if he could be assigned these claims because, for the reasons set forth in Section II.D, these customers have no valid claims to assign.

## III.   THE TRUSTEE HAS NO STANDING TO ASSERT CLAIMS OF HSBC SERVICED FEEDER FUNDS OR OF THEIR INVESTORS

        We now turn from the Trustee's claims on behalf of the universe of BLMIS customers to his effort to usurp the particularized claims against HSBC of (1) feeder funds serviced by HSBC that had direct accounts with Madoff and (2) the investors in those feeder funds. This effort is apparent not only from his pleading here, but also from the Trustee's attempt to enjoin pending class actions by the feeder fund investors, contending that because he has exclusive authority to pursue these claims, their complaints are void *ab initio* and that any

money they may recover must be given to him.  HSBC's position is that (1) such a usurpation is

well beyond the Trustee's authority; (2) permitting the Trustee to assert such claims violates

prudential principles limiting *jus tertii* standing; and, indeed, (3) any interpretation of the SIPA

statute that would require or even allow this result should be avoided to prevent effecting a

confiscation and rendering the statute constitutionally defective as applied.

> ### A.   SIPA Does Not Grant The Trustee Standing To Assert The Particularized Claims Of The Feeder Funds And Their Investors

As a threshold matter, the Trustee's assignee, subrogee and bailee theories fail as

a matter of law with respect to his ability to bring this subset of customer claims.  It is undisputed

that the Trustee has not obtained assignments from the feeder funds or their investors, nor has the

Trustee or SIPC made any payments to them, thereby eliminating any basis for an assignment or

subrogation claim.  Additionally, even if the Trustee generally has the authority to bring an

action as bailee, which he does not, see supra Section II, the cases against HSBC already brought

by the funds, the purported bailors, preclude the Trustee from bringing this action in that

capacity.  See, e.g., Grace v. Sterling, Grace & Co., 30 A.D.2d 61, 66 (1st Dep't 1968)

(explaining that either the bailee or bailor can sue "to protect his particular interest, but as the

law will not suffer defendant to be twice harassed for the same cause, only one suit can be

brought and it will be a bar to every other") (internal quotation marks and citation omitted).  The

bailment theory fails for the additional reason that the Trustee plans to give any recovered bailed

property to ***other parties***, not to the funds, contravening well-established New York law.  See,

e.g., Rogers v. Atlantic, G. & P., 213 N.Y. 246, 259 (N.Y. 1915) ("If the bailee recovers, he

holds the recovery as trustee for the bailor.").

Indeed, while the Trustee consistently contends that he is asserting claims on

behalf of BLMIS customers, see, e.g., Am. Compl. ¶ 50(f) ("Trustee, as bailee of Customer

Property, can sue on behalf of the customer-bailors."); id. ¶ 50(h) ("SIPC has expressly conferred

upon the Trustee enforcement of its rights of subrogation with respect to payments it has made

and is making to customers of BLMIS from SIPC funds [.]"); Trustee Memorandum of Law in

Opposition to Motion to Withdraw the Reference, at 20, Picard v. HSBC Bank plc, Adv. Pro.

No. 11 Civ. 763 (JSR), Docket No. 13 (S.D.N.Y. filed Mar. 18, 2011) ("The Trustee may bring

claims as an assignee of BLMIS customers."); he simultaneously is seeking to disallow the

funds' net equity claims and/or equitably subordinate those claims to unsecured creditor status,

Am. Compl. ¶¶ 457-65, and he has independently denied customer status to all feeder fund

investors.  See generally Decker Decl., Ex. A, Trustee Customer Mem.  The Trustee cannot have

it both ways.  Congress could not have intended to permit a SIPA trustee to assert the claims of

individuals or entities who are not entitled to share in the pool of customer property created by

any recovery, in effect, robbing Peter to pay Paul.  As already shown, it is not for the Trustee to

supposedly "improve upon" a statutory scheme by adding powers that Congress did not plainly

intend, and, *a fortiori*, he cannot do so when such implication of power is plainly contrary to any

conceivable Congressional intent.

   Moreover, the feeder funds have claims against HSBC for particularized injuries

arising from their direct relationship with HSBC, based on HSBC's alleged failure to fulfill

custody and administration duties owed to the funds, including under the respective contractual

arrangements.  It is plain that these claims involve a unique injury not common to the harm

suffered by BLMIS customers generally, and accordingly belong ***exclusively*** to the feeder funds.

See Hirsch, 72 F.3d at 1093 (holding that if a certain class of "creditors . . . have a claim for

injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the

bankruptcy trustee is precluded from doing so.").  See also In re Mediators, Inc., 105 F.3d 822,

826 (2d Cir. 1997) ("Under New York law, claims such as the present one[, aiding and abetting a fiduciary's breach of duty,] belong to the creditors *qua* creditors."); In re Park S. Secs., LLC, 326 B.R. at 514 (holding that unjust enrichment claim was specific to certain creditors).

> **B.      Allowing The Trustee To Assert Claims That Have Been Or Could Be Asserted By The Feeder Funds Or Their Investors Also Violates Prudential Standing Principles**

Because the Trustee lacks even a colorable basis to assert the particularized claims of the feeder funds and their investors against HSBC, yet clearly seeks to assert those claims in the instant litigation, his action violates the prudential bar on third party standing to assert rights belonging to others.  See Wagoner, 944 F.2d at 118 ("[T]he 'case or controversy' requirement coincides with the scope of the powers the Bankruptcy Code gives a trustee, that is, if a trustee has no power to assert a claim because it is not one belonging to the bankrupt estate, then he also fails to meet the prudential limitation that the legal rights asserted must be his own.") (citing, inter alia, Warth v. Seldin, 422 U.S. 490, 499 (1975) (explaining that a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties")); Woods v. Empire Health Choice, Inc., 574 F.3d 92, 96-97 (2d Cir. 2009).

Indeed, the principles underlying the doctrine are well-served here.  The funds and investors – the parties whose particularized claims are actually at issue – have already brought their own litigation against HSBC around the world, and "courts should not adjudicate [the rights of third persons not parties to the litigation] unnecessarily . . . ."  Singleton v. Wulff, 428 U.S. 106, 113 (1976).  Moreover, the funds and investors are clearly "the best proponents of their own rights."  Id. at 114.  Precluding the Trustee from asserting those rights "ensures that the court will approach the case from the point of view of those whose rights are at stake," which is "important partly because it affects the way the court is likely to focus on the issues."  Friedman

v. Harold, 638 F.2d 262, 266 & n.8 (1st Cir. 1981) (reviewing doctrine) (citation omitted).  "This is particularly true where, as here, the third part[ies]' 'rights' are being used as a means of helping the litigant to the detriment of the person or persons whose rights are being asserted." Id.  Because the Trustee is competing with the feeder funds and their investors to recover for the same loss on the same facts, and the funds and investors are the appropriate parties to pursue their rights, the Trustee should be precluded from bringing the instant action.  See, e.g., Al-Aulaqi v. Obama, 727 F. Supp. 2d 1, 23 (D.D.C. 2010) ("Where genuine conflicts exist between the litigant's interests and those of the absent third party, this factor strongly counsels against third party standing.") (internal quotation marks and citation omitted).

### C.   The Trustee's Standing Under SIPA Should Be Interpreted To Avoid An Absurd And Unconstitutional Result

On April 8, 2011, the Trustee filed a motion for preliminary injunction, seeking that the Bankruptcy Court bar and declare void *ab initio* the U.S. putative class actions brought by investors in Herald Fund SPC, Herald (Lux) SICAV, Primeo Fund and Thema International Fund plc against HSBC and other defendants.  See Decker Decl., Ex. B, Trustee's Inj. Mem. Apparently competing with the investors for the same recovery was insufficient; the Trustee now contends that he will lay claim to any money recovered by the class.  See id. at 30 ("[E]njoining the Class Actions would obviate the need for future proceedings by the Trustee to recover Customer Property from the Class Action Plaintiffs that they succeed in recovering from the HSBC Defendants.").

The Trustee's vociferous complaints against the class action plaintiffs for appropriating his contentions, see, e.g., id. at 2, misses the fundamental point that he is attempting to steal their claims, along with the funds' claims, and planning to provide the fruits of any recoveries to ***other parties***.  But "[r]obbing Peter to pay Paul is not a policy meriting

judicial favor[,]" especially where, as here, there is an "absence of plain statutory language or authoritative judicial exposition commanding so harsh a result[.]" Mikel-Hopkins, Inc. v. Frassinetti, 278 F.2d 301, 305-06 (4th Cir. 1960) (declining "to provide a trustee in bankruptcy with a windfall to the estate at the expense of one creditor").

       Construing SIPA to allow the Trustee to rob Peter to pay Paul would work an unconstitutional taking and due process violation and render the statute unconstitutional as applied.  See, e.g., Logan v. Zimmerman Brush Co., 455 U.S. 422, 428-30 (1982) ("[A] cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause . . . .  The Court traditionally has held that the Due Process Clauses protect civil litigants who seek recourse in the courts. . . .  [T]he Fourteenth Amendment's Due Process Clause has been interpreted as preventing the States from denying potential litigants use of established adjudicatory procedures, when such an action would be the equivalent of denying them an opportunity to be heard upon their claimed [rights].") (internal quotation marks and citation omitted); DeBartolo Corp. v. Fla. Gulf Coast Building & Constr. Trades Council, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

## IV.    SIPA DOES NOT GRANT SIPC OR A TRUSTEE STANDING TO SEEK CONTRIBUTION FOR SIPA PAYMENTS TO CUSTOMERS

       The Trustee concedes that he represents the BLMIS estate for purposes of his contribution claim, see Decker Decl., Ex. C, Oral Argument Tr. at 10:9-13, but neither SIPA nor common law grant him standing to do so.  As a creature of statute, a SIPC trustee possesses only those powers conferred by SIPA.  It is well-settled that "whether contribution is available in connection with a federal statutory scheme is a question governed solely by federal law,"

Lehman Brothers, Inc. v. Wu, 294 F.Supp.2d 504, 505 n.1 (S.D.N.Y. 2003) (internal quotation marks and citation omitted), and federal law is clear that a right to contribution exists under a federal statute only if the statute provides for such a right, either expressly or by implication, or if the right arises separately under federal common law.  Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 638 (1981).

SIPA makes no provision for contribution, and nothing in its legislative history suggests that Congress intended for SIPA to provide a right to contribution for payments made pursuant to its statutory scheme.  Congress provided for contribution in other areas of the securities laws but omitted such a right under the intricate procedures of SIPA.[11]  In fact, the Trustee's only remedy in SIPA to make up for a shortfall in customer property is through avoidance actions, not through contribution or other claims.  See 15 U.S.C. § 78fff-2(c)(3).  "The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement."  Nw. Airlines, Inc. v. Transp. Workers Union of Am, 451 U.S. 77, 97 (1981).  As such, federal courts routinely decline to find federal common law contribution rights in connection with statutory schemes.[12]

To the extent the Trustee were to attempt to circumvent this limitation by assuming the mantle of a joint tortfeasor and invoking a purported state law right of contribution for BLMIS' tortious acts, his efforts would be unavailing.  Federal courts recognize a state law

---

[11]     See, e.g., Texas Indus., 451 U.S. at 640 n.11 (citing as examples where Congress provided for a right of contribution § 11(f) of the Securities Act of 1933, 15 U.S.C. §§ 77k(f), and §§ 9(e) and 18(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§78i(e) and 78r(b)).

[12]     See Texas Indus., 451 U.S. at 644-47 (no common law contribution for Sherman Antitrust Act violations); Nw. Airlines, 451 U.S. at 97 (same for Title VII and the Equal Pay Act); Wu, 294 F. Supp. 2d at 505 (same for Copyright Act); LNC Inv., Inc v. First Fid. Bank, Nat'l Assoc., 935 F. Supp. 1333, 1343-46 (S.D.N.Y. 1996) (same for Trust Indenture Act).

right of contribution only when state law, not a federal statute, supplies the rules of decision to

determine the rights and obligations of the parties.  Id. at 97 n.38.  Because the source of the

Trustee's obligation to satisfy the claims of customers and creditors is SIPA itself, and not any

underlying state law obligation, the Trustee cannot claim a state law right of contribution for

those payments.  See KBL Corp. v. Arnouts, 646 F. Supp. 2d 335, 341 (S.D.N.Y. 2009) (finding

that the plaintiff could not "use New York State common law as an end-around to make a claim

for contribution that it could not make under the federal [copyright] statutory scheme").  The fact

that BLMIS failed as a result of fraud is of no moment: Though "Congress knew that fraud

would be one of the many causes of insolvency in the securities industry," In re Bell &

Beckwith, 104 B.R. 842, 858 (N.D. Ohio 1989), it provided no unique remedies or procedures

for such situations and no right to seek contribution from joint tortfeasors.  Under SIPA, the

Trustee's rights and obligations are the same regardless of the reason for the broker-dealer's

collapse.

Even assuming the Trustee could somehow resort to state law as the source of his

contribution claim, the Trustee cannot assert a valid state law claim for contribution here because

there will not be a payment of an adverse judgment for tortious conduct in excess of BLMIS'

equitable share of responsibility.  See N.Y.C.P.L.R. §§ 1401-02.  See also Tarantola v. Williams,

48 A.D.2d 552, 555 (4th Dep't 1975) ("No action for direct payment accrues . . . until the time of

payment of judgment to the plaintiff.").  Any payments to customers and creditors of BLMIS

made by the Trustee are mandated by statute, not incurred by judgment, and the Trustee cannot

even plead any tort claims pending against the BLMIS estate that could hypothetically trigger

contribution rights.[13]  Indeed, such suits are an impossibility given the automatic stay imposed

by the Bankruptcy Code.  See 11 U.S.C. § 362.

Finally, the contribution claim is simply another label for an action that is barred

by Wagoner.  Wagoner holds that a Trustee has no standing to bring claims, under any

formulation, where the "essence . . . is that [the third party] aided, [and] abetted . . . [the debtor]"

in order to recover for a wrong that he himself essentially took part in even where the debtor

suffered "money damages to . . . itself" as a result.  Wagoner, 944 F.2d at 78, 119-20.

## V.   THE TRUSTEE LACKS STANDING TO ASSERT HIS QUASI-CONTRACT CLAIMS

Although the Trustee does not state in his Amended Complaint which of his

hodgepodge of standing theories he relies on for his quasi-contract claims of unjust enrichment

and money had and received, the Trustee's counsel, at oral argument on the motion to withdraw

the reference, seemed to say that those claims are brought on behalf of BLMIS.  Decker Decl.,

Ex. C, Oral Argument Tr. at 10:9-13 (referring to "three of the causes of action which . . . we are

actually embracing being simply Bernie Madoff and BLMIS[,]" i.e., contribution, unjust

enrichment, and money had and received).  But if the Trustee is suing on behalf of BLMIS only,

he is in pari delicto and lacks standing to sue.  See In the Matter of the Mediators, Inc., 190 B.R.

515, 529-30 (S.D.N.Y. 1995), aff'd, 105 F.3d 822 (2d Cir. 1997) (concluding that Wagoner

barred unjust enrichment claims to recover professional fees paid by the debtor alleged to consist

of assets fraudulently diverted from the debtor).

---

[13]     Even assuming the Trustee could bring a contribution claim under New York law, it would surely fail, because the Trustee cannot establish that HSBC's conduct proximately caused the harm suffered by BLMIS customers, see supra Section II.D, and therefore cannot demonstrate that HSBC had a part in causing or augmenting the injury.  See, e.g., Raquet v. Braun, 90 N.Y.2d 177, 182-83 (N.Y. 1997).

The Trustee likewise lacks standing to bring these claims on behalf of BLMIS for payments made to HSBC by other parties.  See, e.g., Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc., 341 F. Supp. 2d 258, 273 (S.D.N.Y. 2004) (concluding that creditor trust of Chapter 11 debtor lacked standing to assert unjust enrichment claim where it failed to "allege that [defendant] was enriched at its expense.  To the contrary, [defendant] allegedly received excess compensation from its own customers.  They, not the [creditor trust], might have a cause of action.").  Accordingly, to the extent anyone has standing to recover fees paid to HSBC by the feeder funds it serviced, it is the feeder funds themselves,[14] whose claims the Trustee cannot assert for a variety of reasons already discussed, including that their injuries as creditors are particular to them.  See, e.g., In re Park S. Secs. LLC, 326 B.R. at 514 (concluding that the first prong of Wagoner bars a SIPA trustee from pursuing unjust enrichment claims on behalf of a subset of customers).

Finally, even if the Trustee could somehow sue on behalf of BLMIS to recover the fees earned by HSBC as service provider to certain feeder funds, those fees would still be unrecoverable by him, because they were paid and received pursuant to valid, enforceable contracts between certain of the HSBC Defendants and the feeder funds.  In these circumstances, the Trustee's quasi-contract claims must be rejected, see, e.g., Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388 (1987), even though the Trustee was not a party to the relevant contracts.  See, e.g., Granite Partners, L.P. v. Bear, Stearns & Co., 17 F. Supp. 2d 275, 311 (S.D.N.Y. 1998).

---

[14]    Notably, some of the feeder funds' lawsuits against HSBC seek to recover, among other things, fees paid to certain of the HSBC Defendants.

## VI.     SLUSA PREEMPTS THE TRUSTEE'S CLAIMS ON BEHALF OF BLMIS CUSTOMERS

Assuming *arguendo* that the Trustee has standing to assert claims on behalf of Madoff investors, SLUSA preempts those claims.  SLUSA expressly preempts class action claims brought under state law in connection with securities fraud.  Congress enacted SLUSA to prevent plaintiffs from evading the pleading rules and other protections against abusive securities litigation established by the Private Securities Litigation Reform Act of 1995 ("PSLRA") by filing class action fraud claims based on state law rather than federal securities law.  Romano v. Kazacos, 609 F.3d 512, 517-18 (2d Cir. 2010); Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 107-08 (2d Cir. 2001).  The Supreme Court has held that the scope of preemption under SLUSA must be interpreted broadly to achieve this purpose.  Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 85-86 (2006).

Courts in this District repeatedly have found that SLUSA bars state common law claims asserted on behalf of investors in connection with Madoff's securities fraud.[15]  While the assertion of such claims by a SIPA trustee is relatively unprecedented, the outcome under SLUSA is no different.  As shown below, (a) all criteria for preemption are met in this case under the plain meaning of the statute; (b) applying SLUSA here furthers its purpose of preventing an end run around the PSLRA; and (c) nothing in SIPA suggests that a trustee purporting to bring claims on behalf of thousands of customers should be exempt from SLUSA.

---

[15]     See In re Kingate Mgmt. Ltd., No. 09 Civ. 5386, 2011 WL 1362106, at *6-8 (S.D.N.Y. Mar. 30, 2011) (Batts, J.); In re J.P. Jeanneret Assocs., Inc., No. 09 Civ. 3907, 2011 WL 335594, at *33 (S.D.N.Y. Jan. 31, 2011) (McMahon, J.); Wolf Living Trust v. FM Multi-Strategy Inv. Fund, LP, No. 09 Civ. 1540, 2010 WL 4457322 at *3 (S.D.N.Y. Nov. 2, 2010) (Sand, J.); Newman v. Family Mgmt. Corp., 748 F. Supp. 2d 299, 313 (S.D.N.Y. 2010) (Sand, J.); In re Beacon Assocs. Litig., 745 F. Supp. 2d 386, 428-431 (S.D.N.Y. 2010) (Sand, J.); Barron v. Igolnikov, No. 09 Civ. 4471, 2010 WL 882890, at *3-5 (S.D.N.Y. Mar. 10, 2010) (Griesa, J.).

**A.    The Trustee's State Law Claims Are Preempted Under The Plain Meaning Of SLUSA**

SLUSA requires dismissal of any (1) "covered class action" (2) that is based upon state or local law, (3) concerns a "covered security" and (4) alleges a misrepresentation or omission of a material fact or the employment of a manipulative device or contrivance "in connection with the purchase or sale" of that security.  Barron, 2010 WL 882890, at *4-5 (citations omitted).  Where a statute's text is clear and unambiguous, the court's inquiry ordinarily ends there.  Lander, 251 F.3d at 110.  See also Instituto De Prevision Militar v. Merrill Lynch, 546 F.3d 1340, 1347 (11th Cir. 2008) (holding that "in light of [SLUSA's] unambiguous language [in defining a 'covered class action'], we need not resort to inferences from the Act's overall structure or the results of a hunt through its legislative history").

In this case, the Trustee cannot dispute that his claims are based upon state common law.  As discussed below, the remaining SLUSA criteria are met because the Trustee's suit on behalf of thousands of BLMIS customers is a "covered class action" as clearly defined in the statute, and his claims are "in connection with" with Madoff's fraud in connection with the purchase of securities within the statute's coverage.

1.    *The Trustee's Suit On Behalf Of Thousands Of Customers Is A "Covered Class Action"*

A "covered class action" under SLUSA includes not only class actions styled as such but rather "any single lawsuit in which damages are sought on behalf of more than 50 persons or prospective class members." 15 U.S.C. § 78bb(f)(5)(B)(i)(I).  For purposes of counting toward this 50-person threshold, "a corporation, investment company, pension plan, partnership, or other entity, shall be treated as one person or prospective class member, but only if the entity is not established for the purpose of participating in the action."  15 U.S.C. § 78bb(f)(5)(D).

Where a trust or trustee seeks to bring claims on behalf of more than 50 of the estate's creditors, rather than on behalf of the estate itself, those claims are a "covered class action" under SLUSA.  This plain application of the statute is confirmed by the only two decisions that have considered this issue, LaSala v. Bordier Et Cie, 519 F.3d 121, 137-38 (3d Cir. 2008), and RGH Liquidating Trust v. Deloitte & Touche LLP, 71 A.D.3d 198 (1st Dep't 2009).

In LaSala, the trustee sought to assert two types of claims that had been assigned to the trust – (1) claims once belonging to the bankrupt entity itself and (2) claims once belonging to the estate's creditors.  The Third Circuit found that only the first type of claims fell outside the definition of a "covered class action."  519 F.3d at 133-37.  The Court recognized "Congress's clear intent not to reach claims asserted by a bankruptcy trustee on behalf of a bankruptcy estate" as reflected in SLUSA's legislative history pertained only to "claims that the debtor-in-possession once owned and chose to assign to the Trust."  Id. at 135.  By contrast, the court found that "claims owned by . . . individual purchasers of [] stock [that] were assigned by the [p]urchasers to the Trust so that they could be prosecuted together with [claims owned by the bankrupt entity] . . . likely are brought to recover damages on behalf of more than 50 persons, so they would seem to take the form of a covered class action."  Id. at 138 (internal citation omitted).

The New York Appellate Division reached the same result in RGH Liquidating Trust.  There, the liquidating trust for a bankruptcy debtor sued the debtor's former auditor for fraud, originally asserting both the debtor's claims and claims of creditors that had been assigned to the trust.  71 A.D.3d at 202-203.  Following the dismissal of the original complaint, the trust attempted to re-plead the claims of the creditors.  Id. at 203.  The court found that such claims were a covered class action preempted by SLUSA, explaining that "the claims of . . . the

bankrupt debtor[] have all been dismissed, and the only claims asserted . . . originally belonged to [the debtor's] numerous unsecured creditors, including the bondholders.  This being the case, insofar as there are more than 50 bondholders, the maintenance of their claims . . . in a single action offends SLUSA."  Id. at 212.

In this case, the Trustee purports to "sue on behalf of" and to "stand[] in the shoes of" customers of the BLMIS estate.  Am. Compl. ¶ 50(f)-(h).  As of April 29, 2011, SIPC has allowed the claims of 2,414 persons, see BLMIS Liquidation Proceeding, Claims & Recovery Status, http://www.madofftrustee.com/Status.aspx (last visited May 3, 2011), making each of these persons a "customer" of the estate under SIPA.  See 15 U.S.C. § 78*lll*(2).  Because the number of customers exceeds SLUSA's 50-person threshold, the Trustee's suit is a "covered class action" under the plain terms of the statute.

In opposing withdrawal of the reference, the Trustee argued that he was an "entity" who is to be treated as "one person" for counting purposes under Section 78bb(f)(5)(D).  This argument is both incorrect and irrelevant.  The entity here is the BLMIS estate, and the Trustee concedes that he cannot bring claims on behalf of the BLMIS estate because of the Wagoner rule.  But even if Mr. Picard could be considered an "entity," the fact that he would be deemed "one person" is beside the point.  By purporting to assert the claims of thousands of injured customers, even as "one person" the Trustee is purporting to bring claims "on behalf of more than 50 persons," making this action a "covered class action" under the statute's clear definition.  See 15 U.S.C. § 78bb(f)(5)(B)(i)(I).  Cf. LaSala, 519 F.3d at 134 (finding that the phrase "on behalf of 50 or more persons" in Section 78bb(f)(5)(B)(i)(I) refers to "the original owners of the claim – those injured by the complained-of conduct. . . .  In other words, the phrase refers to the assignors of a claim, not to the assignee . . . .").

34

2.      *The Trustee's Claims Clearly Allege Fraud "In Connection With" A "Covered Security"*

A "covered security" includes any security that is listed or authorized for listing on the New York Stock Exchange or another national exchange, as well as securities issued by investment companies registered with the SEC.  See 15 U.S.C. §§ 78bb(f)(5)(E), 77r(b).  As the Trustee alleges, BLMIS purported to purchase securities within the S&P 100 Index, which are listed and publicly traded on the national exchanges. Am. Compl. ¶ 36.   The fact that Madoff did not actually purchase these covered securities does not remove the case from the ambit of the federal securities laws.  SEC v. Zandford, 535 U.S. 813, 819-20 (2002).  See also Instituto de Prevision Militar, 546 F.3d at 1347-51 (holding that SLUSA precluded a fraud action involving an investment manager who stole investors' money rather than purchasing securities); Barron, 2010 WL 882890, at *5 (noting with respect to SLUSA preemption that "[i]t is not essential that Madoff actually performed any trades or acquired any securities").

Furthermore, the alleged misrepresentations were made "in connection with the purchase or sale" of these covered securities.  The Second Circuit recently held that the "in connection with" standard is met "where plaintiff's claims necessarily allege, necessarily involve, or rest on the purchase or sales of securities."  Romano, 609 F.3d at 522 (internal quotation marks omitted).  See also Dabit, 547 U.S. at 85 ("it is enough that the fraud alleged 'coincide' with a securities transaction" to satisfy this requirement).  "Any claim may trigger SLUSA preemption if the basis of that claim sounds in fraud or relies on alleged misstatements or omissions."  In re Kingate Mgmt. Ltd., 2011 WL 1362106, at *6.  Indeed, several judges in this District have held that SLUSA preempts even investors in Madoff feeder funds who did not directly invest with BLMIS from asserting the same common law claims against the funds' service providers as the Trustee is attempting to assert here:

> There is no question that Madoff's Ponzi scheme was 'in
> connection with' the purchase and sale of securities.  Madoff told
> investors that he would purchase and sell securities in the Standard
> & Poor's 100 Index, and he used prices from the public markets on
> the trade documentation he sent to customers.

In re Beacon Assocs. Litig., 745 F. Supp. 2d at 430 (dismissing claims for, *inter alia*, aiding and abetting fraud and aiding and abetting breach of fiduciary duty) (internal citations and quotation marks omitted); In re J.P. Jeanneret Assocs., Inc., 2011 WL 335594, at *33 (dismissing claims for, *inter alia*, aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and unjust enrichment); In re Kingate Mgmt. Ltd., 2011 WL 1362106, at *6-8 (dismissing claims for, *inter alia*, aiding and abetting fraud, aiding and abetting breach of fiduciary duty, unjust enrichment and mistake); Newman, 748 F. Supp. 2d at 313 (dismissing claims for, *inter alia*, aiding and abetting breach of fiduciary duty and unjust enrichment); Barron, 2010 WL 882890 at **3-5 (same); Wolf Living Trust, 2010 WL 4457322 at *3 (same).  *A fortiori*, claims of BLMIS customers who did directly invest with BLMIS are preempted.  Since all of the Trustee's claims sound in fraud and rely on alleged misstatements and omissions, they are preempted by SLUSA.

### B.    Preempting The Trustee's Claims Serves The Purposes Of SLUSA

Because the text of SLUSA unambiguously provides for preemption in this case, the Court need not consider legislative intent, unless the Trustee produces "clear evidence that Congress never intended [the claims] to be covered by SLUSA" and that preemption "would undermine the intent of the statute." Lander, 251 F.3d at 110.  The Trustee cannot meet this burden because preemption of his claims clearly furthers the purposes of SLUSA.

Congress enacted SLUSA to prevent litigants from avoiding the heightened procedural requirements established in the PSLRA by bringing securities fraud claims under state statutory or common law.  Id. at 107.  Among the PSLRA's protections is the requirement that the complaint "specify each statement alleged to have been misleading" and "the reason or

reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).  In addition, the PSLRA

mandates that the complaint "state with particularity facts giving rise to a strong inference that

the defendant acted with the required state of mind[,]" 15 U.S.C. § 78u-4(b)(2), namely, with

intent "to deceive, manipulate or defraud." Tellabs, Inc v. Makor Issues & Rights, Ltd., 551 U.S.

308, 313 (2007) (internal quotation marks and citation omitted).  Such particularized allegations

of *scienter* must be made against each defendant.  Defer LP v. Raymond James Fin., Inc., 654 F.

Supp. 2d 204, 217 (S.D.N.Y. 2009) (dismissing Rule 10b-5 claims because the complaint

"fail[ed] to allege facts that particularize how and why each defendant actually knew, or was

reckless in not knowing, that the alleged statements and omissions were fraudulent at the time

they were made") (emphasis in original).

       Measured against these standards, the Trustee's complaint is woefully inadequate.

As an initial matter, the Trustee could not even bring claims for aiding and abetting Madoff's

securities fraud because this is not a cognizable claim under the federal securities laws, as held in

Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 185 (1994).

The Amended Complaint fails to identify each specific misstatement attributable to the

defendants, as the PSLRA requires.  Cf. Am. Compl. ¶ 540 (merely alleging in conclusory

fashion that defendants together failed to "warn[] their investors and Madoff's other customers"

and "continued to market BLMIS to their investors").

       Furthermore, the Amended Complaint clumps together over 50 "Non-Feeder

Fund Defendants" and sets forth supposed "red flag" allegations to establish these Defendants'

collective knowledge of Madoff's fraud, without specifying which Defendants allegedly were

aware of which red flags.  Am. Compl. ¶¶ 144-226.  "This type of group pleading does not

comport with the particularity requirements of Rule 9(b) and the PSLRA."  Ellington Mgmt.

Grp., LLC v. Ameriquest Mortg. Co., No. 09 Civ. 0416 (JSR), 2009 WL 3170102, at *1 n.3, 4

(S.D.N.Y. Sept. 29, 2009) (Rakoff, J.) (dismissing a complaint that "plead[ed] its factual

allegations without differentiating between [the] groups" of defendants).

        Finally, several courts have found the same red flags alleged by the Trustee here

insufficient to create the strong inference of *scienter* required by the PSLRA.  See Newman, 748

F. Supp. 2d at 310-11; In re Beacon Assocs. Litig., 745 F. Supp. 2d at 416-17; Stephenson v.

PricewaterhouseCoopers, LLP, No. 09 Civ. 00716 (RJH), 2011 WL 781936, at *10 (S.D.N.Y.

Mar. 6, 2011); In re Tremont Sec. Law, State Law & Ins. Litig., 703 F. Supp. 2d 362, 371

(S.D.N.Y. 2010); SEC v. Cohmad Sec. Corp., No. 09 Civ. 5680 (LLS), 2010 WL 363844, at *2,

7 (S.D.N.Y. Feb. 2, 2010) (dismissing securities fraud claim because the red flag allegations

"support[ed] the reasonable inference that Madoff fooled the defendants as he did individual

investors, financial institutions, and regulators").  There is no reason to hold the Trustee's

allegations in this case to a lower standard.[16]

---

[16]    The legislative history of SLUSA confirms Congress's intent for the statute to "be
interpreted broadly to reach . . . all [] procedural devices that might be used to circumvent the
class action definition."  S. Rep. No. 105-182, at 8 (1998).  In particular, "the statutory text and
legislative history signal that the definition was designed to prevent securities-claims owners
from bringing what are, in effect, class actions by assigning claims to a single entity."  LaSala,
519 F.3d at 136.  In opposing withdrawal, the Trustee relied on a statement in the legislative
history that "'*a trustee in bankruptcy*, a guardian, a receiver, and other persons or entities duly
authorized by law (other than by a provision of state or federal law governing class action
procedures) to seek damages on behalf of another person or entity would not be covered by this
provision.'"  Id. at 135-36 (quoting S. Rep. No. 105-182, at 8) (emphasis in original).  As
discussed above, the Third Circuit in LaSala correctly interpreted this legislative history to
reflect "Congress's clear intent not to reach claims asserted by a bankruptcy trustee ***on behalf of
a bankruptcy estate***," whereas claims assigned to the trustee by more than 50 individual
creditors "seem[ed] to take the form of a covered class action."  Id. at 135, 138 (emphasis
added).

By casting his federal securities claims under state common law, the Trustee seeks to circumvent the PSLRA's heightened pleading standards. Because this is the very evil that SLUSA sought to remedy, application of the statute in this case clearly furthers its purposes.

**C.     The SIPA Statutory Scheme Suggests No Reason For Not Applying SLUSA Preemption Here**

Finally, nothing in SIPA's text or legislative history suggests that SIPC or the Trustee should be exempt from other provisions of the federal securities laws, including SLUSA's preemption provisions or the PSLRA's heightened procedural requirements. As discussed above, SIPA itself creates no standing for SIPC or the Trustee to bring claims on behalf of customers against third parties. See supra Section II. As the Supreme Court held in Holmes, apart from SIPC's purported common law subrogation rights – "to which the statute makes no reference" and about which the Court "express[ed] no opinion[,]" 503 U.S. at 271 n.17 & 274-75 – the SIPA statute does not give SIPC any independent right to sue third parties for damages. Id. at 270, 273-74. With respect to the Trustee, SIPA only grants him the "same powers" as a trustee in an ordinary bankruptcy case, 15 U.S.C. § 78fff-1(a), which as discussed above does not include the right to sue on behalf of creditors. Furthermore, "it seems plain that SIPA's primary intent and policy are to protect customers who have cash and securities being held for them by a broker-dealer, rather than to serve as a vehicle for the litigation of claims of fraud or violations of Rule 10b-5." In re Gov't Sec. Corp., 90 B.R. 539, 541 (S.D. Fla. 1988) (quoting In re MV Sec., Inc., 48 B.R. 156, 160 (S.D.N.Y.1985)). Given that SIPA creates no entitlement to bring claims on behalf of customers against third parties, neither the statute nor its legislative purpose suggests that such claims should be exempt from SLUSA preemption or the PSLRA's requirements.

Ultimately, the Trustee's efforts to step out of the shoes of the BLMIS estate for purposes of avoiding the <u>Wagoner</u> rule are fruitless.  Even if one accepts his far-fetched theories of standing under SIPA, by stepping into the shoes of individual customers his claims become subject to preemption under SLUSA.

## CONCLUSION

For the reasons above, the Court should dismiss the Common Law Claims for lack of standing and because they are preempted by federal law.


Dated: New York, New York
      May 3, 2011


CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:     /s/ Evan A. Davis
           Evan A. Davis, a Member of the Firm

*Attorneys for Defendants HSBC Bank plc, HSBC Holdings plc, HSBC Securities Services (Luxembourg) S.A., HSBC Institutional Trust Services (Ireland) Limited, HSBC Securities Services (Ireland) Limited, HSBC Institutional Trust Services (Bermuda) Limited, HSBC Bank USA, N.A., HSBC Securities Services (Bermuda) Limited, HSBC Bank (Cayman) Limited, HSBC Private Banking Holdings (Suisse) S.A., HSBC Private Bank (Suisse) S.A., HSBC Fund Services (Luxembourg) S.A., and HSBC Bank Bermuda Limited*